**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| DYWANNA BROADNAX, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS JEFFERSON UNIVERSITY | : | CIVIL ACTION NO. 21-CV-04662-JMY |
| HOSPITAL, INC., | : | |
| | : | THE HONORABLE JOHN M. YOUNGE |
| Defendant. | : | |
|_____| : | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

10151868.v3
10156061.v1

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................2

III. ARGUMENT........................................................................................................2

    A.  Summary Judgment Standard .........................................................................2

    B.  Burden-Shifting Standard for Broadnax's Retaliation Claims ...........................4

    C.  This Court Should Grant Summary Judgment on Broadnax's Retaliation Claims .............6

IV. CONCLUSION....................................................................................................21

10156061.v1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. KidsPeace Corp.*,
698 F. Supp.2d 501 (E.D. Pa. 2010) (DuBois, J.)....................................................................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................3

*Barton v. MHM Correctional Servs., Inc.*,
454 F. App'x 74 (3d Cir. 2011) .............................................................................................7

*Becker v. Novipax LLC*,
CA No. 19-cv-5126-JMY, 2022 WL 196286 (E.D. Pa. Jan. 21, 2022)
(Younge, J.)....................................................................................................................3, 16

*Betts v. New Castle Youth Dev. Ctr.*,
621 F.3d 249 (3d Cir. 2010)................................................................................................3, 16

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992), *cert. denied,* 507 U.S. 912 (1993)............................................3

*Bloch v. Mack Trucks, Inc.*,
240 F. Supp.3d 365 (E.D. Pa. 2017) (Schmehl, J.)............................................................12, 13

*Brewer v. Quaker State Oil Ref. Corp*,
72 F.3d 326 (3d Cir. 1995)..........................................................................................6, 9, 13

*Burton v. Teleflex Inc.*,
707 F.3d 417 (3d Cir. 2013)....................................................................................................4

*Calero v. Cardone Indus., Inc.*,
No. 11-3192, 2012 WL 2547356 (E.D. Pa. June 29, 2012) (Baylson, J.) ...............................21

*Capps v. Mondelez Global, LLC*,
847 F.3d 144 (3d Cir. 2017)..................................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................................15

*Charlton v. Paramus Bd. of Educ.*,
25 F.3d 194 (3d Cir. 1994), *cert. denied*, 513 U.S. 1022 (1994).............................................3

*Collins v. Kimberly-Clark Pa., LLC*,
247 F. Supp.3d 571 (E.D. Pa. 2017) (Jones, II, J.) .................................................................5

10156061.v1

*Cortazzo v. City of Reading*,
CA No. 5:14-CV-2513, 2016 WL 1022267 (E.D. Pa. Mar. 15, 2016) (Leeson,
J.)......................................................................................................................................7

*Costa v. Pa. Dep't of Revenue*,
CA No., 12-854, 2014 WL 1235879 (W.D. Pa. Mar. 25, 2014)..................................5

*Cottrell v. Zagami, LLC*,
537 F. App'x 46 (3d Cir. 2013) ..................................................................................6

*Daniels v. Sch. Dist. of Phila.*,
776 F.3d 181 (3d Cir. 2015)....................................................................................5, 7

*Ezold v. Wolf, Block, Schorr & Solis–Cohen*,
983 F.2d 509 (3d Cir.1992)........................................................................................4

*Fischer v. Pepper Hamilton LLP*,
CA No. 15-02413, 2016 WL 362507 (E.D. Pa. Jan. 29, 2016) (Pappert, J.)...........18

*Flory v. Pinnacle Health Hosps.*,
346 F. App'x 872 (3d Cir. 2009) ................................................................................7

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)..................................................................................4, 5, 9

*Furru v. The Vanguard Grp.*,
No. 14-05034, 2015 WL 5179407 (E.D. Pa. Sept. 4, 2015) (Pappert, J.)................12

*Garcia v. Newtown Twp.*,
483 F. App'x 697 (3d Cir. 2012) ................................................................................4

*Griffin v. De Lage Landen Fin'l Servs., Inc.*,
219 F. App'x 245 (3d Cir. 2007) ................................................................................7

*Harry v. National R.R. Passenger Corp.*,
CA No. 03-4704, 2005 WL 1971884 (E.D. Pa. Aug. 16, 2005) (Tucker, J.) ..........17

*Jackson v. SEPTA*,
CA No. 19-cv-0760-JMY, 2021 WL 3471163 (E.D. Pa. Aug. 6, 2021) (J.,
Younge)......................................................................................................................4, 5

*Jakomas v. City of Pitts.*,
342 F. Supp.3d 632 (W.D. Pa. 2018).........................................................................5

*Jones v. Sch. Dist. of Phila.*,
198 F.3d 403 (3d Cir. 1999)....................................................................................5, 8

10156061.v1

*Kariotis v. Navistar Int'l Transp. Corp.*,
131 F.3d 672 (7th Cir. 1997) ..............................................................................................12

*Kaucher v. Cty. of Bucks*,
455 F.3d 418 (3d Cir. 2006)...................................................................................................3

*Kautz v. Met-Pro Corp.*,
412 F.3d 463 (3d Cir. 2005)............................................................................................9, 12

*Keller v. Orix Credit Alliance, Inc.*,
130 F.3d 1101 (3d Cir. 1997)................................................................................................5

*Kelly v. Drexel Univ.*,
94 F.3d 102 (3d Cir. 1996)..................................................................................................12

*Kier v. F. Lackland & Sons, LLC*,
72 F. Supp.3d 597 (E.D. Pa. 2014) (Buckwalter, J.) ..........................................................20

*Kopko v. Lehigh Valley Health Network*,
CA No. 14-1290, 2016 WL 6442062 (E.D. Pa. Oct. 31, 2016) (Stengel, J.)........................18

*Krouse v. Am. Sterilizer Co.*,
126 F.3d 494 (3d Cir. 1997) (ADA) .............................................................................4, 5, 6, 7

*Larochelle v. Wilmac Corp.*,
769 F. App'x 57 (3d Cir. 2019) .............................................................................................5

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
503 F.3d 217 (3d Cir. 2007)..............................................................................................5, 6

*Lewis v. Temple Univ. Health Sys.*,
No. 13-3527, 2015 WL 1379898 (E.D. Pa. Mar. 26, 2015) (O'Neill, J.) ...............................4

*Martin v. Health Care & Ret. Corp.*,
67 F. App'x 109 (3d Cir. 2003) ...........................................................................................14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).............................................................................................................4

*Moore v. City of Phila.*,
461 F.3d 331 (3d Cir. 2006)...................................................................................................4

*Moore v. Secretary U.S. Dep't of Homeland Security*,
717 F. App'x 179 (3d Cir. Dec. 4, 2017).................................................................................5

*Naber v. Dover Healthcare Assocs., Inc.*,
765 F. Supp.2d 622 (D. Del. 2011).......................................................................................21

iv

*Opsatnik v. Norfolk S. Corp.*,
  335 F. App'x 220 (3d Cir. 2009) ........................................................................13

*Outten v. Genesis Health Care, LLC*,
  CA No. 13-4708, 2014 WL 3964918 (E.D. Pa. Aug. 12, 2014) (Buckwalter,
  J.)........................................................................................................................20

*Palmer v. Britton Indus., Inc.*,
  662 F. App'x 147 (3d Cir. 2016) ........................................................................4

*Paradisis v. Englewood Hosp. Med. Ctr*.,
  680 F. App'x 131 (3d Cir. 2017) ......................................................................17

*Paynter v. Aramark Corp.*,
  CA No., 2:07-cv-2214-LDD, 2008 WL 11364245 (E.D. Pa. Aug. 7, 2008)
  (Davis, J.) ...................................................................................................5, 11, 21

*Pivirotto v. Innovative Sys., Inc.*,
  191 F.3d 344 (3d Cir. 1999)..............................................................................18

*Preston v. Vanguard Group, Inc.*,
  No. 14-07243, 2015 WL 7717296 (E.D. Pa. Nov. 30, 2015) (Pappert, J.)................9

*Proudfoot v. Arnold Logistics, LLC*,
  629 F. App'x 303 (3d Cir. 2015) ........................................................................5

*Ricci v. DeStefano*,
  557 U.S. 557 (2009)............................................................................................3

*Ridgewood Bd. of Educ. v. N.E. for M.E.*,
  172 F.3d 238 (3d Cir. 1999), *superseded by statute on other grounds*.....................3

*Rinehimer v. Cemcolift*,
  292 F.3d 375 (3d Cir. 2002)................................................................................4

*Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*,
  982 F.2d 892 (3d Cir. 1993)................................................................................6

*Rubano v. Farrell Area Sch. Dist.*,
  991 F. Supp.2d 678 (W.D. Pa. 2014)...................................................................4

*Shaner v. Synthes*,
  204 F.3d 494 (3d Cir. 2000)............................................................................5, 7

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*,
  142 F.3d 639 (3d Cir. 1998)................................................................................8

v

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)...........................................................................................................8

*Steele v. Pelmor Labs., Inc.*,
  725 F. App'x 176 (3d Cir. 2018) .........................................................................................4

*Summy-Long v. Pa. State Univ.*,
  No. 06-1117, 2009 WL 811616 (M.D. Pa. Mar. 26, 2009) .................................................18

*Thomas v. Shaw*,
  632 F. App'x 716 (3d Cir. 2015) ......................................................................................3, 16

*Tielle v. Nutrition Grp.*,
  810 F. App'x 160 (3d Cir. 2020) .........................................................................................18

*Torre v. Casio, Inc.*,
  42 F.3d 825 (3d Cir. 1994).................................................................................................4

*Torres v. Cty. of Berks*,
  No. 17-01890, 2018 WL 564406 (E.D. Pa. Jan. 26, 2018) (Leeson, J.) .................................14

*In re Tribune Media Co.*,
  902 F.3d 384 (3d Cir. 2018)...........................................................................................11, 13

*University of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338, 133 S. Ct. 2517 (2013)..................................................................................5

*Van Horn v. Elbeco Incorporates*,
  A No. 94-2720, 1996 WL 385630 (E.D. Pa. July 10, 1996) (Troutman, J.)...........................17

*Vasbinder v. Shinseki*,
  No. 09-1239, 2011 WL 1789989 (W.D. Pa. May 10, 2011), *aff'd* 487 F.
  App'x 746 (3d Cir. 2012)..................................................................................................17

*Walters v. Potter*,
  CA No. 05-cv-1745, 2007 WL 693978 (M.D. Pa. Mar. 5 2007) (Conner, J.).........................17

*Watson v. Rozum*,
  834 F.3d 417 (3d Cir. 2016)................................................................................................7

*Weiler v. R&T Mech., Inc.*,
  255 F. App'x 665 (3d Cir. 2007) ........................................................................................20

*Weldon v. Kraft, Inc.*,
  896 F.2d 793 (3d Cir. 1990)..............................................................................................12

*Williams v. Phila. Hous. Auth. Police Dep't*,
  380 F.3d 751 (3d Cir. 2004).................................................................................................7

vi

*Willis v. UPMC Children's Hosp.*,
808 F.3d 638 (3d Cir. 2015)................................................................................12

*Wood v. Developers Diversified Realty Corp.*,
No. 04-5563, 2006 WL 456303 (E.D. Pa. Feb. 23, 2006) (Surrick, J.) ...................................18

*Woodson v. Scott Paper Co.*,
109 F.3d 913 (3d Cir. 1997).................................................................................4

*Wright v. Murray Guard, Inc.*,
455 F.3d 702 (6th Cir. 2006) ..............................................................................13

*Wright v. Providence Care Ctr., LLC*,
822 F. App'x 85 (3d Cir. 2020) ........................................................................20, 21

*Zelinski v. Pa. State Police*,
108 F. App'x 700 (3d Cir. 2004) ..........................................................................6

**Statutes**

Americans with Disabilities Act ............................................................................1, 4

Title VII of the Civil Rights Act ............................................................................1, 4

FMLA ..............................................................................................................21

Pennsylvania Human Relations Act.........................................................................1

**Other Authorities**

Fed. R. Civ. P. 56...........................................................................................3, 18

Fed. R. Evid. 602 .............................................................................................18

Fed. R. Evid. 701 .............................................................................................18

Fed. R. Evid. 805 .............................................................................................18

10156061.v1

## I.    __INTRODUCTION__

Plaintiff, Dywanna Broadnax ("Broadnax" or "Plaintiff"), is a former Lab Assistant/Phlebotomist for defendant, Thomas Jefferson University Hospitals, Inc. ("Jefferson" or "Defendant"), who has sued Jefferson under the Americans with Disabilities Act, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act. Broadnax contends in her Complaint that she was terminated for filing charges of discrimination and retaliation with the EEOC and PHRC. Broadnax cannot sustain her claims.

Broadnax was terminated for serious misconduct. On November 18, 2019, she instigated and escalated a verbal confrontation with a coworker, Crystal Taylor ("Taylor"), that quickly turned into a fistfight between the two employees in the middle of the day in a hospital hallway that ended only after Security arrived and physically pulled them apart. According to a text Broadnax sent Taylor shortly after the fistfight, "Taylor put her hands on the wrong one," Broadnax "whupped [Taylor's] ass," and Taylor is "an ugly bitch." At the time of the incident, Security interviewed and obtained handwritten statements from Broadnax, Taylor and a witness. Based on the interviews and/or the statements, five people – including representatives of senior management, management and Human Resources– decided that Broadnax's actions, as well as the actions of Taylor, warranted their terminations under Jefferson's policies. Broadnax cannot show her termination was prompted by anything else.

Broadnax admitted and continues to admit to the underlying conduct on which the termination decision was based, agrees fist-fighting at work during working hours violated Jefferson's Code of Conduct policy, its Employee Disruptive Conduct Policy and its No-Violence Policy, and concedes she believes the fistfight was the real reason she was terminated. Broadnax cannot produce any evidence of anyone else who engaged in fist-fighting at work who was *not*

10156061.v1

terminated. Indeed, the only other person who engaged in comparable conduct to Broadnax - Taylor – also was terminated. Taylor had never complained of discrimination or retaliation. The protected activity in which Broadnax happened to have engaged (filing EEOC/PHRC charges in 2011 and 2017) was years before the fistfight (in November 2019) and the deep written record shows the charges played no part in Jefferson's termination decision.

With such undisputed concrete evidence disproving Broadnax's claims, Broadnax is left with nothing but to try to distract this Court with allegations of normal workplace tribulations she had over the years with her supervisor. None of those events has anything to do with her misconduct and resulting termination. The undisputed serious intervening event – the fistfight between Taylor and Broadnax – cut off any possibility a reasonable jury could believe Broadnax was terminated for any reason other than that fistfight. Jefferson – presumably like any other responsible employer – could not continue to employ individuals who engaged in such inexcusable misconduct. There is no evidence of any inconsistencies, incoherencies, or other weaknesses in this termination rationale or of anything else to raise a genuine question about Jefferson's termination reason. Summary judgment is appropriate in this case.

## II.    STATEMENT OF FACTS

In support of its motion for summary judgment, and in accordance with Judge John Milton Younge's Policies and Procedures, Jefferson filed herewith its Statement of Material Facts About Which There Can Be No Genuine Dispute ("SOFs"). Jefferson incorporates that SOFs herein by reference.

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment may be granted "if the movant shows that there is no genuine issue as

2

10156061.v1

to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered "material" if it could alter the outcome of the case. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994), *cert. denied*, 513 U.S. 1022 (1994). While, "[o]n a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party[, this is so] only if there is a 'genuine' dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted). A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-movant. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, a non-movant's speculation, conclusory assertions, or merely resting on the complaint or one's own testimony does not create that basis. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999), *superseded by statute on other grounds*; *Thomas v. Shaw,* 632 F. App'x 716, 720 (3d Cir. 2015) (affirming summary judgment when plaintiff "relie[d] solely on his own testimony and speculation to support his claims."); *Becker v. Novipax LLC*, CA No. 19-cv-5126-JMY, 2022 WL 196286, at *4 (E.D. Pa. Jan. 21, 2022) (Younge, J.) (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010)) (explaining, the Court "need not credit [u]nsupported assertions, conclusory allegations, or mere suspicions"). If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson,* 477 U.S. at 249−50; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert. denied,* 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is not required to "turn a blind eye" to the weight of the evidence).

**B.      Burden-Shifting Standard for Broadnax's Retaliation Claims**

With no direct evidence of retaliation, Broadnax's retaliation claims should be analyzed under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] *Jackson v. SEPTA*, CA No. 19-cv-0760-JMY, 2021 WL 3471163, at *10 (E.D. Pa. Aug. 6, 2021) (J., Younge) (quoting *Rinehimer v. Cemcolift*, 292 F.3d 375, 382 (3d Cir. 2002)) (ADA and PHRA); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (Title VII). Under that framework, Broadnax must establish a *prima facie* case of retaliation by showing that: (1) she engaged in protected activity, (2) she contemporaneously or thereafter suffered an adverse employment action, and (3) there is a causal link between the two. *Steele v. Pelmor Labs., Inc.*, 725 F. App'x 176, 178-79 (3d Cir. 2018) (Title VII); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997) (ADA); *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp.2d 678, 704 (W.D. Pa. 2014) (PHRA). If Broadnax does this and Jefferson has met its "relatively light" burden of articulating a legitimate non-discriminatory reason for the adverse employment action, *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013), then Broadnax must present evidence sufficient to raise a genuine question that Jefferson's termination reason is pretextual. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).

Proving pretext is a difficult burden. *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994). To withstand summary judgment on the issue of pretext, Broadnax must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the

---

[1] "Direct evidence" is evidence that is "sufficient on its own [without inference or presumption] to allow a factfinder to determine that the protected activity was the but-for cause of the termination decision." *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 150 (3d Cir. 2016) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994)) (emphasis in original). "This is a high hurdle." *Id.* "Direct evidence does not include stray remarks that are made in a context unrelated to the employment decision." *See Lewis v. Temple Univ. Health Sys.*, No. 13-3527, 2015 WL 1379898, at *9 (E.D. Pa. Mar. 26, 2015) (O'Neill, J.) (*citing Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 545 (3d Cir.1992)); *Garcia v. Newtown Twp.,* 483 F. App'x 697, 704 (3d Cir. 2012) (direct evidence "bears squarely on the adverse employment decision"). Here, Broadnax has no direct evidence that she was terminated in retaliation for complaining of discrimination and retaliation.

employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198-99 (3d Cir. 2015); *see also Krouse*, 126 F.3d at 504; *Shaner v. Synthes*, 204 F.3d 494, 501, 503 (3d Cir. 2000); *Proudfoot v. Arnold Logistics, LLC*, 629 F. App'x 303, 308 (3d Cir. 2015). Broadnax can prove causation at the pretext stage only with sufficient evidence raising a genuine question that she "would not have suffered an adverse employment 'but for' her protected activity." *Jackson*, 2021 WL 3471163, at *10 (citing *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019)); *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2533 (2013); *Jakomas v. City of Pitts.*, 342 F. Supp.3d 632, 654 (W.D. Pa. 2018) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n.8 (3d Cir. 2007)).[2] To do this, Broadnax must come forward with evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Jefferson's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Krouse*, 126 F.3d at 504 (quoting *Fuentes*, 32 F.3d at 765). Because Broadnax bears the ultimate burden of persuasion, she cannot simply show that Jefferson's decision was "wrong, mistaken, imprudent or incompetently made." *Daniels,* 776 F.3d at 199; *Paynter v. Aramark Corp.*, CA No., 2:07-cv-2214-LDD, 2008 WL 11364245, at *3 (E.D. Pa. Aug. 7, 2008) (Davis, J.). She must show through admissible evidence that the reason for the termination was "so plainly wrong that it cannot have been the employer's real reason." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Indeed, this

---

[2] Courts "routinely" have applied the "but-for" causation standard "at the summary judgment stage and have granted summary judgment in favor of the employer where the plaintiff's [adverse action] would have occurred regardless of any alleged retaliatory motive." *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp.3d 571, 604 (E.D. Pa. 2017) (Jones, II, J.) (citing *Costa v. Pa. Dep't of Revenue*, CA No., 12-854, 2014 WL 1235879, at *13 (W.D. Pa. Mar. 25, 2014)); *see also Moore v. Secretary U.S. Dep't of Homeland Security*, 717 F. App'x 179, 185 (3d Cir. Dec. 4, 2017) (granting summary judgment when plaintiff failed to present sufficient evidence of but-for causation).

5

10156061.v1

Court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Brewer v. Quaker State Oil Ref. Corp*, 72 F.3d 326, 332 (3d Cir. 1995) (internal marks and citation omitted).

### C. This Court Should Grant Summary Judgment on Broadnax's Retaliation Claims

#### 1. Broadnax Cannot Raise an Inference of Causation

For the purposes of this motion, Jefferson concedes Broadnax can establish the first and second prongs of the *prima facie* case because she engaged in protected activity when she filed the 2011 Charge and the 2017 Charge (collectively referred to as the "Charges") and she suffered an adverse employment action when she was terminated on November 21, 2019. SOFs at ¶¶ 7, 17, 94. This Court should dismiss Broadnax's retaliation claims, however, because she cannot raise a genuine question regarding the third element of her *prima facie* case, namely that there is a causal connection between the filing of her Charges and her termination.

Causation can be shown with evidence of temporal proximity between the protected activity and the termination, of a pattern of antagonism after the protected activity, and/or of any other matter that is sufficient to establish a causal link. *Krouse*, 126 F.3d at 503-04; *Zelinski v. Pa. State Police*, 108 F. App'x 700, 706 (3d Cir. 2004) (quoting *Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993)). Concerning timing, although the Third Circuit has not created a bright-line rule regarding the time between the protected activity and the adverse employment action that, alone, would raise an inference of causation, courts have found an inference only when the timing is "unusually suggestive," i.e., within a few days of the protected activity. *See e.g., Cottrell v. Zagami, LLC*, 537 F. App'x 46, 48 (3d Cir. 2013) (ten-day gap did not suggest retaliation); *LeBoon*, 503 F.3d at 233 (three-month gap between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary

6

10156061.v1

judgment); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months not unusually suggestive).

Here, Broadnax complained of discrimination/retaliation in 2011 and 2017 - several years before her termination in November 2019. SOFs at ¶¶ 7, 17, 94.  This significant gap in time does not create an inference of a causal link. *See e.g., Watson v. Rozum,* 834 F.3d 417, 423 (3d Cir. 2016) (two years between protected activity and adverse employment action is too remote from which to infer causation*); Flory v. Pinnacle Health Hosps.*, 346 F. App'x 872, 877 (3d Cir. 2009) (noting span of months, let alone years, between protected activity and adverse employment action was insufficient to raise inference of causation to defeat summary judgment).[3]

Further, although evidence of a purported "intervening pattern of antagonism" between the protected activity and the materially adverse action may raise an inference of causation, "to establish a causal link, the intervening antagonism must have been a result of the protected activity." *Cortazzo v. City of Reading*, CA No. 5:14-CV-2513, 2016 WL 1022267, at *5 (E.D. Pa. Mar. 15, 2016) (Leeson, J.); *accord Shaner,* 204 F.3d at 501-07 (evaluating plaintiff's allegations of many instances of purported evidence of improper intent and rejecting notion they show retaliation because no evidence they were caused by protected activity); *Daniels*, 776 F.3d at 199 (although a decisionmaker may have harassed plaintiff, plaintiff's claim fails because she did not link the harassment to retaliatory animus); *Barton v. MHM Correctional Servs., Inc*., 454 F. App'x 74, 79 (3d Cir. 2011) (plaintiff must offer a basis for linking alleged retaliatory actions to protected activity); *Griffin v. De Lage Landen Fin'l Servs., Inc.*, 219 F. App'x 245, 247 (3d Cir. 2007)

---

[3]  As explained below, there is no evidence of intervening antagonism or retaliatory animus.  Given this, the timing involved here between Broadnax's Charges and her termination not only fails to raise an inference of causation, but the timing also conclusively <u>disproves</u> it, as a matter of law. *See e.g., Krouse*, 126 F.3d at 504 (nineteen-month gap, absent evidence of intervening antagonism and retaliatory animus, is conclusive; plaintiff failed to show causation as a matter of law).  Indeed, Jefferson continued to employ Broadnax for eight years after her 2011 Charge and for two years after her 2017 Charge. SOFS at ¶¶ 7, 17, 94.

(finding no "intervening gender-based antagonism" when plaintiff failed to show that the antagonism arose because of her gender).  Hoping to take the focus off her gross misconduct for which she was terminated – fist-fighting with a coworker at work during work hours - Broadnax rattles off a hodgepodge of purported mistreatments she claims she experienced during her eight years of employment. *See* SOFs at ¶¶ 118-164.  Whether these incidents are analyzed under the causation prong of the *prima facie* case or when evaluating pretext, the incidents - as discussed in detail in Section III.C.2., *infra* – cannot help Broadnax overcome summary judgment.  The incidents neither suggest ongoing antagonism for the Charges nor have anything to do with Jefferson's decision to terminate her for her undisputed misconduct. Because Broadnax has no other indicia of causation, summary judgment should be granted on all Broadnax's claims.

### 2.    Broadnax Cannot Establish Pretext

In addition to the fact that Broadnax cannot state a *prima facie* case of retaliation, summary judgment is appropriate also because Jefferson has offered its legitimate nondiscriminatory reason for terminating her (her participation in the fistfight with Taylor) and Broadnax cannot offer sufficient evidence to show this reason was pretextual.  As stated above, to show pretext, Broadnax "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's decision to terminate Plaintiff's employment." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998).  Because the ultimate issue is whether Jefferson was motivated by retaliatory animus, Broadnax must do more than show Jefferson was "wrong or mistaken" in its decision; she must show that Defendants were "so plainly wrong that [the reason offered] cannot have been [their] real reason." *Jones*, 198 F.3d at 413 (citation and internal quotation marks omitted); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993).  In other words, she must

8

show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Jefferson's] proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Preston v. Vanguard Group, Inc.*, No. 14-07243, 2015 WL 7717296, at \*10 n.13 (E.D. Pa. Nov. 30, 2015) (Pappert, J.) (citing *Fuentes*, 32 F.3d at 765). Broadnax can do this only by presenting evidence "contradicting the *core facts* put forward by [Jefferson] as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (emphasis added). Moreover, when determining if there is a genuine question of pretext, the Court must not "sit as a super-personnel department that reexamines [Jefferson's] business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers . . . [the inquiry is limited to whether the employer gave an honest explanation of its behavior." *Brewer*, 732 F.3d at 332 (citation omitted).

Broadnax has failed to raise a question of pretext under the foregoing standard. She has no evidence of weaknesses, inconsistencies or contradictions in Jefferson's legitimate reason for terminating her – her participation in a fistfight with a coworker at work during work hours. Indeed, as discussed below, all the evidence is <u>consistent</u> with Jefferson's rationale.

To start, it is undisputed that Jefferson investigated the fistfight and, in so doing, obtained statements from Taylor, Broadnax and a witness revealing undisputed facts on which Jefferson made its termination decision. SOFs at ¶¶ 63-93. Specifically, Broadnax confessed in her handwritten statement the following:

> I clocked in and walked in the O.P Lab. After I put my things in my locker, I came near the other Phlebotomist. Crystal said to Tynesha 'Don't forget to add your mag & Phos' a subliminal comment. So I said 'Crystal I'm not for ya stuff today, yu too f'ing old for that.' She got up and got in my face and said 'did you just curse @ me?' Then she said 'Your Done!" She left O.P. lab, and when she came back I said why are you always so sarcastic, she said do you wanna talk about this outside, I said yes because we had students & pts. She

9

> got in front of the Lab door and proceeded to get loud. I said I'm not doing this right here in front of the Dr's office's and adminsitration. So she come on then turned the hall near the time clock, she said 'because I'm going to hurt you.' I said your not going to put your hands on me, she said 'Then why you come outside,' I said to talk, you not going to touch me. She then started bumping my chest all in my face. I said, I'm going to tell Joyce this is crazy, as I turned around she grabbed my hair on the right side, hit me, and pulled me to the floor. At that point I began defending myself. Dywanna Broadnax.

*Id.* at ¶ 73.  In other words, she admitted to responding to Taylor's "subliminal" comment by provoking her with profanity, to reviving and escalating the confrontation when Taylor returned to the room, to accepting an invitation to "talk about this outside" (which is a common euphemism for fighting), and thereafter to "defending [her]self." *Id.* at ¶ 74.  In addition, Jefferson's Security Report reflected that Broadnax and Taylor admitted to having a verbal altercation that turned physical in the hospital hallway and that Loretta Ward ("Ward") saw "two girls fighting" who would not stop fighting despite Ward yelling for them to do so. *Id.* at ¶¶ 64-66.  In fact, Ward elaborated on this in her handwritten statement by explaining that the two girls were "fist fighting" and Security needed to tear them apart. *Id.* at ¶ 76.  The Human Resources Business Partner ("HRBP"), Aaron Sniderman ("Sniderman"), confirmed that the Security Case Report and Ward's statement accurately reflected what had occurred and, in that process, Ward made clear to Sniderman that she saw Taylor and Broadnax entangled on the floor fighting. *Id.* at ¶¶ 90-91.

It is also undisputed that, based on the foregoing information about the fistfight, five different individuals – including representatives from senior management, management and Human Resources - determined Broadnax's conduct, along with Taylor's conduct, warranted their terminations under Jefferson's policies. *Id.* at ¶¶ 63-93.  In fact, even Broadnax agrees (as she truthfully must) that fist fighting with a coworker at work violates Jefferson's Code of Conduct policy, Employee Disruptive Conduct Policy, and No-Violence Policy. *Id.* at ¶ 104.  To be sure,

10

Jefferson's Code of Conduct requires employees, among other things, to "promote and support an environment free from disruptive behavior and poor working relationships," and to "foster a safe and healthy environment," *id.* at ¶ 23, and Jefferson's Employee Disruptive Conduct Policy and No-Violence Policy collectively prohibit "acts of violence," "abusive" conduct that "disrupts the smooth and efficient operations of Jefferson," and conduct that is "threatening." *Id.* at ¶¶ 25-26. It is undisputed that each policy, as well as the applicable Employee Disciplinary Procedures Policy, provides that violations may result in termination. *Id.* at ¶¶ 24, 26-28. Perhaps recognizing this, Broadnax candidly admits she believes the fistfight was the real reason she was terminated. Consistently, she texted Joyce Zagacki ("Zagacki") after the fistfight to apologize for "asham[ing] the lab." *Id.* at ¶¶ 105, 107; *accord id.* at ¶¶ 108-109; *see also* SOFs, ¶ 57. Indeed, Taylor - the only other person who engaged in comparable conduct (the fistfight) - also was terminated. *Id.* at ¶ 108. This disproves pretext. *In re Tribune Media Co.*, 902 F.3d 384, 404 (3d Cir. 2018) (finding no pretext when the best comparator received the same treatment for participating in the same incident); *Paynter*, 2008 WL 11364245, at *3 (holding there is no inference of pretext when both parties placed on suspension immediately following altercation and both were terminated on the same day for violating workplace no violence policy).

Further, it makes perfect sense that Jefferson – like any other responsible employer – would decide to terminate employees for engaging in a fistfight at work during work hours. Indeed, five different individuals considered such misconduct intolerable and, as such, Broadnax and Taylor were terminated for the fight. *See id.* at ¶¶ 67-69, 71, 81-93. In short, there are no inconsistencies or weaknesses in Jefferson's termination rationale.

Broadnax may try to raise a genuine dispute regarding the foregoing by denying she knew she was accepting an invitation to fight when she agreed to "talk about this outside" or arguing

11

10156061.v1

that she should not have been terminated because she was only "defending [her]self." SOFs at ¶¶ 95-97. The Court should reject such an effort. The Security Case Report and the verified witness statements make clear that both Taylor and Broadnax were responsible for the fistfight. *Id.* at ¶¶ 63-77, 90-91. That Broadnax (or even this Court) would disagree does not raise a question of pretext to survive summary judgment when the overwhelming evidence here consistently shows Jefferson honestly and reasonably credited the allegations against Broadnax. *See id.* at ¶¶ 67-69, 71, 81-93*; Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 (3d Cir. 2017) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) for principle that, "arguing about the accuracy of the employer's assessment [of the employee's conduct] is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*'") (emphasis in original)); *Bloch v. Mack Trucks, Inc.*, 240 F. Supp.3d 365, 374 (E.D. Pa. 2017) (Schmehl, J.) (explaining plaintiff cannot show pretext by denying she violated company policy); *Furru v. The Vanguard Grp.*, No. 14-05034, 2015 WL 5179407, at *6 (E.D. Pa. Sept. 4, 2015) (Pappert, J.) (plaintiff disputing defendant's characterization of events does not demonstrate causation (or pretext) when evidence showed employer honestly believed he engaged in conduct for which he was terminated); *see also Willis v. UPMC Children's Hosp.*, 808 F.3d 638, 644 (3d Cir. 2015) (focus is not on whether employer made the best decision but whether the real reason for the decision was retaliatory). Indeed, pretext cannot be shown by Broadnax or this Court "second guess[ing] the method [Jefferson] used to evaluate [Taylor's and Broadnax's conduct]." *See Kautz*, 412 F.3d at 468; *Weldon v. Kraft, Inc.*, 896 F.2d 793, 799 (3d Cir. 1990) (court does not question employer's prerogative to set any standards it wishes nor does the court substitute its view for employer's); *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (courts are "loathe" to interfere with management decisions).

12

Broadnax fares no better by questioning why she had not been asked to provide her side of the story before being terminated. SOFs at ¶ 95.  To start, Broadnax provided two statements to Security about the fistfight (one orally and one written) so it is unclear why Broadnax contends she should have been interviewed yet again. *Id.* at ¶¶ 63, 65-66, 73-74.  Regardless, Broadnax cannot show pretext with her subjective criticism of Jefferson's investigation. *Bloch*, 240 F.3d at 375 (citing numerous cases concluding that inadequate or flawed investigations are not sufficient to establish pretext); *Brewer,* 72 F.3d at 332.[4]

Moreover, Broadnax pointing to Taylor's disciplinary history and/or conduct prior to the fistfight is nothing more than a red herring.  Although a plaintiff can try to show pretext with evidence that the employer treated a "similarly situated" employee better than plaintiff, the alleged comparator must be similar "in all respects [to plaintiff] – in other words, . . . [have] engaged in "the same conduct" that was of "comparable seriousness," "without such differentiating or mitigating circumstances as would distinguish [her/his] conduct or the employer's treatment of [him/her]." *In re Tribune Media Co.*, 902 F.3d at 403; *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).  Broadnax cannot meet this standard regarding Taylor's prior conduct.  Here, Broadnax has not and cannot produce evidence showing Taylor – or anyone else for that matter - had engaged in a fistfight before the one with Broadnax. *Accord* SOFs at ¶¶ 70, 112-117.  Thus, any conduct in which Taylor had engaged in the past was, therefore, to use Broadnax's word - "different" - and not comparable to the conduct in which Taylor and Broadnax engaged for which they were

---

[4]   It appears any additional investigation would not have helped Broadnax anyway, especially if it involved interviewing her a third time as she appears to have expected.  Presumably Broadnax would have reported to Sniderman the further detail she provided in her deposition and/or to the court in the criminal trial against Taylor. *See* SOFs at ¶¶ 29-57.  Those facts only further verify Jefferson's determination that Broadnax's termination was appropriate for her active participation in the verbal and physical altercation with Taylor. *Id.*

terminated. *Id.* at ¶¶ 112-117.  Accordingly, that Jefferson did not terminate Taylor <u>before</u> the fistfight does not prove pretext. *Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 113 (3d Cir. 2003) (employer's judgment of the seriousness of an incident does not show that the reason for termination is pretextual); *Torres v. Cty. of Berks*, No. 17-01890, 2018 WL 564406, at *9 (E.D. Pa. Jan. 26, 2018) (Leeson, J.) (courts generally defer to employers when it comes to interpreting their own policies).

Finally, Broadnax's attempt to distract this Court with a list of various workplace gripes over the eight years she was with Jefferson does not render those gripes relevant to prove her claim of retaliatory firing.  As an initial matter, none of the incidents about which Broadnax complains even suggest ongoing antagonism for her Charges.

Broadnax contends George Marrone ("Marrone"), Suzana Hamza ("Hamza") and Zagacki harbored retaliatory animus against her. SOFs at ¶ 118.  More specifically, Broadnax claims Marrone and Hamza evidenced animus by not addressing Broadnax's complaints about Zagacki. *Id.* at ¶¶ 119-133.  The record belies this contention.  Putting aside that Broadnax's complaints were about ordinary workplace tribulations that Broadnax's admissions seem to suggest were not even well-founded, the record evidence shows Marrone and Hamza collectively followed up and addressed many of Broadnax's concerns. *See id.* at ¶¶ 121, 125-133.[5]  Also, Broadnax has zero evidence that Marrone or Hamza treated Broadnax any differently than they treated anyone else with comparable workplace grievances.  Further, regardless of Hamza's efforts, there is zero evidence she was involved in the investigation of the fistfight or in the decision to terminate Broadnax. *Id.* at ¶ 123.  Given the foregoing, all Broadnax has left about Marrone and Hamza are

---

[5] Broadnax sent one complaint-ridden email to Hamza on June 20, 2019, about petty slights she says she experienced by her coworkers and Zagacki. *Id.* at ¶ 121.b.  Hamza was not Broadnax's HRBP at the time and Broadnax has no evidence to show that Hamza otherwise would have addressed Broadnax's complaints. *Id.* at ¶ 120.

14

Broadnax's unsupported assertions which cannot help her overcome summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (for claims or defenses on which non-movant bears the burden of proof at trial, a movant can obtain summary judgment simply by pointing out "an absence of evidence to support the nonmoving party's case").

Regarding Zagacki, none of the purported issues Broadnax claims to have had with Zagacki over the years can save Broadnax's claims either. *Id.* at ¶¶ 134-164.  First, Broadnax baselessly tries to blame Zagacki for the fistfight by contending Zagacki, out of a desire to retaliate against Broadnax, deliberately did not address Broadnax's complaints about Taylor in the months preceding the fist fight and did not warn Broadnax that Taylor was angry at her the day of the fight. *Id.* at ¶¶ 155-164.  The record, including Broadnax's own admissions, do not support this notion. Broadnax admits Zagacki responded to Broadnax's complaints about Taylor in the way Zagacki "typical[ly]" responded to conflicts between the Lab Assistants, i.e., by trying to resolve the matter by speaking to the parties involved instead of through discipline. *Id.* at ¶ 156. In fact, when Broadnax complained about a different coworker (Tynesha Jenkins ("Jenkins")) around the same time Broadnax was complaining about Taylor, Zagacki investigated the complaint, met with Jenkins and Broadnax, and helped them resolve their differences. *Id.* at ¶¶ 159-160. Zagacki even handled complaints about Broadnax (and there were several) the same way. *Id.* at ¶ 157. Regardless, Broadnax listed many other employees who allegedly complained about Taylor's behavior towards them, and there is no evidence these employees complained of discrimination/retaliation and that Zagacki's response to their complaints differed in any way from Zagacki's response to Broadnax's complaints about Taylor.  *Id.* at ¶ 158.  Finally, Broadnax's claim that Zagacki chose to not warn Broadnax the day of the fistfight that Taylor was angry with Broadnax should be rejected out of hand, as it is based on nothing more than Broadnax's

15

speculation, *id.* at ¶¶ 162-164. *See Thomas,* 632 F. App'x at 720 (affirming summary judgment when plaintiff "relie[d] solely on his own testimony and speculation to support his claims."); *Becker*, 2022 WL 196286, at *4 (quoting *Betts*, 621 F.3d at 252) (noting court should not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions"). Broadnax has zero evidence Zagacki would have warned Broadnax but for her filing the Charges. SOFs at ¶¶ 162-164.

Second, Broadnax claims Zagacki told her coworkers about her 2011 Charge and "created a narrative" that Broadnax was a "troublemaker" for suing her supervisor. *Id.* at ¶¶ 135-140. Because Broadnax concedes she does not know how her coworkers learned of the 2011 Charge and never personally heard any derogatory comments from Zagacki (or any decisionmaker here) about Broadnax or anyone else for his/her/their disability, race, or complaining of discrimination or retaliation, *id.* at ¶¶ 136-137, Broadnax relies on only vague, unsupported hearsay statements to try to support her claims. Specifically, Broadnax contends: (a) Lisa Hall ("Hall") told Broadnax in 2015 that Zagacki told Hall in 2011 or 2012 that Broadnax was a "troublemaker" and had filed a complaint against Zagacki; (b) Geniece Carroll ("Carroll") told Broadnax in 2012, "No one likes you. Why would you want to come back after you sued your supervisor?"; and (c) Lindsey D'Elia ("D'Elia") - the Phlebotomy Coordinator - told Broadnax that D'Elia was "limited with training [Broadnax] in certain areas because [Zagacki] prefers for [Broadnax] to be in the outpatient area, to keep [Broadnax] away from . . . other coworkers" and that, in 2011, Zagacki "referenced something about [Broadnax] suing [Zagacki]." *Id.* at ¶ 138. [6] These purported statements, even if

---

[6] Broadnax also points to D'Elia's comment to try to show that Zagacki failed to train Broadnax, unlike her coworkers, in retaliation for the 2011 Charge. SOFs at ¶ 142. The record refutes this claim, however. Even if it were true that Broadnax did not receive training beyond phlebotomy that some of her coworkers received, it is also true many other coworkers were like Broadnax, i.e., they also were not trained beyond phlebotomy. There is no evidence any of these other coworkers complained of discrimination or retaliation. *Id.* at ¶¶ 143-144. Thus, Broadnax cannot raise a question of a causal link between Zagacki's purported failure to train Broadnax and her Charges. Further and in any event,

16

made, are too ambiguous and vague to have any evidentiary value. *See Paradisis v. Englewood Hosp. Med. Ctr.*, 680 F. App'x 131, 137 (3d Cir. 2017) (affirming holding that plaintiff failed to establish prima facie case with statements that were too ambiguous to constitute evidence of discrimination); *Walters v. Potter*, CA No. 05-cv-1745, 2007 WL 693978, at *10 (M.D. Pa. Mar. 5 2007) (Conner, J.) (decisionmaker's comment that plaintiff was a "troublemaker" did not evidence an intent to retaliate); *Van Horn v. Elbeco Incorporates*, A No. 94-2720, 1996 WL 385630, at * 13 (E.D. Pa. July 10, 1996) (Troutman, J.) (same). Indeed, Broadnax fails to provide sufficient specifics about the context of Zagacki's purported statement to Hall. SOFs at ¶ 138. Without this, the statement lacks any probative force. *See e.g., Vasbinder v. Shinseki*, No. 09-1239, 2011 WL 1789989, at *7 (W.D. Pa. May 10, 2011), *aff'd* 487 F. App'x 746, 750 (3d Cir. 2012) (rejecting plaintiff's contention that supervisor's alleged ageist comment evidenced discriminatory motive when plaintiff offered insufficient evidence regarding context of statement); *Harry v. National R.R. Passenger Corp.*, CA No. 03-4704, 2005 WL 1971884, at *4 (E.D. Pa. Aug. 16, 2005) (Tucker, J.) (rejecting notion that statements prove animus when context is lacking). Also, although Broadnax provides some context for Carroll's statement, that context belies the notion it was motivated by retaliatory animus for Broadnax's Charges. Broadnax admits Carroll made the statement to Broadnax immediately after Broadnax told Carroll she was doing something incorrectly, which Broadnax concedes made her coworkers not like her. *Id.* at ¶¶ 15, 138. Further, D'Elia's statement is vague and susceptible to multiple innocuous interpretations.

Similarly, the record is devoid of any evidence explaining the basis for Carroll's statement that "[n]o one likes" Broadnax and for D'Elia's statement about Zagacki's "preferences." Thus, they lack foundation and convey only unsubstantiated opinions that are inadmissible under Federal

---

Broadnax concedes additional training would not have led to a change in title or compensation or provide her with any further opportunities for advancement. *Id.* at ¶ 145.

17

Rules of Evidence 701(a) and 602 precluding opinion testimony not rationally based on the perception of the witness or the witness' personal knowledge. *Wood v. Developers Diversified Realty Corp.*, No. 04-5563, 2006 WL 456303, at \*\*2-3 (E.D. Pa. Feb. 23, 2006) (Surrick, J.); *see also Summy-Long v. Pa. State Univ.*, No. 06-1117, 2009 WL 811616, at \*2 (M.D. Pa. Mar. 26, 2009) ("Statements of belief, no matter how sincere, . . . do not meet the personal knowledge requirement").[7]

Regardless of the foregoing, Broadnax admits that any purported statements by Zagacki allegedly were made in 2011 and 2012 - many years before Broadnax's termination and outside the context of the termination decisional process. SOFs at ¶¶ 138-139, 63-93.  Thus, these purported statements are stray remarks that should carry little, if any, weight. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks by . . . decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision"); *Tielle v. Nutrition Grp.*, 810 F. App'x 160, 163 (3d Cir. 2020) (finding plaintiff failed to raise genuine question of causation with comment made a year before the termination); *see also Ade v. KidsPeace Corp.*, 698 F. Supp.2d 501, 514 (E.D. Pa. 2010) (DuBois, J.) (statements made long before termination did not evidence discriminatory firing); *Kopko v. Lehigh Valley Health Network*, CA No. 14-1290, 2016 WL 6442062, at \*6 (E.D. Pa. Oct. 31, 2016) (Stengel, J.) (citing long list of cases finding statements made long before termination did not raise inference of unlawful animus); *Fischer v. Pepper Hamilton LLP*, CA No. 15-02413, 2016 WL 362507, at \*16 (E.D. Pa. Jan. 29, 2016) (Pappert, J.) (statement by

---

[7]  Further, even if Broadnax's coworkers' statements were clear and relevant, they cannot be considered on summary judgment unless Broadnax presents sufficient evidence to show that Hall's and Carroll's statements fall under any exception to the hearsay rule.  Broadnax has not done so and, as such, none of the statements may be considered on summary judgment. *See* Fed. R. Evid. 805; *see also* Fed. R. Civ. P. 56(c)(2) ("[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

decisionmaker unrelated to termination decisional process made eight months before termination did not establish animus).

With no admissible evidence supporting the claim that Zagacki created a "narrative" about Broadnax, Broadnax may try to point to discrete incidents with Zagacki to show retaliatory animus. On this, Broadnax would fail, as nothing about the incidents suggests animus for the Charges, much less for anything.  Specifically, Broadnax claims Zagacki placed Broadnax on a reduced schedule pursuant to which she did not work the same hours as other lab assistants, was afforded minimal to no interactions at work, and missed staff meetings. SOFs at ¶ 146.  It is undisputed, however, that Zagacki scheduled Broadnax pursuant to her requests. *Id.* at ¶¶ 11-12, 147. Nevertheless, Broadnax lacks any comparator evidence to even suggest Broadnax missing staff meetings (or other events) had anything to do with her filing the Charges.  *Id.* at ¶¶ 12, 148-149.

Next, Broadnax blames Jefferson for the fact that she had not been registered automatically for a retirement account when she was rehired in 2011 and did not learn of this fact until 2017. *Id.* at ¶ 150.  Broadnax cannot point to any evidence showing that anyone who even knew about her 2011 Charge or was involved in the termination decision was responsible for informing her of her eligibility for retirement benefits, whether by way of a welcome packet or otherwise. *Id.* at ¶ 151. In fact, Broadnax candidly testified that she just does not think "it was handled correctly" by any number of different individuals about whom Broadnax admits she has no evidence of retaliatory animus. *Id.*

Finally, Broadnax contends Zagacki denied her accommodations in the middle of 2017 by not allowing her to have a mini heater to warm her hands and by failing to remove a broken piece of metal under a work desk that had cut Broadnax's skin. *Id.* at ¶ 152.  Broadnax's contentions fall flat.  Broadnax admits that, instead of the mini heater, Broadnax was able to utilize an alternate

19

10156061.v1

accommodation that enabled Broadnax to perform her job, i.e., holding hot tea or cocoa. *Id.* at ¶ 153. Also, regarding the removal of the broken metal piece, it is undisputed that Zagacki helped Broadnax by: (a) instructing her to sit at another desk; (b) putting tape over the metal piece; (c) calling Facilities to remove the metal piece; and (d) removing the piece herself when Facilities did not remove it. *Id.* at ¶ 154. The evidence of such efforts, and any other evidence Broadnax has offered or could offer, fail to evidence retaliatory animus.

Nevertheless, in pointing to workplace slights she claims to have experienced over the years, Broadnax seemingly is ignoring the bedrock principle that "a discrete, readily determinable intervening event of sufficient severity" can "break any causal nexus between [plaintiff's] participation in a protected activity and the adverse employment action of which she complains." *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 95 (3d Cir. 2020); *see also Weiler v. R&T Mech., Inc.*, 255 F. App'x 665, 668-69 (3d Cir. 2007) (finding no inference of causation despite allegations of temporal proximity and animosity supervisor showed towards plaintiff after protected activity, when plaintiff abandoned job site which was the "crucial intervening fact" that "broke the causal chain"); *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp.3d 597, 618, 19 (E.D. Pa. 2014) (Buckwalter, J.) (quoting *Outten v. Genesis Health Care, LLC*, CA No. 13-4708, 2014 WL 3964918, at *12 (E.D. Pa. Aug. 12, 2014) (Buckwalter, J.)) (explaining that "causal link between an employee's protected activity and an adverse employment action against that employee may be broken by intervening events"). There can be no genuine dispute that such is the case here.

Broadnax concedes that the underlying conduct for which she was terminated (the fistfight) violated Jefferson's policies, and admits the fight was the real reason she was terminated. SOFs at ¶¶ 103-105; *accord id.* at ¶ 106-107. It seems to go without saying that employees (like Broadnax and Taylor) admittedly engaging in a fist fight at work during work hours is severe enough to break

20

any causal chain between any protected activity and the termination decision for that fistfight. This is particularly so when none of Broadnax's allegations about purported mistreatments she experienced before this intervening event concern any disputed material (and core) facts relating to the altercation itself or to Jefferson's decisions related to it. *See Paynter*, 2008 WL 11364245, at *4 (summary judgment granted when no reasonable factfinder could infer defendants terminated plaintiff for anything other than the asserted reason – for getting into a fistfight at work).

As the court in *Wright v. Providence Care Ctr. LLC* succinctly articulated, which is so fitting here: "Engaging in protected activities does not give an employee free reign to disregard workplace rules. [Broadnax] cannot avoid the consequences of her very serious misconduct by pointing to protected activities that bear no discernible relationship to her impermissible behavior." 2019 WL 4643592, at *15 (W.D. Pa. Sept. 24, 2019), *aff'd* 822 F. App'x 85 (3d Cir. 2020) (plaintiff's involvement in altercation, four days before her termination, was a clear instance of an intervening event cutting off any potential inference of retaliatory conduct" despite protected activities months earlier); *see also Calero v. Cardone Indus., Inc.*, No. 11-3192, 2012 WL 2547356, at *10 (E.D. Pa. June 29, 2012) (Baylson, J.) (lying to employer about arrival times broke causal link between FMLA leave and termination); *Naber v. Dover Healthcare Assocs., Inc.*, 765 F. Supp.2d 622, 647 (D. Del. 2011) (causal link broken between FMLA leave and termination when plaintiff falsified records).

Because there is a complete lack of evidence from which a reasonable factfinder could find pretext, this Court should grant summary judgment on Broadnax's claims.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant summary judgment in favor of Defendant on all Counts of the Complaint.

21

10156061.v1

Respectfully submitted,


Dated:  September 2, 2022                    /s/ Lee D. Moylan
                                             Lee D. Moylan
                                             Stephanie Wolbransky
                                             KLEHR HARRISON HARVEY
                                             BRANZBURG LLP
                                             1835 Market Street, Suite 1400
                                             Philadelphia, PA 19103
                                             Telephone: (215) 569-2700
                                             Fax:  (215) 568-6603
                                             lmoylan@klehr.com/
                                             swolbransky@klehr.com
                                             Attorneys for Defendant

22

10156061.v1