**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DYWANNA BROADNAX , | |
| Plaintiff, | |
| v. | Civil Action No. 21-CV-04662-JMY |
| THOMAS JEFFERSON UNIVERSITY HOSPITAL, INC., | |
| Defendant. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

On or about October 22, 2021, Plaintiff Dywanna Broadnax ("Broadnax") filed a

complaint of discrimination against Defendant Thomas Jefferson University Hospitals, Inc.

("Jefferson") alleging violations of her rights pursuant to the  Americans with Disabilities

Act ("ADA"), and its 2008 amendments, 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil

Rights Act ("Title VII")[1], and the Pennsylvania Human Relations Act ("PHRA").

Specifically, Broadnax alleged that Jefferson retaliated against her for engaging in protected

activity through bringing charges of discrimination against Jefferson in 2011 and 2017.

Broadnax contends that Jefferson engaged in repeated patterns of mistreatment against

Broadnax including being denied professional trainings along with her peers that would make

her eligible for expanded roles at the hospital, being excluded from staff meetings and made

to feel separated from her peers, being denied reasonable accommodations based on her

---

[1] After engaging in discovery, Plaintiff does not find substantial evidentiary basis to claim violations under Title VII of the Civil Rights act for race discrimination that would survive summary judgement. Plaintiff therefore does not address race discrimination in this brief.

disabilities, and having her complaints about mistreatment by coworkers go either unaddressed or without adequate resolution.

On or about November 18, 2019, Jefferson terminated Broadnax after she was attacked by her coworker Crystal Taylor, where Broadnax was forced to physically defend herself. Broadnax contends that Jefferson lacked a justifiable basis to accuse her of serious misconduct regarding this altercation, and instead used the altercation as pretext to terminate her for harbored retaliatory animus. Broadnax can establish a casual link between her protected activity and her termination and can cite to multiple instances of antagonism by Jefferson based on the harbored retaliatory animus of their employees. Broadnax contends that based on the below evidence, summary judgment should be denied in her case.

## II.     FACTS

Along with their motion for summary judgment, Jefferson includes a statement of material facts "about which there can be no genuine dispute." Jefferson includes this statement without having consulted Broadnax as to whether there is actually no factual dispute. Broadnax does in fact dispute Jefferson's statement of facts, and files her own Statement of Material Facts ("SOFs") along with her motion. Broadnax incorporates her Statement of Material Facts herein by reference.

## III.    STANDARD OF REVIEW

### A.  Legal Standard for Summary Judgment

Granting a motion for summary judgment is only warranted if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A genuine dispute exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013), *quoting Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue is established if a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Anderson*, 477 U.S. at 248-49.

"[O]n summary judgment, the inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986), *quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). "If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." *Gelover v. Lockheed Martin,* 971 F.Supp. 180, 181 (E.D.Pa.1997).

### B.  Legal Standard for Discrimination

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) establishes the framework for a case sounding in discrimination. Under this analysis, the complainant bears the initial burden of demonstrating a *prima facie* case of discrimination. *Id.* at 802. To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) they engaged in protected employee activity; (2) they experienced adverse action by their employer, and; (3) a causal connection exists between

the employee's protected activity and the employer's adverse action. <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494 (3d Cir. 1997). Once the plaintiff meets this requirement, the burden then shifts to the employer to articulate "some legitimate, nondiscriminatory reason for the employer's (in)actions." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the employer satisfies this burden, the burden then returns to the complainant to show that the employer's stated reason for the adverse employment (in)action is pretext. *Id* at 804. In a pretext analysis for summary judgment purposes, when an employer has articulated a legitimate, nondiscriminatory reason for its action, a complainant may submit either direct or circumstantial evidence, "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling*, Inc., 142 F.3d 639, 644 (3d Cir.1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  The complainant "need not always offer evidence sufficient to discredit all of the rationales advanced by the employer" because "the rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales." *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). Additionally, "if the [complainant]  has pointed to evidence sufficient[ ] to discredit the defendant's proffered reasons, to survive summary judgment the *[complainant] need not also come forward with additional evidence of discrimination beyond his or her prima facie case.*" *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) (*quoting Fuentes*, 32 F.3d at 764).

Temporal proximity and patterns of antagonism are often used to show causation, however causation can also be shown when the proffered evidence, looked at as a whole,

sufficiently raises an inference. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997); citing *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir.1986).

Protected activity under the ADA includes participating in an EEO process. This includes participating in any manner of in an investigation, proceeding, or hearing under EEO laws, and is broadly protected. EEOC Enforcement Guide on Retaliation and Related Issues EEOC-CVG-2016-1, *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006), *as amended* (Sept. 13, 2006).

### IV.    Legal Argument

#### A.  Broadnax Sufficiently Raises an Inference of Causation between her protected activity and her adverse employment action.

In their Motion for Summary Judgment ("MSJ"), Defendant concedes that Broadnax engaged in protected activity under the ADA while employed with Defendant and suffered adverse employment action by Defendant. MSJ at 6. However, Defendant asserts that those two facts lack a causal link. In furthering this point, Defendant claims that the protected activity Broadnax engaged in occurred in 2011- 2017, but she was not terminated until 2019, and this gap in time destroys her causal link. This argument fails, as Broadnax remained engaged in protected activity though 2019, up until months prior to her termination.

Broadnax's 2017 protected activity that Defendant refers to was the filing of an EEO charge in December 2017 where she alleged disability discrimination for Defendant's failure to meet her reasonable accommodation requests. SOFs at ¶ 49, 50. This EEO charge remained open as an active investigation until April 2019, during which time both Broadnax and Defendant participated in the EEOC process through responding to investigative inquiries and providing documentation relevant to the charge of

discrimination. Participation in an EEO process as protected activity is construed broadly and includes participation in any manner of an investigation. SOFs at ¶ 51, 52. Broadnax was, therefore, engaged in protected activity throughout her participation in the EEO investigative process into her 2017 charge, through 2019.

Furthermore, Broadnax alleges that she experienced patterns of antagonism as a result of harbored animus for her protected activity following the initial filing of her 2017 charge, up to 2019, and throughout 2019, ultimately leading to her termination. "Intervening patterns of antagonism" between protected activity and the materially adverse action may also raise an inference of causation. *Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997). Broadnax contends that through 2017 and into 2019, she continued to experience hostility from her coworkers upset at her for doing her job duties by accurately checking their work and routinely felt undermined by her superiors. She addressed this hostility in an email she wrote to Joyce Zagacki ("Zagacki"), George Marrone ("Marrone"), and Suzana Hazma ("Hazma") on or about June 2019, stating that "at this point, I don't what else I should do." SOFs at ¶ 53.

Shortly after Broadnax's return to work in April 2019, Crystal Taylor ("Taylor") began to antagonize her, which behavior Broadnax reported to Zagacki multiple times. SOFs at ¶ 70, 71. Broadnax alleges that her complaints about Taylor were either ignored, or not adequately or formally addressed, as all Zagacki committed to doing to address Broadnax's concerns was to have side conversations with Taylor that did not result in any change in Taylor's behavior. *Id.* Zagacki's indifference to Broadnax's concerns is consistent with the mistreatment Broadnax experienced since her return to Jefferson in 2011. Broadnax alleges that Zagacki's failure to properly address her concerns of

6

harassment by Taylor throughout 2019 was a result of her harbored animus towards Broadnax for engaging in protected activity. SOFs at ¶ 110. Broadnax also asserts that her continuous issues with Taylor continued to build up, ultimately resulting in Taylor physically attacking Broadnax in November 2019.  These actions of antagonism sufficiently show a temporal link from the initiation of Broadnax's December 2017 EEO charge through her termination in November 2019.

Additionally, the Third Circuit has found that timing and ongoing antagonism themselves are not the only ways to substantiate a prime face case of causation, and that causation can be shown when the proffered evidence, looked at as a whole, sufficiently raises an inference. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173 (3d Cir. 1997); citing *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir.1986). Here, the evidence of Jefferson's mistreatment and antagonism of Broadnax over a nine (9)-year period more than creates an inference of causation that resulted in Broadnax's termination. To imply that Broadnax engaged in protected activity in 2011 and 2017, and then was terminated in 2019, ignores a repeated pattern of adverse employment action Broadnax experienced over the course of several years, which link directly to her ultimate termination.

Broadnax can present evidence of ongoing conduct by Defendant showing disparate treatment, harassment, and discrimination starting after 2011 when she first engaged in protected activity, extending through her reasonable accommodation claim in 2017, and up to her termination. Defendant dismisses these incidents as "workplace gripes," yet all of these incidents are connected to Broadnax's disability or medical leave.

From 2005-2008, Broadnax performed her job duties normally with little issue.

7

Broadnax then suffered multiple serious health conditions which required long-term care and treatment, and was forced to resign because she did not have enough FMLA time to cover the length of her treatment. SOFs at ¶ 6, 7. Broadnax contends that after filing her 2011 PRHC Complaint and her returning to work for Jefferson in 2011, she began to experience mistreatment and antagonism in a manner that did not previously exist. SOFs at ¶ 14. Among these issues, Broadnax contends that she was denied the opportunity to participate in trainings along with her coworkers that could increase her professional experience, skills, and would allow her to work in expanded roles as a phlebotomist such as Accessing, Send Outs, Microbiology, and working in the Infusion Center. SOFs at ¶ 20-25.

Broadnax contends that she was informed by her coworker that Zagacki was intentionally preventing Broadnax from participating in trainings, and that Zagacki had referred to Broadnax as a "troublemaker" for filing a discrimination complaint against her. SOFs at ¶ 23. Despite this, Broadnax repeatedly requested trainings, which Zagacki repeatedly agreed to as evidenced by Broadnax's performance evaluations from 2011-2016, yet never actually allowed Broadnax to participate in. SOFs at ¶ 24. Broadnax specifically asked Zagacki for trainings in writing on at least one occasion in 2014. SOFs at ¶ 26. Broadnax contends that in response to her request for more training, Zagacki stated that Broadnax's work schedule meant she arrived too late in the day to attend certain trainings. Broadnax, however, replied that she was willing to come to work earlier or come in on one of her days off in order to receive said trainings, but Zagacki still failed to schedule them. SOFs at ¶ 21.

Broadnax contends that from 2011 until her termination in 2019 Zagacki allowed

8

her to be used as a scapegoat when she corrected her coworkers' script errors, which were part of her job duties, causing Broadnax to be disliked by her peers and created an overall hostile work environment. SOFs at ¶ 18. Because Broadnax's work schedule was different than her coworkers due to her disability limitations, she could not be present to explain her error corrections or address her coworkers' concerns directly. Id.

Broadnax contends that from 2011-2019, Zagacki failed to include Broadnax in staff meetings and other workplace events, often using the excuse that Broadnax's schedule wasn't conducive to attend meetings, although Broadnax again offered to come in to work early or on her days off to attend these events, as she felt she was being excluded from her peers. SOFs at ¶ 28.

Broadnax contends that the incidents described in her 2017 EEOC Complaint also constituted patterns of antagonism and harbored animus. These included Zagacki's denial of Broadnax's request to use a mini-heater to warm her hands, which Broadnax requested because her Raynaud's Syndrome made it difficult to perform her job duties. SOFs at ¶ 34- 36. Zagacki denied this request despite the fact that other coworkers were allowed to use heaters. *Id*. Broadnax also contends that her request to have a broken metal keyboard slide removed from her work area that was cutting her skin was ignored for months. SOFs at ¶ 37-40. Broadnax's skin easily tears due to her disabilities. *Id*. Zagacki initially attempted to correct this issue by taping the edges of the keyboard, but this was an insufficient accommodation as Broadnax was again later cut by the tray. *Id.* Broadnax also contends that Zagacki and HR failed to provide her with the information she needed to enroll in her retirement fund upon her return to Jefferson in 2011. SOFs at ¶ 42- 48.

Defendant's failure to address Broadnax's concerns in 2019 about Taylor

immediately after Broadnax returned from medical leave furthers the consistent behavior starting in 2011 of Broadnax experiencing retaliation for taking medical leave and requesting reasonable accommodations. SOFs at ¶ 58. Overall, Zagacki and Defendant repeatedly engaged in improper, belittling, and harassing actions against Broadnax from 2011 up through their decision to terminate Broadnax in 2019. These events, taken as a whole, further prove a causal link between Broadnax's protected activity starting in 2011, ultimately resulting in her termination.

**B. Broadnax has established pretext for retaliation sufficient to survive summary judgment.**

Broadnax can establish that Defendant's action in terminating her from employment as retaliation for her protected activity was more likely than not a motivating or determinative cause for her termination. Broadnax concedes that she was part of an incident that resulted in a physical altercation with Taylor in November 2019, and that the altercation was Defendant's stated reason for her termination. However, the evidence does not suggest a sufficient basis for Defendant to terminate Broadnax based on these facts. Broadnax was the victim of a physical attack by a coworker, a coworker whom Defendant was aware was confrontational, aggressive, had multiple prior disciplinary actions, and whom Broadnax had previously complained about for antagonism to Defendant in the months leading up the "fight." Defendant's summary of this incident in their MSJ omits this relevant context leading up to the "fight."

Evidence shows that Jefferson was aware of Taylor's hostile conduct towards both her coworkers and patients. SOFs at ¶ 56- 71. Jefferson had issued Taylor at least four (4) disciplinary warnings, three (3) of which were for confrontational acts such as

10

screaming at a coworker and making a patient feel uncomfortable. SOFs at ¶ 60, 61, 66. The final disciplinary warning issued to Taylor occurred earlier in 2019 resulting in Taylor receiving a suspension. SOFs at ¶ 66. Taylor's three (3) prior warnings, which occurred from 2016-2018, were all curiously listed by Jefferson as "First Written Warnings." SOFs at ¶ 60, 61.

Broadnax asserts that she viewed Taylor as aggressive and hostile, and this sentiment was shared by other Jefferson employees. SOFs at ¶ 57, 58. Broadnax states that several employees have complained about Taylor to Zagacki for her inappropriate behavior. SOFs at ¶ 58, 59, 62- 68. In a 2018 email, Zagacki states that a phlebotomist told Zagacki that Zagacki had failed to act on multiple complaints about Taylor, and Zagacki claims she was "not aware" that staff members were continuing to have issues with Taylor. SOFs at ¶ 63. At least three (3) direct complaints about Taylor were provided to Zagacki in 2018 and 2019 for Taylor's confrontational behavior. SOFs at ¶ 59, 62, 64, 67.  The second two (2) complaints were filed by phlebotomist Naeemah Gadson in 2018 and 2019. SOFs at ¶ 64, 67. Gadson's 2019 complaint, where she alleged Taylor had verbally assaulted her, triggered Gadson's anxiety to the point that she had to take a period of medical leave. SOFs at ¶ 67. Taylor was never written up for this incident. SOFs at ¶ 68. Broadnax's own aforementioned issues with Taylor occurred in the months leading up to Taylor's attack of Broadnax, which she had reported to Zagacki. SOFs at ¶ 70, 71. Prior to the altercation, Taylor was openly and plainly angry at Broadnax for reporting her work errors to Zagacki. SOFs at ¶73.

Defendant asserts in their MSJ that Broadnax's handwritten statement about the altercation constitutes some sort of admission that she was a willful participant. In

11

making this argument, Defendant ignores what Broadnax actually said in her statement to instead make up what they think was Broadnax's state of mind. Broadnax explicitly said in her handwritten statement to Defendant that:

- She went to talk with Taylor in the hallway because there were students and patients in the room;

- She told Taylor that Taylor was not going to put her hands on her;

- She stated that she told Taylor that she had come outside to talk to her, not to fight;

- She stated that after Taylor started bumping her and poked her, Broadnax bumped and poked her back out of self-defense, turned around to leave and get their supervisor, at which point Taylor grabbed her hair and began hitting her. SOFs at ¶ 94.

Broadnax reiterated these claims in her Deposition. *Id.* It is baseless for Defendant to assert that Broadnax was responding to what Defendant refers to as Taylor's "subliminal comment," and was intentionally provoking Taylor to hit her. It is worth reiterating that by the time of this physical altercation, Broadnax had been dealing with antagonism by Taylor for six (6) months without assistance from her supervisor, and was understandably upset. Defendant claims that Broadnax provoked Taylor, but ignores the fact that Taylor had been provoking Broadnax for months. It is also unreasonable to think that Broadnax, who suffers from anxiety as well as multiple physical limitations and disabilities, would voluntarily choose to fight an individual whom she considered to be a well-known antagonist. SOFs at ¶ 2, 70. Broadnax has consistently stated that she had no intention of engaging in a fistfight with Taylor in the middle of a hospital hallway,

12

and she did not want or expect Taylor to hit her. Even if Broadnax did provoke Taylor, Defendant has never claimed that Broadnax was terminated for provocation. Broadnax not only engaged with Taylor out of self-defense, but also tried to walk away from Taylor twice before Taylor pulled her by the hair and threw her to the ground. SOFs at ¶ 85, 94.

The sole witness statement to this fight, Loretta Ward, does not dispute Broadnax's version of events. Ward's submitted a statement that she saw Broadnax and Taylor fighting, but does not state that she saw how the altercation started. SOFs at ¶ 92, 93. She did not state who hit who first, nor did she contradict Broadnax's statement that she only began engaging with Taylor out of self- defense. *Id.*

After the altercation, Broadnax was admitted to Defendant's hospital for multiple injuries based on Taylor's attack. SOFs at ¶ 89, 90, 108. She was diagnosed with a concussion, facial contusions, bruising to her wrist and bruising to her knee resulting in permanent damage that still requires regular physical therapy. SOFs at ¶ 108.

Defendant also points to the fact that Broadnax apologized to Zagacki via text following her termination, as proof of her admittance of wrongdoing. However Broadnax's action is easily explainable by the fact that at the time she sent this text in December 2019, she was actively looking for new employment and she may need a reference letter.  She thought it necessary to try to look remorseful to Zagacki in case Zagacki was contacted for a reference letter. This is evidenced by Broadnax's next message to Zagaki in January 2020, where she directly asks for a reference letter. See, Exhibit 47 attached to Defendant's Motion for Summary Judgment.

It does not bolster Defendant's defense that Taylor was also terminated, as Taylor was the one who wanted to fight and initiated the fight. This altercation was a

13

justification for Defendant to terminate Broadnax based on her history of protected activity. Furthermore, by Defendant's own admittance, Taylor was on her final warning at the time of the November 2019 altercation based on her prior discplinary infractions. SOFs at ¶ 66.

Defendant also admits that Dennis Delisle, Jefferson's Vice President of Operations, first reviewed the Security Case Report about the "fight," and recommended that only Taylor be terminated based on the fact that she had already been issued a final warning. SOFs at ¶ 95-97. Zagacki, Marrone, Steven Gudowski, and Sniderman all went against this recommendation and wanted Broadnax terminated as well. SOFs at ¶ 98-199. It should be noted that out of these individuals, Delisle was the only objective member who did not have prior interactions with Broadnax or Taylor.

While Jefferson states that they were required to enforce their Code of Conduct and Policies and terminate both employees, it is also clear that Jefferson when and who to enforce their policies against, as evidenced by the fact that they issued Taylor three (3) "First Written Warnings" before issuing her a final warning in 2019. SOFs at ¶ 60, 61, 66. This is in addition to the other complaints about Taylor that Jefferson failed to discipline her for, including the 2019 incident where she verbally assaulted Naeemah Gadson ("Gadson"), resulting in Gadson having to take extended medical leave for anxiety. SOFs at ¶ 59, 62-64, 67, 68.

Taylor should not have even been employed with Jefferson by the time she attacked Broadnax. And the fact that Jefferson chose to impose the same level of discipline towards Broadnax as they imposed against Taylor further displays their harbored animus towards Broadnax.  It is clear that the "fight" was pretext to get rid of

14

Broadnax altogether.

In the absence of a sufficient reason for Broadnax's termination, Broadnax asserts that Defendant's true motive for terminating her was retaliation. Broadnax points as proof to all the aforementioned incidents of mistreatment that occurred after her 2011 PHRC Charge and her return to Jefferson, the denial of her reasonable accommodations forming the basis for her 2017 EEOC charge, and the continued failure to address her concerns of mistreatment that occurred up to her termination ins 2019. Broadnax's meets her burden to show pretext is that retaliation was more than likely a motivating factor or determinative cause in her termination. *Simpson v. Kay Jewelers, Div. of Sterling*, Inc., 142 F.3d 639, 644 (3d Cir.1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). She does not have to discredit any and all rationales for Jefferson's actions against her. *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). Given the connection between these repeated patterns of antagonism by Jefferson to Broadnax's engagement in protected activity, Broadnax has sufficiently established that her protected activity was a more than likely a motivating factor in Jefferson's mistreatment of her and eventual termination. Jefferson's stated reason for terminating Broadnax was pretextual, to cover up their harbored animus against her for engaging in protected activity under the ADA and the PHRC.

## V. CONCLUSION

In view of all of the facts and issues presented above, it is clear that Broadnax has experienced retaliation by Jefferson, and should be compensated for the same.

15

Respectfully submitted,


/s/ Faye Riva Cohen, Esq.
FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
2047 Locust Street
Philadelphia, PA 19103
215-563-7776

Dated:  10/3/22