IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

DYWANNA BROADNAX,

        Plaintiff,

    v.

THOMAS JEFFERSON UNIVERSITY
HOSPITAL, INC.,

        Defendant.

Civil Action No. 21-CV-04662-JMY

---

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

In Support of its motion to deny summary judgment, Plaintiff hereby submits the following statement of material facts.

1. On or about March 15, 2005, Broadnax Dywanna Broadnax ("Broadnax") was hired as a phlebotomist/lab assistant at the Methodist Hospital Division ("MHD") of Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson") (See Exhibit 3, Exhibit 4, and Exhibit 5 attached to Defendant's Motion for Summary Judgment).

2. On or about June 2006, Broadnax was diagnosed with lupus. Her diagnoses substantially impacted her ability to walk, think, concentrate, write, and hold objects. Broadnax's lupus also caused her to develop Reynaud's syndrome, which reduces blood flow to limbs and other external body parts. Broadnax also suffers from anxiety. (See Exhibit 1, Interrogatory No. 9 and Exhibit 3 attached to Jefferson's Motion for Summary Judgment).

3. Starting on or about March 2007, Broadnax began reporting to Joyce Zagacki ("Zagacki"), who had recently been promoted to the role of Laboratory Outpatient Supervisor. (See Exhibit 5, Exhibit 6 and Exhibit 20 of Defendant's Motion for Summary

Judgment).

4. Broadnax informed Zagacki of her diagnosis and her accompanying limitations. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).

5. In or about Fall 2007, Broadnax's job title was upgraded to Clinical Lab Assistant. (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).

6. In or about October 2008, Broadnax developed serious medical conditions while delivering her baby, leading her to receive emergency heart surgery. Following this surgery, Broadnax attempted to commence a period of medical leave to recover but did not have any FMLA or medical leave available. (See Exhibit 1 No. 9, Exhibit 3, and Exhibit 20, attached to Defendant's Motion for Summary Judgment).

7. Broadnax had no choice but to resign from her position to avoid being terminated while she recovered. Prior to her decision to resign, Zagacki told Broadnax that she could be rehired for a position in the future. (See Exhibit 3, Exhibit 20 attached to Defendant's Motion for Summary Judgement).

8. On or about March 10, 2011, Broadnax filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") for disability discrimination in violation of the ADA and PHRA, and race discrimination in violation of Title VII of the Civil Rights Act and the PHRA, in which she alleged that Defendant had failed to rehire her for nearly two (2) years despite multiple reassurances by Zagacki that she would be rehired. (See Exhibit 4 attached to Defendant's Motion for Summary Judgment).

9. On or about October 2011, Broadnax and representatives from Jefferson attended a

PHRC Fact Finding Session where Broadnax agreed to withdraw her charge in exchange for Jefferson considering her for an open position. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).

10. In or about October 2011, Jefferson hired Broadnax as a per diem Clinical Lab Assistant at MHD reporting again to Zagacki. (See Exhibit 5, 126:12-14, Exhibit 21, Exhibit 22, attached to Defendant's Motion for Summary Judgment).

11. Starting in or about 2011, Zagacki began reporting to George Marrone, who was Laboratory Manager and who, in 2017, became the Laboratory Operations Director (See Exhibit and 5 and Exhibit 6 attached to Defendant's Motion for Summary Judgment).

12. Broadnax explained to Zagacki that she could not work a full work schedule due to her disabilities. Broadnax also requested to work afternoons as opposed to mornings due to side of effects of her medication that made it hard for her to work in the mornings, and also to help take care of her mother. (See Exhibit 1 No. 14 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).

13. As a result of these limitations, Zagacki limited Broadnax's schedule per her request (See Exhibit 1 No. 14 and Exhibit 5, 115:17-23, 116:8-118:14, 123:4-125:8, 172:4-25; attached to Defendant's Motion for Summary Judgment).

14. Upon her return to Jefferson in 2011 after her recovering from her disabilities, Broadnax felt that Jefferson, Zagacki in particular, treated her differently than her peers, and failed to properly address her complaints and concerns of mistreatment. (See Exhibit 3, and Exhibit 5, 12:17-25 attached to Defendant's Motion for Summary Judgment).

15. Upon her return in 2011, Broadnax discovered that employees hired in the time period that Broadnax was away from Jefferson recovering from her disabilities knew about her

3

PHRC Complaint, with one coworker even stating to Broadnax that Zagacki had called her a "troublemaker" for filing a discrimination complaint against her. (See Exhibit 5, 16:2- 19: 8; 48:12- 25 attached to Defendant's Motion for Summary Judgment).

16. In or about 2011, Broadnax began checking scripts against blood draws by her coworkers to determine if they had missed any tests on the scripts and would let Zagacki know if there were errors (See Exhibit 5, 95:12-16, 199:6-23 attached to Defendant's Motion for Summary Judgment).

17. Broadnax felt that her actions of correcting her coworkers' errors caused her to be disliked amongst her peers. (See Exhibit 5, 203:21-25; 275:19-278:20, 280:2-20 attached to Defendant's Motion for Summary Judgment).

18. Zagacki would go over the errors Broadnax had observed with Broadnax's coworkers in the morning before Broadnax arrived at work in the afternoon, and Broadnax felt that this process caused her coworkers to be angry and annoyed with her for checking these scripts and made her to appear to be a "villain" in the eyes of her coworkers. (See Exhibit 5, 198:41- 199:23 attached to Defendant's Motion for Summary Judgment).

19. Zagacki privately thanked Broadnax for checking her coworker's scripts, as evidenced by a 2019 email between Zagacki and Broadnax. (See Broadnax Exhibit 1).

20. From 2011- 2015, Broadnax asked Zagacki if she could participate in training along with her coworkers so that she could go back to working in some of the expanded areas she worked in prior to her resignation. (See Exhibit 1, nos. 10 and 11, and Exhibit 21 attached to Defendant's Motion for Summary Judgment).

21. Zagacki informed Broadnax that her work schedule meant she arrived too late in the day to attend trainings, to which Broadnax replied that she did not mind coming into work

early or on one of her off days in order to receive trainings. (See Exhibit 1 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).

22. Broadnax learned that newly hired employees were receiving trainings that she was not. (See Exhibit 1 attached to Defendant's Motion for Summary Judgment).

23. In 2011, Broadnax stated that Lindsey D'Elia, an outpatient coordinator for Jefferson, informed her that Zagacki was limiting Broadnax's trainings and keeping her away from other coworkers (See Exhibit 5, 19:12 – 20:5 attached to Defendant's Motion for Summary Judgment).

24. Broadnax's performance evaluations signed by Zagacki for the years 2011-2012, 2012-2013, 2014- 2015, and 2016- 2017, note that Broadnax would receive trainings and continuing education programs in the next year. (See Broadnax Exhibit 2).

25. Broadnax contends that she never received these trainings as promised (See Exhibit 1, Exhibit 3, and Exhibit 5 338:15- 340:9 attached to Defendant's Motion for Summary Judgment).

26. In 2014, Broadnax emailed Zagacki to express her concern about Zagacki telling coworkers that Broadnax was on a reduced schedule, and also expressed her concern about not being retrained in areas necessary for advancement (See Broadnax Exhibit 3).

27. Zagacki initiated service trainings for her staff where Broadnax was not present (See Broadnax Exhibit 4) (See Exhibit 3 and Exhibit 5: 338:15- 340:9 attached to Defendant's Motion for Summary Judgment).

28. Zagacki often scheduled staff meetings at times where she knew Broadnax was not scheduled to work (See Exhibit 1 no. 11 and Exhibit 3 attached to Defendant's Motion for Summary Judgment)

29. Broadnax states that eventually, she began going over Zagacki's head to make complaints directly to George Marrone and Suzana Hazma however her concerns were never properly addressed (See Exhibit 5, 14: 2-8 attached to Defendant's Motion for Summary Judgment).

30. In 2013, Broadnax complained to Zagacki that she was being antagonized by her coworker Geniece. Zagacki responded that these were "serious accusations" but could not question anyone without further facts (See Broadnax Exhibit 5).

31. In November 2013, Broadnax complained to Zagacki that her coworker Maureen Pisano impeded her ability to obtained blood cultures from their supply closet and treated her in a condescending manner. (See Broadnax Exhibit 6).

32. In November 2014, Broadnax sent an email to Zagacki complaining that someone had stolen her CCP cup and that she had been verbally threatened by her coworker Lisa Hall. Zagacki responded that Broadnax should bring this to the attention of Marrone and perhaps HR. Broadnax then emailed Marrone explaining that she had been threatened. There is no evidence that this matter was resolved with Broadnax. (See Broadnax Exhibit 7).

33. In August 2017, Broadnax sent an email to Hazma that she had never received her 5-year recognition certificate, which she should have received the prior year. Hazma eventually facilitated the giving of this certificate to Broadnax. (See Exhibit 39 and Exhibit 40 attached to Defendant's Motion for Summary Judgment).

34. In or about May 2017 Broadnax's diagnosis of Raynaud's Syndrome was causing her hands to turn blue and numb. This made it difficult for Broadnax to perform her primary job duty of drawing blood. (See Exhibit 1, Exhibit 3, Exhibit 21 No. 15, and Exhibit 20

attached to Defendant's Motion for Summary Judgment).

35. Broadnax made a request for a mini heater due to the above condition, but Zagacki denied Broadnax's request and instead told her to continue holding cups of water or cocoa to warm her hands. (See Exhibit 1, No. 9, Exhibit 3, and Exhibit 21, No. 15 attached to Defendant's Motion for Summary Judgment).

36. Broadnax contends that other employees were allowed to use mini heaters (See Exhibit 5, 184:13-20 attached to Defendant's Motion for Summary Judgment).

37. On or about September 2017, Broadnax was cut on her leg by a metal keyboard slide that was left under the work bench after a broken keyboard tray was removed. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).

38. Broadnax's Lupus and Raynaud's Syndrome causes her skin to tear and bleed easily, and makes her prone to infections. The cut caused Broadnax to have to take antibiotics for this reason, and Broadnax requested that the metal keyboard trays be removed from under these work areas (See Exhibit 21, Exhibit 5 188:16-18, and Exhibit 3 attached to Defendant's Motion for Summary Judgment)

39. Zagacki refused this request and instead covered the sharp edges with tape. (See Exhibit 5 187: 19-23, Exhibit 21, Exhibit 20 attached to Defendant's Motion for Summary Judgment).

40. The tape did not sufficiently cover the sharp edges, and Broadnax cut herself on the tray another time. (See Exhibit 3, Exhibit 21 attached to Defendant's Motion for Summary Judgment).

41. Broadnax contends that Zagacki did not act accommodate her request in a reasonable amount of time. (See Exhibit 3 and Exhibit 21 attached to Defendant's Motion for

Summary Judgement).

42. On or about September 12, 2017, Broadnax noticed that she was not receiving retirement reductions on her pay statements (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).

43. On or about September 12, 2017, Broadnax emailed Hazma inquiring about why she was not seeing her retirement reductions. Hazma responded on September 14, 2017, informing Broadnax that Broadnax would have had to sign up for her retirement plan when she was hired at Jefferson a second time in 2011 (See Exhibit 39 attached to Defendant's Motion for Summary Judgment).

44. Broadnax had never been informed that she needed to re-sign up for retirement reductions upon her return to Jefferson in 2011 (See Exhibit 5, 144:20 – 146:5 attached to Defendant's Motion for Summary Judgment).

45. Broadnax states that prior resigning from Jefferson in 2008, she was enrolled in her retirement fund and had retirement reductions on her paychecks. (*Id.* at 151:10- 23 attached to Defendant's Motion for Summary Judgment).

46. New hires are supposed to receive a new hire packet ("Packet") when they begin employment at Jefferson. These Packets contain information about enrolling for retirement. Broadnax states that she never received a Packet with this information when she was hired by Jefferson the second time in 2011. Broadnax also states that other coworkers she spoke with that were hired after 2011 explained to her they received Packets with retirement information, and also attended an orientation which explained to them that they needed to enroll into their retirement fund, with instructions on how to do so *Id.* at 144:20- 147:10.

47. Broadnax contends that when she began asking around about who should have informed her about retirement and provided her new hire information, Zagacki, D'Elia, and HR all pointed fingers at one another and shifted blame (*Id.* at 145:11- 22).

48. Broadnax contends that when she was first hired by Jefferson in 2005, her immediate supervisor Carol Delaney sent her to new hire orientation where she was instructed signing up for a retirement fund. Broadnax contends that when she returned to Jefferson in 2011, it was Zagacki's job as her immediate supervisor to ensure she attended orientation and obtained the necessary information for retirement (*Id.*, at 160:10-23) (See also Exhibit 3 attached to Defendant's Motion for Summary Judgement).

49. On or about December 20, 2017, Broadnax filed a second charge of discrimination against Jefferson with the PHRC and EEOC for failure to accommodate her disability in violation of the ADA and PHRA, and in retaliation for filing her 2011 charge in violation of the ADA, PHRA and Title VII. (See Exhibit 21 attached to Defendant's Motion for Summary Judgment).

50. Specifically, Broadnax alleged in her 2017 charge that: (a) Zagacki denied Broadnax the accommodation she requested in May 2017 to use a portable mini heater during her shift to help deal with her Raynaud's Syndrome; (b) Defendant denied her request for a reasonable accommodation to have a broken keyboard slide under one of the desks in Broadnax's work area removed because Broadnax had cut herself on the broken slide; (c) Zagacki refused to train Broadnax in "other areas such as Accessioning, Send Outs, Microbiology, and the Infusion Center" due to her disability (Lupus) and in retaliation for Broadnax filing the 2011 Charge; and (d) also in retaliation for filing the 2011 Charge, Defendant failed to inform Broadnax upon her rehire in 2011 that she needed to register

for a retirement account. (See Exhibit 21 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).

51. Both parties participated in the EEOC process after filing. Jefferson specifically filed a response to the charge in 2017 and continued to cooperate with the investigation in June 2018 (See Exhibit 21 attached to Defendant's Motion for Summary Judgment) (See Broadnax Exhibit 8).

52. On or about April, 2019, the EEOC dismissed Broadnax's 2017 charge of discrimination. (See Exhibit 24 attached to Defendant's Motion for Summary Judgment).

53. On or about June 2019, Broadnax sent an email to Zagacki, Marrone, and Hazma ("Hazma") expressing her concerns about being undermined by coworkers and supervisors, and Zagacki not backing her up when she tried to help her less experienced peers conduct their job duties appropriately, and they got defensive. Broadnax expressed that she has felt undermined by her supervisors for years, and doesn't know what else to do. (See Broadnax Exhibit 9).

54. On or about February 11, 2019, Broadnax's suffered from a mild stroke causing her to take medical leave until April 6, 2019. (See Exhibit 1, Exhibit 3, and Exhibit 5, 190:19-22 attached to Defendant's Motion for Summary Judgment).

55. Upon Broadnax's return from medical leave, in April 2019, she began experiencing increased hostility from coworker, Crystal Taylor. (See Exhibit 5, 96:5- 100:11 attached to Defendant's Motion for Summary Judgment).

56. Broadnax viewed Taylor as "aggressive" and witnessed Taylor behaving aggressively on multiple occasions, such as slamming doors, slamming down phones, and speaking rudely to other individuals (See Exhibit 5, 70: 1-25 attached to Defendant's Motion for

10

Summary Judgment).

57. Broadnax believed Taylor had a general reputation for aggressive behavior amongst coworkers (*Id.* at 72: 16- 23, 73:17- 74:3 attached to Defendant's Motion for Summary Judgment).

58. Broadnax states that several employees have complained to Zagacki about Taylor (*Id.* at 79:13- 80:19 attached to Defendant's Motion for Summary Judgment).

59. In February 2015, employee Shannon Torelli reported that Taylor was antagonizing her and had made multiple inappropriate outbursts in the phlebotomy room (See Broadnax Exhibit 10).

60. In 2016, Jefferson issued two separate discplinary warnings to Taylor; one for screaming at another employee and the other for raising her voice to another employee. Curiously, both discplinary actions were listed as "first warnings" (See Broadnax Exhibit 11).

61. On or about December 18, 2018, Taylor was issued another discplinary action, which was again listed as a "First Written Warning." (See Exhibit 31 attached to Defendant's Motion for Summary Judgment).

62. On or about March 24, 2018, employee Tatyana Robinson reported Taylor for being confrontational and not knowing her proper job duties (See Broadnax Exhibit 12).

63. In an email to Jane Cassidy, a Nurse Manager, responding to Robinson's complaint about Crystal, Zagacki stated that she was told multiple nurses had come to her in the past to complain about Taylor and Zagacki has failed to act on it. In response to this accusation, Zagacki states that she sometimes handles complaints by telling her employees that "everyone has an off day" and states that she was not aware that her staff members were

11

continuing to have issues with Taylor and complain about her. *Id.*

64. On or about August 8, 2018, Naeemah Gadson reported Taylor for yelling at her and using profanities; this incident was confirmed by a witness, an employee Janet Bruno. Zagacki stating to Gadson that she could write Taylor up for this incident but Gadson told her not to worry about it. (See Broadnax Exhibit 13).

65. However, the responsibility to properly discipline employees lies managers and supervisors, not their workers. (See Exhibit 28, Defendant's Motion for Summary Judgment).

66. On or about February 13, 2019, Jefferson issued Taylor another discplinary action after a patient reported her for making her feel uncomfortable. Defendant finally issued this as a suspension/ final warning.  (See Broadnax Exhibit 11).

67. Upon Broadnax's return to work in April 2019, she was informed that her coworker and friend, Naeemah Gadson ("Gadson"), had taken medical leave after being verbally assaulted by Taylor. (See Exhibit 3 and Exhibit 59:5-20 attached to Defendant's Motion for Summary Judgment).

68. In an email to Hazma and Marrone regarding the altercation between Taylor and Gadson, Zagacki stated that she spoke with Taylor, and Taylor believed Gadson only complained about Taylor because she knew Taylor was on the "chopping block," to which Zagacki told Taylor that her Taylor's disciplinary history was confidential/ Taylor did not receive any discipline for this incident outside of an informal counseling session with Zagacki. (See Broadnax Exhibit 14).

69. In June 2019, Broadnax confronted Taylor about why she was being so mean towards her

since she returned from her stroke in 2019, which ultimately resulted in a brief verbal altercation (See Exhibit 46 attached to Defendant's Motion for Summary Judgment).

70. Broadnax reported Taylor's antagonistic conduct towards her to Zagacki multiple times. (See Exhibit 5, 98:21-99:19 attached to Defendant's Motion for Summary Judgment).

71. Broadnax states that Zagacki failed to properly address her concerns about Taylor, and resorted to having side conversations and participating in meetings with both Zagacki and Taylor to address Taylor's hostility. (See Exhibit 5, 99:22- 100:11 attached to Defendant's Motion for Summary Judgment).

72. On or about November 18, 2019, Broadnax was physically attacked by Taylor. (See Exhibit 5, 226:14-19, Exhibit 1, and Exhibit 3 attached to Defendant's Motion for Summary Judgment).

73. Prior to the attack, Broadnax heard what she thought was Taylor imitating and mocking her to employee Tynesha Jenkins. (See Exhibit 3 and Exhibit 5, 227:21-228:21 attached to Defendant's Motion for Summary Judgment). Broadnax states that this recent incident of antagonism was "piggybacking off of six months of [Taylor's] antagonistic behavior." (See Exhibit 5, 228:22-24 attached to Defendant's Motion for Summary Judgment).

74. Broadnax said to Taylor, "[N]ot today, Crystal. You're too fucking old for that shit" and "I'm not for your shit today." (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).

75. Taylor "jump[ed] up and said, 'You cursed?'" and she "threw her hand" and said to Broadnax, "You're done. And [Taylor] stormed out of the office." (See Exhibit 5, 230:8-18 attached to Defendant's Motion for Summary Judgment).

76. Broadnax thought Taylor had left the office to report Broadnax's cursing to Zagacki. *Id.* at 263:2-22.

77. Taylor came back into the office alone without Zagacki, looked at Broadnax "with an evil face," and "sat back down at the computer." *Id.* at 230:19-21, 260:22-25.

78. Broadnax said to Taylor "[W]hy are you always showing off for the new hires? You do not work this area, but you're the main person making the mistakes." *Id.* at 230:21-231:5, 261:13-21.

79. Taylor pushed back her chair, stood up, and approached Broadnax.  Taylor was "being aggressive" with Broadnax.  Taylor asked Broadnax, "You want to talk about this outside?" Broadnax said, "Sure." *Id.* at 231:6-9, 262:24-263:8.

80. Broadnax accepted Taylor's invitation to "talk about this outside" because Broadnax had been told by Zagacki to try to talk through conflicts before reporting them to management. *Id.* at 231:7-233:24.

81. Taylor and Broadnax left the room and went into the hallway.  Taylor "started to become belligerent [and] loud."  Broadnax responded, "[W]ait a second, Crystal, not right here. The physicians' offices are right here, and this is a unit."  Taylor replied, "Yeah, because I'm going to whup your ass." *Id.* at 234:3-236:4.

82. Broadnax took a step back and said, "Crystal, you're not going to do anything to me." Taylor said, "Why? What are you going to do about it?"  Taylor was bumping Broadnax in the chest as she said this.  Broadnax responded by bumping Taylor away from her and saying, "I'm going to get Joyce [Zagacki]." *Id.* at 236:2-12, 270:5-20.

83. Broadnax turned her body to get Zagacki and Taylor poked Broadnax in the head while saying "Yeah, because you know better." *Id.* at 236:13-24.

84. Broadnax replied, "Don't put your hands on me," and poked Taylor back in the head. *Id.* at 236:20-237:14.

85. Broadnax proceeded to turn away to get Zagacki when Taylor hit Broadnax in the back of the head causing her to fall to the floor. *Id.* at 238:3-11.

86. Taylor was hitting Broadnax and Broadnax was "swinging and punching" Taylor "to defend" herself. *Id.* at 242:7-11.

87. After Broadnax and Taylor were separated, Broadnax walked to Marrone's office and then to Zagacki's office, but neither were present. Security was speaking to Taylor and taking her statement. *Id.* at 268:9-19.

*88.* Broadnax eventually saw Zagacki and told her Taylor had attacked her. *Id.* at 274:4-275:18.

89. Broadnax went to the emergency room for her injuries. *Id.* at 294:3-9.

90. Zagacki visited Broadnax in the emergency room. Broadnax contends that Zagacki told her "I think I know why this happened;" i.e., because she had a meeting that morning about the errors Broadnax had found the weekend before in Taylor's work and Taylor was angry or upset. *Id.* at 294:3-295.

91. Zagacki told Broadnax that Zagacki would have to take her badge during the investigation into the altercation. *Id.* 294:25-295:2.

92. Jefferson's security office created a Security Case Report regarding the altercation, which included a report by Security Officer Sergeant William White. This report was comprised of statements by Broadnax, Taylor, and witness Loretta Ward. (See Exhibit 10 attached to Defendant's Motion for Summary Judgment).

93. Loretta Ward's statement confirmed that she had seen Broadnax and Taylor fighting,

however she did not admit to seeing the start of the fight or what led up to the fight (*Id.*)

94. Broadnax submitted a written statement to HR describing the incident which read:

> I clocked in and walked in the O.P Lab. After I put my things in my locker, I came near the other Phlebotomist. Crystal said to Tynesha 'Don't forget to add your mag & Phos' a subliminal comment. So I said 'Crystal I'm not for ya stuff today, yu too f'ing old for that.' She got up and got in my face and said 'did you just curse @ me?' Then she said 'Your Done!" She left O.P. lab, and when she came back I said why are you always so sarcastic, she said do you wanna talk about this outside, I said yes because we had students & pts. She got in front of the Lab door and proceeded to get loud. I said I'm not doing this right here in front of the Dr's office's and adminsitration. So she come on then turned the hall near the time clock, she said 'because I'm going to hurt you.' I said your not going to put your hands on me, she said 'Then why you come outside,' I said to talk, you not going to touch me. She then started bumping my chest all in my face. I said, I'm going to tell Joyce this is crazy, as I turned around she grabbed my hair on the right side, hit me, and pulled me to the floor. At that point I began defending myself. Dywanna Broadnax. (See Exhibit 11, Exhibit 5, 258:3-260:8 attached to Defendant's Motion for Summary Judgment).

16

95. Dennis Delisle, Jeffersons' Vice President of Operations, received a copy of the Security Case Report. (See Exhibit. 30 attached to Defendant's Motion for Summary Judgment).

96. Delisle emailed the Security Report to Zagacki, Marrone, Gudowski, and Aaron Sniderman, the HRBP who had taken over Hazma's duties for Broadnax and Taylor's departments in May 2019. (See Exhibit. 30, Exhibit 48, attached to Defendant's Motion for Summary Judgment).

97. In his email, Delsile recommended that only Taylor receive termination for her actions, due to the fact that Taylor was already on her final written warning. *Id.*

98. In response to Delsile, Zagacki stated that she would be recommending Broadnax's termination as well. (See Exhibit 33 attached to Defendant's Motion for Summary Judgment).

99. Marrone also stated that he thought both Taylor and Broadnax should be terminated. See Exhibit 15 attached to Defendant's Motion for Summary Judgment).

100. Sniderman ultimately determined that both Broadnax and Taylor should be terminated; Zagacki, Marrone and Gudowski supported this decision. (See Exhibit 35, and Exhibit 26 attached to Defendant's Motion for Summary Judgment).

101. On or about November 21, 2019, Sniderman informed Broadnax that she was being terminated for the fight with Taylor. (See Exhibit 5, 299:19- 300:4 attached to Defendant's Motion for Summary Judgment).

102. Broadnax asked Sniderman why she had not been questioned about her side of the story. *Id.* at 299:19-300:4

103. Broadnax also told Sniderman she was "the one assaulted and attacked." (See Exhibit 5, 299:19-302:19 and Exhibit 7 attached to Defendant's Motion for Summary Judgment).

104. Sniderman responded that Broadnax should have known that Taylor wanted to fight when she said that she wanted to "talk outside". *Id.*

105. Taylor was also terminated for the fight. (See Exhibit 37 attached to Defendant's Motion for Summary Judgment).

106. Broadnax and Taylor were issued the same punishments despite the fact that Taylor was on her final written warning, and Jefferson was aware that Taylor was a known antagonist (See Exhibit 37 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).

107. Following her termination, Broadnax struggled to maintain financial stability and was unable to find work with a comparable salary for several months, due in part because Jefferson listed that the reason for her termination was fighting (See Exhibit 1, no. 5, Exhibit 3 attached to Defendant's Motion for Summary Judgment).

108. Broadnax has, and continues to suffer from, several physical injuries resulting from her altercation with Taylor, including a concussion and permanent knee damage that still requires physical therapy. Broadnax has had to pay for out-of-pocket medical expenses due to her injuries (See Exhibit 3 attached to Defendant's Motion for Summary Judgment) (See Broadnax Exhibit 15).

109. While Broadnax was eventually able to find a new job in April 2020, her treatment by Defendant has caused her to be too afraid to take on new leadership roles and promotions she has been offered that would cause her to have to interact more with other coworkers and potentially cause conflict (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).

110. Overall, Broadnax contends Jefferson terminated her for engaging in prior protected

activity. Broadnax contends that she experienced a pattern of mistreatment since her 2011 PHRC complaint and points to the above evidence including:

- Zagacki's repeated failure to train Broadnax in areas required to expand her job performance despite Broadnax's repeatedly asking for training and Zagacki's promises to do so

- Broadnax being told by a coworker that Zagacki was intentionally preventing Broadnax from being trained in expanded areas

- Zagacki excluding Broadnax from staff meetings

- Zagacki willingly allowing Broadnax's coworkers to be upset with her for correcting their worksheets

- Broadnax's repeated complaints about mistreatment to Zagacki, Marone, and Hazma which did not result in any adequate resolution

- Zagacki's failure to properly address Broadnax's complaints that Taylor was antagonizing her

- Zagacki and HR's failure to provide Broadnax with the information she needed to enroll in her retirement fund

- Zagacki's failure to accommodate Broadnax's reasonable accommodations to have a mini heater and remove the broken metal keyboard tray

- Broadnax's termination for being attacked by Taylor, despite her insistence that Taylor instigated the fight, which no witnesses were able to contradict

- Zagacki and Jefferson's knowledge that Taylor was a known antagonist with multiple complaints filed against her and a disciplinary history of policy violations.

Respectfully submitted,

/s/ Faye Riva Cohen, Esq.
FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
2047 Locust Street
Philadelphia, PA 19103
215-563-7776

Dated:  10/3/22