**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **DYWANNA BROADNAX**, <br> **Plaintiff,** <br><br> v. <br><br> **THOMAS JEFFERSON UNIVERSITY HOSPITAL**, **INC.,** <br> **Defendant.** | Civil Action No. 21-CV-04662-JMY |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Policies and Procedures,[1] defendant, Thomas Jefferson University Hospitals, Inc. ("Defendant" or "Jefferson"), respectfully submits this reply in further support of its motion for summary judgment on all claims (ECF Nos. 14 and 14-2) ("Motion"), and in response to Plaintiff's Statement of Material Facts ("Statement") and Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response Brief") (ECF Nos. 15-2 and 15-3). Plaintiff, Dywanna Broadnax ("Broadnax"), fails to raise a genuine question of material fact to overcome summary judgment.

**I.    This Court Should Strike Broadnax's Response or Deem Admitted Defendant's SOFs**

This Court should strike Broadnax's Response because she failed to strictly comply with this Court's Policies and Procedures. Specifically, in response to Jefferson's separate Statement of Undisputed Material Facts, Broadnax was required to:

> include a <u>separate</u> Statement of Undisputed and/or Disputed Material Facts that responds to the numbered paragraphs set forth in the moving party's Statement of Undisputed Material Facts, either admitting those facts are undisputed, or contending they are disputed and, as such, are genuine issues to be tried.

---

[1] *See* https://www.paed.uscourts.gov/documents/procedures/youpol.pdf ("Policies and Procedures"), pp. 13-14.

10207882.v5

*Id.* at p. 14, ¶¶ D(1)-(2) (emphasis in original). "Summary judgment motion practice that fails to follow these procedures *to the Letter will be* stricken[s]" and, "[w]ithout exception, all facts set forth [in the parties' statements] shall be deemed admitted unless addressed by the opposing party *as set forth* [in the Policies and Procedures]." *Id.* at ¶¶ 4-5.

Broadnax failed to comply with the foregoing requirements. She did not respond to the numbered paragraphs set forth in Defendant's Statement of Material Facts About Which There Can Be No Genuine Dispute ("Defendant's SOFs") (ECF No. 14-3) and did not expressly admit or dispute each of those facts. Instead, she filed a separate "Statement of Material Facts" (ECF No. 15-3). Therefore, pursuant to the Policies and Procedures, this Court should strike Broadnax's Statement and Response Brief or deem all Defendant's SOFs admitted.

## II.     Broadnax Fails to Present Sufficient Evidence on Which a Reasonable Juror Could Reject Jefferson's Termination Rationale

Even if this Court excuses Broadnax's failure to comply with its Policies and Procedures, summary judgment still is appropriate on all of Broadnax's claims. Although Broadnax's noncompliant 110-paragraph Statement may appear to raise genuine questions of material fact, a close examination of that Statement, along with Defendant's SOFs, reveals otherwise.

As Defendant's explained in its opening Brief and as is made clear by Broadnax's response itself, Broadnax does not dispute any of the conduct prompting her termination. *See* Statement, ¶¶ 73-86, 94, which Broadnax copied and pasted from Defendant's SOFs; *see also* Defendant's SOFs, ¶¶ 41, 42, 50-52, which Broadnax failed to address and, therefore, admits under the Court's Policies and Procedures, p. 14, ¶ 4. Broadnax admitted that, in response to what she thought was a "subliminal" comment Taylor made to another coworker, Broadnax swore at Taylor; Taylor responded angrily by saying Broadnax was "done" and by abruptly leaving the room; when Taylor returned to the room, Broadnax re-engaged with and provoked Taylor by asking her "why are you

2

10207882.v5

always so sarcastic?;" Taylor responded by asking Broadnax if she wanted to "talk about this outside;" Broadnax accepted that invitation; and Broadnax "defend[ed] herself." *Id.* Broadnax also does not dispute that – while she characterizes her actions as "defend[ing]" herself, she, in fact, was "fist fighting" with Taylor in the hallway as <u>accurately</u> reported by a witness (Ward). Statement, ¶ 86 and Reply thereto; *see also* Defendant's SOFs, ¶ 76, which Broadnax does not address and, therefore, admits.  Further, Broadnax admits that fist fighting with a coworker at work violates several Jefferson policies (each of which provides for discipline up to termination if violated), and that the only other person (Taylor) who engaged in the same conduct – i.e., a fistfight at work – also was terminated. Statement at ¶¶ 101-105; *see also* Defendant's SOFs, ¶¶ 22-28, which Broadnax does not address and, therefore, admits under the Court's Policies and Procedures. Jefferson respectfully submits that such admissions are fatal to Broadnax's claims. *See In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (holding that "the record does not give us sufficient basis to discredit [the employer]'s explanation for its employment decision" where the plaintiff admitted engaging in conduct that was barred by [the employer]'s policies.") (internal citation omitted).

Because Broadnax is stuck with the foregoing undisputed evidence supporting Jefferson's termination decision, she tries (albeit unsuccessfully) in her response to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Jefferson's termination reason by misrepresenting the record, ignoring vital legal precedent, and proffering her subjective beliefs about what Jefferson should have considered and believed about the fist fight.  None of this helps her overcome summary judgment.

While Broadnax <u>admits</u> that Jefferson: (a) interviewed and obtained handwritten statements from Broadnax, Taylor and a witness; (b) considered those statements and a Security

3

Case Report about the fight; (c) interviewed the security officer and Ward; and (d) involved five different individuals from senior management, management and HR about the termination decision, Statement, ¶¶ 92-96, 98-100, and Replies thereto, Broadnax misrepresents the record concerning the view of one of those individuals (Delisle) regarding whether Broadnax should be terminated. Response Brief, p. 14.  Broadnax falsely asserts that Delisle reviewed the Security Case Report and recommended that only Taylor be terminated because she already was on a final written warning. Response Brief, p. 14.  In so doing, Broadnax utterly ignores what Delisle actually wrote in that email. *See* Defendant's SOFs, ¶ 69, *see also id.* ¶¶ 70-71.  Although Delisle recommended Taylor's termination given her final written warning and Jefferson's zero tolerance for fighting, Delisle also asked Sniderman to follow up with Zagacki and Security about Broadnax's role to determine the appropriate action for her (whatever that may be). *Id.*  Delisle did not state "only Taylor should be terminated" and he did not even suggest that, if Broadnax did not have any prior discipline, she should not be terminated. Defendant's Replies to Statement, ¶¶ 97-98, 100.  Notably, by the time Delisle sent his email, he had not seen Broadnax's statement (or the other two statements) describing her "role" in the fist fight. *Id.* at ¶ 97.

Broadnax also falsely claims Zagacki, Marrone, Gudowski, and Sniderman "went against" Delisle's purported recommendation to terminate only Taylor. Response Brief, p. 14. In reality, when Delisle learned that the witness (Ward) reported that Broadnax was "fist fighting" with Taylor in the hallway, Delisle felt he knew enough to express his view – for the first time – of the appropriate discipline for Broadnax - termination. *See id.* at ¶¶ 97-98, 100.  Delisle's view on this was further solidified when Sniderman reported back to Delisle (and Zagacki, Marrone, and Gudowski) about Broadnax's role; Sniderman reported he decided Broadnax should be terminated based on her written statement. *See id.* at ¶ 100; Defendant's SOFs, ¶¶ 73-74, 85-89, which

10207882.v5

Broadnax does not address and, therefore, admits. Delisle, as well as the other four individuals involved in the termination decision, agreed. *Id.* Not only does this evidence fail to suggest weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Jefferson's termination reason, but it supports that reason.

Moreover, Broadnax baselessly declares, "Delisle was the only objective member who did not have prior interactions with Broadnax or Taylor." Response Brief, p. 14. There is no record support for this statement. Thus, this Court should ignore it. *See* Fed. R. Civ. P. 56(c)(1) ("a party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record . . ."); Court's Policies and Procedures, p. 14, ¶ 5.

In addition to misrepresenting the record, Broadnax ignores vital legal precedent and undisputed facts when she tries to discredit Jefferson's termination reason by citing Taylor's history of verbal conflicts she had with others at work. Response Brief, pp. 10-13. As explained in Defendant's Brief, pp. 13-14, this Court should reject Broadnax's effort to use Taylor's history to try to show she was treated worse than a similarly situated person outside her protected class was treated. It is undisputed that Taylor had not engaged in a fistfight before the one with Broadnax, *see* Defendant's SOFs, ¶¶ 70, 110-117, which Broadnax does not address and, therefore, admits. Indeed, none of Taylor's prior conduct that Broadnax describes in her Statement involves a fistfight. Statement, ¶¶ 58-69 and Replies thereto. Thus, based on Third Circuit precedent that Broadnax ignores in her Response Brief, Taylor's prior conduct is not probative of disparate treatment because it was not "the same conduct" that was of "comparable seriousness" to the fistfight. *In re Tribune Media Co.*, 902 F.3d at 403; *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

5

10207882.v5

Taylor's history has no more relevance despite Broadnax's assertions that, based on that history, Jefferson should have believed Broadnax that she did not want to fight Taylor, was a "victim," and was "attacked." Response Brief, pp. 10-13. As an initial matter, this argument is premised on a misstatement of Jefferson's termination reason. Jefferson did not terminate (and has never said it terminated) Broadnax because Jefferson concluded Broadnax was looking for a fistfight with Taylor and/or because Broadnax threw the first punch. Rather, as the record consistently reflects, Jefferson terminated Broadnax for the conduct Ward reported seeing (that Broadnax does not dispute) which was "fist fighting," as well as the conduct to which Broadnax admitted in her Statement that made her culpable (along with Taylor) for the brawl. *See* Statement, ¶¶ 73-86, 92-96, 98-104; Defendant's Reply to Statement, ¶ 97; *see also* Defendant's SOFs, ¶¶ 41, 42, 50-52, which Broadnax failed to address and, therefore, admits under the Court's Policies and Procedures, p. 14, ¶ 4. This conduct was Broadnax instigating and escalating the verbal confrontation with Taylor, accepting an invitation from a visibly-angry Taylor to "talk about this outside" (which is a common euphemism for fighting), and "defend[ing]" herself, i.e., fist fighting, in the hallway.[2] *Id.*[3]

Given the foregoing, all Broadnax can offer are her subjective views about Jefferson's decision that it should have excused her behavior and active participation in a fist fight because

---

[2] Indeed, Broadnax says she told Sniderman on her termination call that she was "the one assaulted and attacked" and Sniderman responded that Broadnax should have known Taylor wanted to fight. Statement, ¶¶ 103-104. Indeed, Sniderman regarded the invitation to "talk about this outside" under the circumstances as a common euphemism for fist fighting. Defendant's SOFs, ¶ 86. Also, it is undisputed that Sniderman was not aware of any de-escalation techniques Broadnax said she learned through Jefferson training that called for employees to talk about matters outside in the context of a heated exchange. *See* Defendant's SOFs, ¶¶ 98-102, which are undisputed. Further, during Broadnax's termination call, Sniderman told Broadnax she "participated in a fist fight." Defendant's SOFs, ¶ 99. The foregoing is entirely consistent with Jefferson's termination reason.

[3] It is also worth noting that Broadnax also falsely contends she "tried to walk away from Taylor twice" before Taylor pulled her to the ground. Response Brief, pp. 12-13. Broadnax admitted, however, that, after Taylor poked her in the head, Broadnax could have walked away but did not; she instead chose to poke Taylor back. Statement, ¶ 84 and Reply thereto regarding Defendant's SOFs, ¶ 50. This behavior buttresses Jefferson's termination rationale.

10207882.v5

Taylor had been antagonizing Broadnax for months. Response Brief, p. 12.  In so doing, however, Broadnax is doing nothing more than asking this Court to do something it cannot (and should not) do – i.e., "sit as a super-personnel department that reexamines an entity's business decisions." *See* Defendant's Brief, pp. 5-6, 12, 14.  The same is true of Broadnax's contentions (Respondent's Brief, pp. 11-13) that Jefferson should have weighed more heavily other portions of her Statement proclaiming her innocence and should have considered the injuries she sustained in the fist fight. *See* Defendant's Brief, pp. 5-6, 12, 14.[4]  Those matters are irrelevant.

Indeed, pretext is not established only with evidence that Jefferson failed to make the best, or even a sound, business decision, *Parrotta v. PECO Energy Corp.*, 363 F. Supp.3d 577, 596 (E.D. Pa. 2019), and is not shown from an employee's disagreement with her employer's evaluation of her misconduct. *Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 113 (3d Cir. 2003) (employer's judgment of the seriousness of an incident does not show that the reason for termination is pretextual).  Instead, Broadnax must show Jefferson's termination rationale was "*so plainly wrong*" that it cannot have been the real reason.  *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (emphasis added); *Ade v. KidsPeace Corp.*, 698 F.Supp.2d 501, 517 (E.D. Pa. 2010) (citing, among others, *Jackson v. Bob Evans–Columbus,* No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006); *Jeffrey v. Thomas Jefferson Univ. Hosps., Inc.*, No. 17-0531, 2019 WL 2122989, at *4 (E.D. Pa. May 14, 2019) (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995)).  Broadnax cannot meet this burden, as no reasonable juror could find Jefferson's decision to terminate Broadnax for her admitted conduct was "so plainly wrong" (much less wrong at all) as to be unworthy of credence.

---

[4]  In fact, considering the injuries each sustained in the fist fight is not helpful to Broadnax.  Taylor was severely injured in the brawl. Defendant's Reply to Statement, ¶ 108.

7

10207882.v5

**III.    Broadnax's Workplace Issues Do Not Even Suggest Retaliatory Animus**

Faced with the overwhelming undisputed evidence supporting Jefferson's termination decision, Broadnax resorts to making a fundamentally-flawed legal and factual argument (that is fruitless anyway) concerning the timing between her protected activity and her termination. Broadnax erroneously argues that she "engaged in protected activity through 2019, up until months prior to her termination." Response Brief, p. 5.  She claims her 2017 Charge remained "open as an active investigation until April 2019, during which time both Broadnax and Defendant participated in the EEOC process through responding to investigative inquiries and providing documentation relevant to the charge of discrimination." *Id.*  This Court should reject these contentions out-of-hand.

First, even assuming participating in an EEOC investigation of one's own charge is protected activity that should be used to measure temporal proximity in a *prima facie* case (a conclusion to which Jefferson does not concede), there is zero record evidence that Broadnax participated in the EEOC's investigation beyond filing the 2017 Charge. Reply to Statement, ¶ 51. Second, even if she did participate in the investigation at some point in 2018 and 2019, there is no record evidence Jefferson knew about this activity. It is axiomatic that, for an employer to retaliate against an employee for protected conduct, the employer must know about it first. *Eskridge v. Philadelphia Hous. Auth.*, 722 F. App'x. 296, 300 (3d Cir. 2018).  Third, the only record evidence of anyone participating in the EEOC investigation of the 2017 Charge shows Jefferson did so (not Broadnax), Statement, ¶ 51, and Reply thereto, and she cites zero legal authority to support the notion that, when an employer participates in the investigation of an employee's charge, that constitutes "protected activity" on the part of the employee for purposes of evaluating a *prima facie* case.  Fourth, even if Jefferson's participation was pertinent at all, the record shows the last

8

date on which Jefferson participated was in June 2018 – seventeen months before Broadnax's termination. Statement, ¶ 51 and Reply thereto.  As Defendant explained in its Brief, pp. 6-7, while causation can be shown with evidence of temporal proximity between the protected activity and the termination, an inference of causation arises only when the timing is "unusually suggestive," i.e., within a few days of the protected activity.  Seventeen months is far too long to be unusually suggestive.[5]

Equally unavailing is Broadnax's effort, which Jefferson predicted in its Opening Brief, pp. 14-20, to try to distract this Court from her misconduct and make it appear as if a genuine issue of material fact exists where it does not by assembling a list of various irrelevant and immaterial workplace grievances she says she experienced over the years. Response Brief, pp. 6-10.  In fact, Broadnax doubles-down on this strategy by using her Response to reference even more inconsequential gripes (such as complaining that Zagacki failed to figure out why Broadnax's cup was missing).  All this effort is futile.

About the issues Jefferson addressed in its opening Brief because Broadnax raised them in her Complaint and discovery requests, Broadnax reiterates them in her Response, but this time tacks on misrepresentations of the record and facts with no record support (which Jefferson addresses in its Replies to the Statement), and further ignores the undisputed facts and sound legal arguments that Jefferson presented in its opening Brief, pp. 14-19, demonstrating that Broadnax's issues fail to show "antagonism" as result of retaliatory animus, much less <u>any</u> animus.[6] *See* Statement, ¶¶ 15, 20-29, 33-48.

---

[5]   In fact, even the seven months between April 2019 and the termination is far too long. *Id.*

[6]   Broadnax concedes that, for "intervening antagonism" to raise an inference of causation, she must show the antagonism was the result of the protected activity. *See* Defendant's Brief, pp. 7-8 and Broadnax's Response Brief, pp. 2, 7 (arguing the antagonism was "based on harbored retaliatory animus" and the incidents were "connected to Broadnax's disability or medical leave").

10207882.v5

Regarding the issues that Broadnax adds in her Response Brief, these include: a newly-minted, speculative and baseless allegation that Zagacki used Broadnax as a "scapegoat," *see id.* at ¶¶ 18-19 and Replies thereto; a gripe that Zagacki purportedly did not sufficiently address minor unpleasantries Broadnax says she experienced, *see id.* at ¶¶ 30-31 and Replies thereto; and Zagacki did not resolve to Broadnax's satisfaction her complaint that her Community College of Philadelphia cup was missing. *Id.* at ¶ 32. No reasonable juror could find that any of these matters show pretext or that it is more likely than not Broadnax was terminated for unlawful retaliatory animus.

## IV.    Conclusion

Try as she might, Broadnax has not (and cannot) present any evidence to raise a genuine issue of fact that Jefferson's stated reason for termination was fabricated or otherwise did not actually motivate its decision. It is undisputed that five different people decided Broadnax should be terminated for her admitted conduct that led to a fist fight with Taylor in the hospital hallway during work hours. *See* Defendant's SOFs, ¶¶ 63-102. Broadnax's claims should be dismissed on summary judgment.

Respectfully submitted,

Dated:  October 11, 2022

/s/ Lee D. Moylan
Lee D. Moylan
Stephanie Wolbransky
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-2700
lmoylan@klehr.com/
swolbransky@klehr.com
Attorneys for Defendant

10

10207882.v5