IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

DYWANNA BROADNAX,

        **Plaintiff,**

    v.

THOMAS JEFFERSON UNIVERSITY HOSPITAL, INC.,

        **Defendant.**

Civil Action No. 21-CV-04662-JMY

## DEFENDANT'S REPLY TO PLAINTIFF'S "STATEMENT OF MATERIAL FACTS"

In further support of its Motion for Summary Judgment ("Motion") and in accordance with Judge John Milton Younge's Policies and Procedures, defendant, Thomas Jefferson University Hospital, Inc. ("Jefferson"), hereby submits its reply to Plaintiff's "Statement of Material Facts" ("Broadnax's Statement")[1] as follows:

**1.     On or about March 15, 2005, Dywanna Broadnax ("Broadnax") was hired as a phlebotomist/lab assistant at the Methodist Hospital Division ("MHD") of Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson") (See Exhibit 3, Exhibit 4, and Exhibit 5 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 1.[2]

---

[1]  As more fully explained in Defendant's Reply Brief in Further Support of its Motion for Summary Judgment ("Reply Brief"), pp. 1-2, Broadnax violated this Court's Policies and Procedures, pp. 13-14, by failing to specifically address each fact in Defendant's Statement of Material Facts About Which There Can Be No Genuine Dispute ("Defendant's SOFs") (ECF No. 14-3). *See* https://www.paed.uscourts.gov/documents/procedures/youpol.pdf. ("Policies and Procedures"). Therefore, Broadnax's response to the Defendant's Motion for Summary Judgment ("Motion") should be stricken.  Subject to and without waiver of this defense, however, Jefferson responds to each numbered paragraph of Broadnax's Statement the latter of which are in bold.

[2]  Because Broadnax did not respond to each numbered paragraph in Defendant's SOFs, Jefferson cross-references herein its SOFs and the record evidence Jefferson presented for the Court's

10200319.v4                                            1

**2.      On or about June 2006, Broadnax was diagnosed with lupus. Her diagnosis substantially impacted her ability to walk, think, concentrate, write, and hold objects. Broadnax's lupus also caused her to develop Reynaud's syndrome, which reduces blood flow to limbs and other external body parts. Broadnax also suffers from anxiety. (See Exhibit 1, Interrogatory No. 9 and Exhibit 3 attached to Jefferson's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 5.

**3.      Starting on or about March 2007, Broadnax began reporting to Joyce Zagacki ("Zagacki"), who had recently been promoted to the role of Laboratory Outpatient Supervisor. (See Exhibit 5, Exhibit 6 and Exhibit 20 of Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 2.

**4.      Broadnax informed Zagacki of her diagnosis and her accompanying limitations. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax, at some point before filing her 2017 Charge,[3] told Zagacki and others that Broadnax had Lupus.  Jefferson disputes that she informed Zagacki of all the symptoms associated with the diagnosis or the effect that Lupus had on Broadnax.  Jefferson also disputes that Broadnax informed Zagacki – prior to filing the 2017 Charge - that Broadnax had Reynaud's Syndrome. *See* Defendant's SOFs, Exh. 20, 2018 Zagacki Aff., ¶¶ 17-18.  That said, for the reasons more fully set forth in Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Brief"), as well as in the Reply Brief, neither these disputes nor the facts

---

convenience and information.

[3]  Unless otherwise specified, the capitalized terms Jefferson uses herein are those used in Defendant's SOFs.

set forth in paragraph 4 of the Statement are material and/or raise a genuine question of causation or pretext.

**5.      In or about Fall 2007, Broadnax's job title was upgraded to Clinical Lab Assistant. (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax's title changed from Phlebotomy Clerk to Clinical Lab Assistant.  Jefferson does dispute that this change in title was an "upgrade," as this is contrary to the undisputed evidence.  Broadnax testified that the "responsibilities, the skills set and everything remained the same.  It was just the title that was changed." Defendant's SOFs, Exh. 5, Broadnax Dep., 125:11-127:3.  In any event, for the reasons more fully set forth in Defendant's Brief and Reply Brief, whether Broadnax's change in title was an "upgrade" is neither material nor raises a genuine question of causation or pretext.

**6.      In or about October 2008, Broadnax developed serious medical conditions while delivering her baby, leading her to receive emergency heart surgery. Following this surgery, Broadnax attempted to commence a period of medical leave to recover but did not have any FMLA or medical leave available. (See Exhibit 1 No. 9, Exhibit 3, and Exhibit 20, attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, Exh. 20, 2018 Zagacki Aff., ¶¶ 4-7.

**7.      Broadnax had no choice but to resign from her position to avoid being terminated while she recovered. Prior to her decision to resign, Zagacki told Broadnax that she could be rehired for a position in the future. (See Exhibit 3, Exhibit 20 attached to Defendant's Motion for Summary Judgement).**

Reply: Jefferson does not dispute that Broadnax resigned from her position to avoid being

terminated. Defendant's SOFs, Exh. 20, 2018 Zagacki Aff., ¶¶ 4-9. Jefferson disputes that Zagacki told Broadnax that she could be rehired for a position in the future, as this is contrary to the record. Indeed, the record Broadnax cites to purportedly support paragraph 7 of her Statement – i.e., Exhibit 20 – is Zagacki's March 2018 Affidavit wherein Zagacki explained that the Director of Human Resources, Joe Micucci, told Broadnax that, if she resigned voluntarily, she could apply for a new position once she was able to return to work. *Id.* at ¶¶ 6-9.  In any event, for the reasons more fully set forth in Defendant's Brief and Reply Brief, Jefferson's dispute of the facts in paragraph 7 is not material and does not raise a genuine question related to causation or pretext.

**8.      On or about March 10, 2011, Broadnax filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") for disability discrimination in violation of the ADA and PHRA, and race discrimination in violation of Title VII of the Civil Rights Act and the PHRA, in which she alleged that Defendant had failed to rehire her for nearly two (2) years despite multiple reassurances by Zagacki that she would be rehired. (See Exhibit 4 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of this Motion. *See* Defendant's SOFs, ¶ 7.

**9.      On or about October 2011, Broadnax and representatives from Jefferson attended  a PHRC Fact Finding Session where Broadnax agreed to withdraw her charge in exchange for Jefferson considering her for an open position. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply:  Undisputed. *See* Defendant's SOFs, ¶ 8.

**10.      In or about October 2011, Jefferson hired Broadnax as a per diem Clinical Lab Assistant at MHD reporting again to Zagacki. (See Exhibit 5, 126:12-14, Exhibit 21, Exhibit**

10200319.v4                                                    4

**22, attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 9.

**11.      Starting in or about 2011, Zagacki began reporting to George Marrone, who was Laboratory Manager and who, in 2017, became the Laboratory Operations Director (See Exhibit and 5 and Exhibit 6 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 3.

**12.      Broadnax explained to Zagacki that she could not work a full work schedule due to her disabilities. Broadnax also requested to work afternoons as opposed to mornings due to side of effects of her medication that made it hard for her to work in the mornings, and also to help take care of her mother. (See Exhibit 1 No. 14 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 10.  By way of further answer, it is undisputed[4] that there were "many factors," including, but not limited to, Broadnax's medical restrictions, schooling, receipt of Social Security benefits, and desire to care for her mother, that prompted Broadnax needing changes to her schedule. *Id.*

**13.      As a result of these limitations, Zagacki limited Broadnax's schedule per her request (See Exhibit 1 No. 14 and Exhibit 5, 115:17-23, 116:8-118:14, 123:4-125:8, 172:4-25; attached to Defendant's Motion for Summary Judgment).**

**Reply:**

Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶¶ 10-11.  By way of further answer, it is undisputed that there were "many factors," including, but not limited to, Broadnax's

---

[4]  Not only is paragraph 10 of Defendant's SOFs supported by Broadnax's deposition testimony, but Broadnax did not specifically deny the facts set forth in that paragraph of Defendant's SOFs.  Accordingly, those facts should be deemed admitted pursuant to this Court's Policies and Procedures, p. 14, ¶ 4.

10200319.v4

medical restrictions, schooling, receipt of Social Security benefits, and desire to care for her mother, that Zagacki accommodated with changes to Broadnax's schedule. *Id.*; *see* fn. 4, *supra.*

14.     **Upon her return to Jefferson in 2011 after her recovering from her disabilities, Broadnax felt that Jefferson, Zagacki in particular, treated her differently than her peers, and failed to properly address her complaints and concerns of mistreatment. (See Exhibit 3, and Exhibit 5, 12:17-25 attached to Defendant's Motion for Summary Judgment).**

Reply: For purposes of the Motion, Jefferson does not dispute that Broadnax felt that Jefferson, Zagacki in particular, treated her differently than her peers, and failed to properly address her complaints and concerns of purported mistreatment.  For the reasons explained in Defendant's Brief and Reply Brief, however, Broadnax's feelings do not raise a genuine question of material fact regarding causation or pretext.  Jefferson does dispute that Broadnax recovered from her disabilities upon her return to Jefferson in 2011, as this averment is contrary to the evidence.  In the transcript testimony Broadnax cites to support paragraph 13 of her Statement, Broadnax admits that, when she returned to work in 2011, she could not work more than 24 hours in a week based on a medical assessment. *See* Defendant's SOFs, Exh. 5, Broadnax Dep., 172:4-25.

15.     **Upon her return in 2011, Broadnax discovered that employees hired in the time period that Broadnax was away from Jefferson recovering from her disabilities knew about her PHRC Complaint, with one coworker even stating to Broadnax that Zagacki had called her a "troublemaker" for filing a discrimination complaint against her. (See Exhibit 5, 16:2- 19: 8; 48:12- 25 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax contends certain coworkers knew she had filed the 2011 Charge and that one coworker – Lisa Hall – told Broadnax in 2015 that, in 2011 or 2012, Zagacki told Hall that Broadnax was a "troublemaker" and had filed a complaint against Zagacki. *See* Defendant's SOFs, ¶ 138.  Jefferson does dispute that Hall told Broadnax that Zagacki called

Broadnax a "troublemaker for filing a discrimination complaint against [Zagacki]," as this materially misrepresents Broadnax's actual testimony. *See* Defendant's SOFs, Exh. 5, Broadnax Dep., 17:21-19:11. Regardless, as explained on pages 16-17 of Defendant's Brief, these facts do not raise a genuine question of material fact. *See also id.* at ¶¶ 136-137, which Broadnax did not address herein and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

**16.     In or about 2011, Broadnax began checking scripts against blood draws by her coworkers to determine if they had missed any tests on the scripts and would let Zagacki know if there were errors (See Exhibit 5, 95:12-16, 199:6-23 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion, *see* Defendant's SOFs, ¶¶ 14-16, except that Jefferson disputes Broadnax began checking scripts in or about 2011. This dispute does not raise a genuine question of material fact, however.

**17.     Broadnax felt that her actions of correcting her coworkers' errors caused her to be disliked amongst her peers. (See Exhibit 5, 203:21-25; 275:19-278:20, 280:2-20 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶¶ 15-16.

**18.     Zagacki would go over the errors Broadnax had observed with Broadnax's coworkers in the morning before Broadnax arrived at work in the afternoon, and Broadnax felt that this process caused her coworkers to be angry and annoyed with her for checking these scripts and made her to appear to be a "villain" in the eyes of her coworkers. (See Exhibit 5, 198:41- 199:23 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion, *see* Defendant's SOFs, ¶¶ 15-16, except that Jefferson disputes that there is sufficient evidence suggesting that Zagacki went over the errors before Broadnax came into work out of some effort to harm Broadnax in some way. As this is the

first occasion Broadnax blames Zagacki for the way Broadnax's coworkers felt about her, Jefferson offers the following evidence undisputedly rebutting Broadnax's contention.  Broadnax admits her schedule was the way it was pursuant to her requests, which Zagacki always granted. Statement, ¶¶ 12-13, *supra*.  Also, virtually all the employees who reported to Zagacki worked the morning shift (from 5:00 a.m. to approximately 1:30 p.m.). *See* Supplemental Affidavit of Joyce Zagacki ("Zagacki Supp. Aff."), Exhibit 51 hereto, ¶ 4.  Therefore, if Zagacki wanted to go over the errors those employees made, Zagacki had no choice but to go over the errors in the morning. *Id.*  In addition, Zagacki wanted to go over those errors at the start of each employee's shift in an effort to ensure the errors were not repeated even during that shift. *Id.*  When Zagacki did speak to the employees, she focused on the errors that had been made and, particularly if patient care could have been impacted, stressed the importance of the fact that the errors were found. *Id.* at ¶ 5.  On occasion, Broadnax and Zagacki would disagree about whether an error was actually an error or needed to be corrected, but that was the result of differing views between Zagacki (the manager) and Broadnax (her subordinate). *Id.* at ¶ 6; *accord* Defendant's SOFs, ¶¶ 126-132, which Broadnax does not address and, therefore, admits.  In any event, there is no record evidence that Broadnax ever objected to Zagacki speaking to the employees about their errors. *Id.* at ¶ 5.  In fact, Broadnax testified that it was very important that these errors be caught and not repeated. Defendant's SOFs, Exh. 5, Broadnax Dep., 200:3-201:5.  Broadnax also testified there was nothing wrong with Zagacki asking Broadnax to check the scripts. *Id.* at 215:17-20.  In fact, checking scripts was not a duty Zagacki imposed on Broadnax, Broadnax never asked to stop checking scripts out of some concern about her coworkers, and Broadnax even complained once when a coworker – Margarita Robles – checked scripts. Zagacki Supp. Aff., Exh. 51, ¶¶ 7-9.  Finally, while Broadnax argues on page 9 of her Response Brief that she "could not be present to explain her error corrections or address her coworkers' concerns directly," there is no record support for the notion that Broadnax

10200319.v4                                                                                                  8

could not have discussed the errors at any other times.

19.    **Zagacki privately thanked Broadnax for checking her coworker's scripts, as evidenced by a 2019 email between Zagacki and Broadnax. (See Broadnax Exhibit 1).**

Reply: Jefferson does not dispute that Zagacki thanked Broadnax on October 21, 2019, for "following up on the outpatient errors from Friday." *See* Broadnax Exhibit 1.  Jefferson does not know what Broadnax means by "privately" and therefore, lacks sufficient information or knowledge to enable Jefferson to dispute or concede that Zagacki privately thanked Broadnax.  In any event, whether Zagacki thanked Broadnax privately does not raise a genuine question of causation or pretext. *See* Defendant's Reply to Statement, ¶ 18; Defendant's SOFs, ¶¶ 156-157, 159-160 (showing Zagacki consistently responded to complaints her subordinates had about each other).

20.    **From 2011- 2015, Broadnax asked Zagacki if she could participate in training along with her coworkers so that she could go back to working in some of the expanded areas she worked in prior to her resignation. (See Exhibit 1, nos. 10 and 11, and Exhibit 21 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax, on occasion after she returned to work in 2011, asked to be trained in certain areas beyond phlebotomy.  Jefferson disputes that, "from 2011-2015," Broadnax asked Zagacki if Broadnax could participate in training "along with her coworkers" so that she could go back to working in some of the "expanded areas" she worked in prior to her resignation.  Indeed, none of the Exhibits Broadnax cites support her statement in paragraph 20 herein. *See also* Statement, ¶ 26 (citing only one occasion Broadnax mentioned training in writing).  In any event, neither Broadnax's allegations nor Jefferson's disputes with them raise a genuine question of material fact concerning causation or pretext for the reasons explained in Defendant's Brief, pp. 16-17, n. 6, and Reply Brief, p. 9-10.  By way of further answer, *see* Defendant's SOFs,

¶¶ 143-145, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

**21.   Zagacki informed Broadnax that her work schedule meant she arrived too late in the day to attend trainings, to which Broadnax replied that she did not mind coming into work early or on one of her off days in order to receive trainings. (See Exhibit 1 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion.  As explained in Defendant's Brief, pp. 16-17, n. 6, and Reply Brief, p. 9-10, however, these facts do not raise a genuine question of material fact.  By way of further answer, *see* Defendant's SOFs, ¶¶ 143-145, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

**22.   Broadnax learned that newly hired employees were receiving trainings that she was not. (See Exhibit 1 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in this paragraph because Broadnax does not identify herein or in Exhibit 1 the "newly hired employees" to whom she is referring.  In any event, even if there were certain employees who received trainings Broadnax did not receive, that does not raise a genuine question of material fact.  Broadnax admits still other employees were not trained in areas beyond phlebotomy and there is no evidence any of those coworkers complained of discrimination or retaliation. *See* Defendant's SOFs, ¶¶ 143-144, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

**23.   In 2011, Broadnax stated that Lindsey D'Elia, an outpatient coordinator for Jefferson, informed her that Zagacki was limiting Broadnax's trainings and keeping her away from other coworkers (See Exhibit 5, 19:12 – 20:5 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in paragraph 23.  As explained in Defendant's Brief, pp.

10200319.v4                                    10

16-17, however, these facts do not raise a genuine question of material fact.

**24.     Broadnax's performance evaluations signed by Zagacki for the years 2011-2012, 2012- 2013, 2014- 2015, and 2016- 2017, note that Broadnax would receive trainings and continuing education programs in the next year. (See Broadnax Exhibit 2).**

Reply: Jefferson disputes the allegations in this paragraph, as the performance evaluations are documents that speak for themselves.   That said, Jefferson does not dispute that those performance evaluations reference future training for Broadnax. *See* Defendant's SOFs, ¶ 142.

**25.     Broadnax contends that she never received these trainings as promised (See Exhibit 1, Exhibit 3, and Exhibit 5 338:15- 340:9 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. See Defendants' SOFs, ¶¶ 141-142, except that Jefferson disputes that these trainings were "promised."  Neither the record Broadnax cites herein nor any other record evidence supports that Zagacki "promised" the trainings would be provided. *See* Defendant's SOFs, Exh. 3, Complaint; Defendant's SOFs, Exh. 5, Broadnax Dep., 338:15-340:9.  In any event, as explained in Defendant's Brief, pp. 16-17, and Reply Brief, p. 10, Broadnax's contentions in paragraph 25 herein do not raise a genuine question of material fact.  By way of further answer, *see* Defendant's SOFs, ¶¶ 143-145, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 44.

**26.     In 2014, Broadnax emailed Zagacki to express her concern about Zagacki telling coworkers that Broadnax was on a reduced schedule, and also expressed her concern about not being retrained in areas necessary for advancement (See Broadnax Exhibit 3).**

Reply: Jefferson disputes that, in the email Broadnax has marked as Exhibit 3, Broadnax expressed her concern about not being retrained in areas "necessary for advancement," as this is not supported by the record. *See* Broadnax Exhibit 3.  Also, Broadnax admits that neither her title,

her compensation nor any opportunity for advancement at MHD would have been impacted if she were trained in other areas. *See* Defendant's SOFs, ¶ 145, which Broadnax did not address and, therefore, admits under this Court's Policies and Procedures, p. 14, ¶ 4. Jefferson does not dispute the remainder of the allegations in paragraph 26. None of these facts, however, are material to whether Broadnax can sustain her claims.

27.    **Zagacki initiated service trainings for her staff where Broadnax was not present (See Broadnax Exhibit 4) (See Exhibit 3 and Exhibit 5: 338:15- 340:9 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Zagacki initiated service trainings for her staff where Broadnax was not present. As this is the first Broadnax has raised an issue about these service trainings, Jefferson offers the following Reply evidence that undisputedly rebuts her contention. Broadnax offers no evidence – and none exists - that Zagacki "initiated" these trainings. In fact, as evidenced by Broadnax Exhibit 4, many employees who did not even work in the Lab under Zagacki were required to undergo the behavior service training that Broadnax references. *See* Broadnax Exhibit 4; *see also* Zagacki Supp. Aff., Exh. 51, ¶ 11. In addition, Broadnax has no evidence to even suggest that Zagacki's reason for why Broadnax could not attend the training when it was initially scheduled was illegitimate or false. *Id.* Indeed, the undisputed record evidence shows that Broadnax was rescheduled to take the training on a later date and that there were other coworkers (such as Crystal Taylor) who also had to have their training session rescheduled. *See* Exhibit 52 attached hereto (TJUH000627) (showing Crystal Taylor's training was rescheduled from September 29 to November 7).; *Cf.* Exhibit 53 attached hereto (TJUH000075-000076).

28.    **Zagacki often scheduled staff meetings at times where she knew Broadnax was not scheduled to work (See Exhibit 1 no. 11 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

10200319.v4                    12

Reply: Jefferson disputes that Zagacki "often" scheduled staff meetings at times "where she knew Broadnax was not scheduled to work." There is no record evidence concerning the number of occasions Broadnax missed a staff meeting due to the time it was scheduled. In any event, this dispute does not raise a material fact. Broadnax offers zero evidence that Zagacki prohibited Broadnax from attending the meetings whenever they were scheduled and the record evidence concerning Zagacki scheduling staff meetings suggests the opposite – i.e., that Zagacki included Broadnax among those employees she asked to attend the meetings. *See* Defendant's SOFs, ¶ 148. Further, if Broadnax's schedule impacted her attendance at staff meetings, Broadnax admits her schedule was the way it was because she requested it. Broadnax further admits that other employees missed staff meetings due to his/her schedule and that there is no evidence those other employees also complained of discrimination/retaliation like Broadnax. *See* Statement, ¶¶ 12 and 13 *supra*; *see also* Defendant's SOFs, ¶¶ 12, 146-148, which Broadnax did not address and, therefore, admitted under this Court's Policies and Procedures, p. 14, ¶ 4; *see also* Zagacki Supp. Aff., Ex. 51, ¶ 10. Indeed, when Zagacki did schedule a staff meeting in the morning, she did so because virtually all of the employees who reported to Zagacki worked in the morning. *See* Zagacki Supp. Aff., Ex. 51, ¶ 10. Broadnax has no evidence to refute this legitimate reason. Broadnax admits that Zagacki included Broadnax in other employee events planned in the lab. *See* Defendant's SOFs, ¶ 149, which Broadnax does not address and, therefore, admits under this Court's Policies and Procedures, p. 14, ¶ 4.

**29.    Broadnax states that eventually, she began going over Zagacki's head to make complaints directly to George Marrone and Suzana Hazma however her concerns were never properly addressed (See Exhibit 5, 14: 2-8 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax states that she complained to Marrone and Hamza

(misspelled herein as "Hazma") about Zagacki and that the complaints were "never resolved" *See* Defendant's SOFs, Exh. 5, Broadnax Dep., 12:13-14:8; *but see* Defendant's SOFs, ¶ 119; Defendant's SOFs, ¶¶ 121-133, which Broadnax did not address and, therefore, admitted under this Court's Policies and Procedures, p. 14, ¶ 4. In any event, Broadnax's allegations do not raise a genuine question of material fact. Among other things, she provides no specificity regarding the complaints she purportedly made to Hamza and Marrone such that any conclusions can be drawn from the complaints and/or Hamza's and Marrone's reactions to them.

**30.    In 2013, Broadnax complained to Zagacki that she was being antagonized by her coworker Geniece. Zagacki responded that these were "serious accusations" but could not question anyone without further facts (See Broadnax Exhibit 5).**

Reply: For the purposes of the Motion, Jefferson does not dispute that Broadnax complained to Zagacki about a coworker, Geneice Carroll, in an email dated September 30, 2013, which Broadnax identifies as Broadnax Exhibit 5, and that Zagacki responded by stating, among other things, that Broadnax accusations were "serious", but Zagacki could not question anyone until she had "the facts." Jefferson disputes the remainder of the allegations in paragraph 30 as being contrary to the record evidence. As this is the first time Broadnax raises this incident as an issue, Jefferson offers the following Reply evidence that undisputedly refutes it. Specifically, as evidenced by Broadnax Exhibit 5, Broadnax did not complain that she was being antagonized by Carroll. Broadnax complained about Carroll's behavior towards Lisa Hall. *See* Broadnax Exhibit 5. In addition, Jefferson disputes the implication that Zagacki's response somehow shows animus against Broadnax as there is no evidence to support it. As this is the first time Broadnax has raised an issue with the way Zagacki handled the email marked as Broadnax Exhibit 5, Jefferson offers the following Reply evidence that rebuts Broadnax's contention. Zagacki stated she was confused by Broadnax's timeline of events given that it conflicted with the work schedules of those employees

involved and asked Broadnax for clarification, as well as if there were any witnesses to the behavior. *Id.; see also* Defendant's SOFs, ¶¶ 155-156, 159-160.  There is no evidence Zagacki's confusion was not well-founded or that Broadnax did anything to clear up that confusion.  Thus, Broadnax's contentions in paragraph 30 herein neither raise a genuine question nor one involving a material fact.

**31.    In November 2013, Broadnax complained to Zagacki that her coworker Maureen Pisano impeded her ability to obtained [sic] blood cultures from their supply closet and treated her in a condescending manner. (See Broadnax Exhibit 6).**

Reply: Undisputed for the purposes of this Motion. *See* Broadnax Exh. 6.  Jefferson does dispute the implication that Zagacki's response to Broadnax's complaint evidences animus, as such a conclusion if contrary to the undisputed record evidence.  As this is the first time Broadnax raises this incident as an issue, Jefferson offers the following Reply evidence that undisputedly refutes it.  Well before Broadnax's November 2013 email to Zagacki, Zagacki repeatedly had instructed all her direct reports, including Broadnax, that they should not take supplies from the nursing supply closets. *See* Exhibit 54 attached hereto (TJUH001011-1021).  In responding to Broadnax's November 2013 email, Zagacki referred Broadnax to those prior emails. Broadnax Exh. 6.  Not only did Zagacki graciously apologize to Broadnax for the inconvenience, *see* Exhibit 55 attached hereto (TJUH001029), but Broadnax offers no evidence Zagacki treated Broadnax any differently on this issue than Zagacki treated any of Broadnax's peers.

**32.    In November 2014, Broadnax sent an email to Zagacki complaining that someone had stolen her CCP cup and that she had been verbally threatened by her coworker Lisa Hall. Zagacki responded that Broadnax should bring this to the attention of Marrone and perhaps HR. Broadnax then emailed Marrone explaining that she had been threatened. There is no evidence that this matter was resolved with Broadnax. (See Broadnax Exhibit 7).**

10200319.v4                                                15

Reply: Jefferson disputes Broadnax's contention that Broadnax Exhibit 7 supports the allegations in paragraph 32. Notably, no document was filed as "Broadnax Exhibit 7." As this is the first time Broadnax raises this incident as an issue, Jefferson offers the following Reply evidence that undisputedly refutes it. There is other evidence in the record showing that, in November 2014, Broadnax complained that her CCP cup was missing, and that Lisa Hall verbally threatened Broadnax. *See* Exhibit 56 attached hereto (TJUH001034-001035). Jefferson disputes Broadnax's contention that she complained her cup had been stolen, as this is contrary to the record. *See* Exhibit 57 attached hereto (TJUH000065). Jefferson further disputes that "[t]here is no evidence that this matter was resolved with Broadnax," as it also is contrary to the record. Specifically, the record shows Zagacki tried to determine what happened to Broadnax's CCP cup and, when she could not do so, bought Broadnax tea, offered to pay Broadnax for the cup, and investigated Broadnax's complaint about Hall but found it could not be substantiated. *See id.*; *See also* Defendant's SOFs, Exh. 45, Documents Concerning Complaints About/Issues with Broadnax, TJUH000066-000067.

**33.** **In August 2017, Broadnax sent an email to Hazma that she had never received her 5-year recognition certificate, which she should have received the prior year. Hazma eventually facilitated the giving of this certificate to Broadnax. (See Exhibit 39 and Exhibit 40 attached to Defendant's Motion for Summary Judgment).**

Reply: For the purposes of the Motion, Jefferson does not dispute Broadnax and Hamza (incorrectly spelled "Hazma") exchanged emails as reflected in Exhibits 39 and 40 to Defendant's Motion for Summary Judgment. Jefferson does dispute that Hamza "eventually facilitated the giving of [the recognition certificate] to Broadnax," as this is unsupported and in fact contradicted by the record. In Exhibit 39, Hamza explained to Broadnax that per diem employees like Broadnax are not eligible for service certificates. *See* Defendant's SOFs, Exh. 39; *see also* Defendant's SOFs, ¶ 125, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures. Thus,

Zagacki's conclusion that Broadnax was not eligible for the certificate was correct. *See* Exh. 40.

Broadnax has no evidence to refute that she never was eligible for the service certificate and that both

Hamza and Zagacki looked into and addressed her concerns regarding the same.  In fact, Broadnax

admitted that the only other employee who she knows received the certificate was a full-time

employee, Erica Perry. Defendant's SOFs, Exh. 5, Broadnax Dep., 186:17-187:12.

**34.    In or about May 2017 Broadnax's diagnosis of Raynaud's Syndrome was causing her hands to turn blue and numb. This made it difficult for Broadnax to perform her primary job duty of drawing blood. (See Exhibit 1, Exhibit 3, Exhibit 21 No. 15, and Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion.

**35.    Broadnax made a request for a mini heater due to the above condition, but Zagacki denied Broadnax's request and instead told her to continue holding cups of water or cocoa to warm her hands. (See Exhibit 1, No. 9, Exhibit 3, and Exhibit 21, No. 15 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Zagacki denied Broadnax's request for a mini heater but, for the

purposes of the Motion, does not dispute that Zagacki allowed Broadnax to continue to hold cups

of hot water and cocoa to warm her hands. *See* Defendant's SOFs, ¶¶ 152-153.  Jefferson's dispute

does not raise a genuine question of a material fact, however, as, among other things, Broadnax

admits holding warm liquid was a sufficient accommodation because it enabled her to perform her

job. *Id.* at ¶ 153.

**36.    Broadnax contends that other employees were allowed to use mini heaters (See Exhibit 5, 184:13-20 attached to Defendant's Motion for Summary Judgment).**

Reply:  Jefferson does not dispute that Broadnax contends one other employee (named Denise)

had a heater. Defendant's SOFs, Exh. 5, Broadnax Dep., 184:13-20.  Jefferson disputes that this

evidences disparate treatment of Broadnax.  Broadnax fails to offer any evidence regarding the circumstances pursuant to which Denise had a heater such that any reasonable juror could render any conclusions about that, much less find retaliatory animus regarding Broadnax.  In any event, Broadnax admits she did not need the heater to do her job. *See* Defendant's SOFs, ¶ 153.

**37.    On or about September 2017, Broadnax was cut on her leg by a metal keyboard slide that was left under the work bench after a broken keyboard tray was removed. (See Exhibit 3 and Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of this Motion. Defendant's SOFs, ¶ 152.

**38.    Broadnax's Lupus and Raynaud's Syndrome causes her skin to tear and bleed easily and makes her prone to infections. The cut caused Broadnax to have to take antibiotics for  this reason, and Broadnax requested that the metal keyboard trays be removed from under these work areas (See Exhibit 21, Exhibit 5 188:16-18, and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of this Motion.

**39.    Zagacki refused this request and instead covered the sharp edges with tape. (See Exhibit 5 187: 19-23, Exhibit 21, Exhibit 20 attached to Defendant's Motion for Summary Judgment).**

Reply: For the purposes of the Motion, Jefferson does not dispute that Zagacki covered the sharp edges with tape.  The undisputed evidence, however, refutes Broadnax's allegation that Zagacki refused Broadnax's request to have the trays removed.  Broadnax admits or cannot genuinely dispute that Zagacki: (a) instructed Broadnax to sit at another desk; (b) put tape over the metal piece; (c) called Facilities to remove the metal piece; and (d) when Facilities did not remove the piece, Zagacki removed it herself." *See* Defendant's SOFs, ¶ 154.  There is no evidence Zagacki was aware the

tape did not sufficiently cover the slides or that the slides had not been removed until Broadnax informed Zagacki of that fact.

**40.     The tape did not sufficiently cover the sharp edges, and Broadnax cut herself on the tray another time. (See Exhibit 3, Exhibit 21 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. By way of further answer, there is no evidence Zagacki was aware the tape did not sufficiently cover the slides or that the slides had not been removed until Broadnax informed Zagacki of that fact.

**41.     Broadnax contends that Zagacki did not act accommodate [sic] her request in a reasonable amount of time. (See Exhibit 3 and Exhibit 21 attached to Defendant's Motion for Summary Judgement).**

Reply: For the purposes of the Motion, Jefferson does not dispute that Broadnax contends Zagacki did not accommodate her request in a reasonable amount of time.  That said, Broadnax admits or cannot genuinely dispute that Zagacki: (a) instructed Broadnax to sit at another desk; (b) put tape over the metal piece; (c) called Facilities to remove the metal piece; and (d) when she realized Facilities did not remove the piece, Zagacki removed it herself.  *See* Defendant's SOFs, ¶ 154. Moreover, there is no evidence that Zagacki was aware the tape did not sufficiently cover the slides or that the slides had not been removed until Broadnax informed Zagacki of that fact.

**42.     On or about September 12, 2017, Broadnax noticed that she was not receiving retirement reductions on her pay statements (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. Defendant's SOFs, ¶ 150.

**43.     On or about September 12, 2017, Broadnax emailed Hazma inquiring about**

**why she was not seeing her retirement reductions. Hazma responded on September 14, 2017, informing Broadnax that Broadnax would have had to sign up for her retirement plan when she was hired at Jefferson a second time in 2011 (See Exhibit 39 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute Hamza (incorrectly spelled as "Hamza") and Broadnax had the email exchange marked as Exhibit 39 to Defendant's Motion for Summary Judgment, but Jefferson disputes Broadnax's description of the same as being contrary to the record.  In Exhibit 39, Broadnax emailed Hamza, "Can you tell me if I have money invested in my 401K?  I always thought I had it, however, I don't see any deductions in my pay check.  If I don't have it, can you tell me why, and how I can get one?"  Hamza responded, "Do you recall signing up for your retirement plan when you were hired the second time?"  Hamza then provided Broadnax with contact information to those she could contact to sign up and discuss investment selections. Defendant's SOFs, Exh. 39. Regardless, this dispute is not material, as even Broadnax's description of the email fails to raise a genuine question of material fact.

**44.   Broadnax had never been informed that she needed to re-sign up for retirement reductions upon her return to Jefferson in 2011 (See Exhibit 5, 144:20 – 146:5 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in paragraph 44 but, for the reasons stated in Defendant's Brief and Defendant's Reply Brief, those allegations are not material.  By way further answer, see Defendant's SOFs, ¶ 151, which not only is supported by Broadnax's own admissions, but which should be deemed admitted anyway because Broadnax failed to address paragraph 151 herein. *See* the Court's Policies and Procedures, p. 14, ¶ 4.

**45.   Broadnax states that prior resigning from Jefferson in 2008, she was enrolled in her retirement fund and had retirement reductions on her paychecks. (*Id.* at 151:10- 23**

10200319.v4                                    20

**attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of this Motion.

46.    **New hires are supposed to receive a new hire packet ("Packet") when they begin employment at Jefferson. These Packets contain information about enrolling for retirement. Broadnax states that she never received a Packet with this information when she was hired by Jefferson the second time in 2011. Broadnax also states that other coworkers she spoke with that were hired after 2011 explained to her they received Packets with retirement information, and also attended an orientation which explained to them that they needed to enroll into their retirement fund, with instructions on how to do so _Id._ at 144:20-147:10.**

Reply: Jefferson does not dispute that Broadnax claims she did not receive information when she returned to Jefferson in 2011 informing her that she needed to enroll in a retirement plan to begin contributing to her retirement and does not dispute that Broadnax generally references other coworkers with whom she spoke who she contends told her that they went to orientation where they learned how to enroll in a fund. Defendant's SOFs, Exh. 5, Broadnax Dep. 144:20-147:10. Jefferson disputes the remainder of the allegations in this paragraph but, for the reasons stated in Defendant's Brief and Defendant's Reply Brief, those allegations are not material.  Also, see Defendant's SOFs, ¶ 151, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

47.    **Broadnax contends that when she began asking around about who should have informed her about retirement and provided her new hire information, Zagacki, D'Elia, and HR  all pointed fingers at one another and shifted blame (_Id._ at 145:11- 22).**

Reply: Jefferson disputes that Broadnax accurately describes her testimony on page 145 of her deposition.  There, Broadnax testified that Zagacki, D'Elia and some unspecified people from HR

10200319.v4                                          21

and payroll "pointed a finger at each other" saying it was the other person's job to "take" Broadnax somewhere. Defendant's SOFs, Exh. 5, Broadnax Dep., 145:11-22.  That said, this dispute does not raise a genuine question of material fact on causation or pretext.  Broadnax admits she does not believe these individuals harbored retaliatory animus against Broadnax for filing a complaint of discrimination/retaliation. *See id.* at 146:11-147:3. Also, *see* Defendant's SOFs, ¶ 151, which Broadnax did not address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

**48.     Broadnax contends that when she was first hired by Jefferson in 2005, her immediate supervisor Carol Delaney sent her to new hire orientation where she was instructed signing up for a retirement fund. Broadnax contends that when she returned to Jefferson in 2011, it was Zagacki's job as her immediate supervisor to ensure she attended orientation and obtained the necessary information for retirement (*Id.*, at 160:10-23)  (See also Exhibit 3 attached to Defendant's Motion for Summary Judgement).**

Reply: For purposes of the Motion, Jefferson does not dispute that Broadnax contends that, when she was first hired by Jefferson in 2005, Carol Delaney – her immediate supervisor at the time – "made sure, when she was ready to bring me on as a new employee, she sent me to new-employee orientation." Defendant's SOFs, Exhibit 5, Broadnax Dep., 160:10-23.  Jefferson disputes the remainder of the allegations in paragraph 48, as they are refuted by the record.  Specifically, Broadnax admits she only assumed Zagacki would send her to orientation and, in fact, does not know who decided if Broadnax should have attended orientation. *Id.* at 160:10-161:15.

**49.     On or about December 20, 2017, Broadnax filed a second charge of discrimination against Jefferson with the PHRC and EEOC for failure to accommodate her disability in violation of the ADA and PHRA, and in retaliation for filing her 2011 charge in violation of the ADA, PHRA and Title VII. (See Exhibit 21 attached to Defendant's Motion**

10200319.v4                                    22

for Summary Judgment).

Reply: Undisputed. *See* Defendant's SOFs, ¶ 17.

**50.     Specifically, Broadnax alleged in her 2017 charge that: (a) Zagacki denied Broadnax the accommodation she requested in May 2017 to use a portable mini heater during her shift to help deal with her Raynaud's Syndrome; (b) Defendant denied her request for a reasonable accommodation to have a broken keyboard slide under one of the desks in Broadnax's work area removed because Broadnax had cut herself on the broken slide; (c) Zagacki refused to train Broadnax in "other areas such as Accessioning, Send Outs, Microbiology, and the Infusion Center" due to her disability (Lupus) and in retaliation for Broadnax filing the 2011 Charge; and (d) also in retaliation for filing the 2011 Charge, Defendant failed to inform Broadnax upon her rehire in 2011 that she needed to register for a retirement account. (See Exhibit 21 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 18.

**51.     Both parties participated in the EEOC process after filing. Jefferson specifically filed a response to the charge in 2017 and continued to cooperate with the investigation in June 2018 (See Exhibit 21 attached to Defendant's Motion for Summary Judgment) (See Broadnax Exhibit 8).**

Reply: Jefferson disputes that both parties participated in the EEOC process after Broadnax filed the 2017 Charge, as there is no record evidence Broadnax did anything associated with her 2017 Charge except file it. Jefferson does not dispute that it filed a response to the 2017 Charge in March 2018 and cooperated with the PHRC investigation in June 2018, as reflected in the exhibits Broadnax cites in paragraph 51. *See also* Defendant's SOFs, ¶ 19.

**52.     On or about April, 2019, the EEOC dismissed Broadnax's 2017 charge of**

10200319.v4                                        23

**discrimination. (See Exhibit 24 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 20.

**53.    On or about June 2019, Broadnax sent an email to Zagacki, Marrone, and Hazma ("Hazma") expressing her concerns about being undermined by coworkers and supervisors, and Zagacki not backing her up when she tried to help her less experienced peers conduct their job duties appropriately, and they got defensive. Broadnax expressed that she has felt undermined by her supervisors for years and doesn't know what else to do. (See Broadnax Exhibit 9).**

Reply: Jefferson does not dispute that Broadnax sent the emails marked as "Broadnax Exhibit 9" and does not dispute that they say what Broadnax Exhibit 9 reflects.  That said, Jefferson disputes Broadnax's description of the emails, as they are documents that speak for themselves.  Further, Jefferson disputes any new suggestion that Broadnax's email constitutes a complaint of discrimination or retaliation, i.e., protected activity.  Not only does Broadnax not raise this argument in her Response Brief, but Broadnax specifically denied her email was about discrimination or retaliation. *See* Defendant's SOFs, Exh. 5, Broadnax Dep., 201:20-202:6, 226:7-13.  Broadnax admitted the email was "about work.  This wasn't about what [she] was experiencing personally." *Id.* at 226:12-13.  Jefferson also disputes any implication that Zagacki, Marrone and/or Hamza failed to sufficiently address any valid concerns Broadnax described in "Broadnax Exhibit 9." *See* Defendant's SOFs, ¶¶ 121.b., 126-132, which Broadnax failed to address and, therefore, admitted under this Court's Policies and Procedures, p. 14, ¶ 4.

**54.    On or about February 11, 2019, Broadnax's suffered from a mild stroke causing her to take medical leave until April 6, 2019. (See Exhibit 1, Exhibit 3, and Exhibit 5, 190:19-22 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion.

10200319.v4                                    24

**55.     Upon Broadnax's return from medical leave, in April 2019, she began experiencing increased hostility from coworker, Crystal Taylor. (See Exhibit 5, 96:5- 100:11 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Broadnax began experiencing hostility from coworker, Crystal Taylor, when Broadnax returned from medical leave in April 2019.  Jefferson also disputes that this was "increased hostility," as this is contrary to Broadnax's own admissions that, before her leave, she had no issues with Taylor. Defendant's SOFs, Exh. 5, Broadnax Dep., 262:17-18, 309:9-11, 361:8-13.  Nevertheless, whether Broadnax experienced hostility (increased or otherwise) from Taylor after Broadnax returned from leave does not raise a genuine question of material fact regarding causation or pretext, as explained in Defendant's Brief and Defendant's Reply.

**56.     Broadnax viewed Taylor as "aggressive" and witnessed Taylor behaving aggressively on multiple occasions, such as slamming doors, slamming down phones, and speaking rudely to other individuals (See Exhibit 5, 70: 1-25 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Broadnax viewed Taylor as "aggressive" and contends she witnessed Taylor slamming a door, slamming down the telephone or disconnecting a call rather than adhering to whatever was needed in the outpatient lab. Defendant's SOFs, Exh. 5, Broadnax Dep., 70:1-25.  Jefferson disputes that Broadnax testified that she witnessed Taylor being rude to other individuals. *Id.*  In any event, this dispute does not raise a genuine question regarding causation or pretext, for the reasons stated in Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-112, 117, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**57.     Broadnax believed Taylor had a general reputation for aggressive behavior**

**amongst coworkers (*Id.* at 72: 16- 23, 73:17- 74:3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for purposes of the Motion.  Even so, these allegations do not raise a genuine question of causation or pretext, for the reasons stated in Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

58.    **Broadnax states that several employees have complained to Zagacki about Taylor (*Id.* at 79:13- 80:19 attached to Defendant's Motion for Summary Judgment).**

**Reply:** Undisputed for the purposes of the Motion. Even so, these allegations do not raise a genuine question of causation or pretext, for the reasons stated in Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

59.    **In February 2015, employee Shannon Torelli reported that Taylor was antagonizing her and had made multiple inappropriate outbursts in the phlebotomy room (See Broadnax Exhibit 10).**

Reply: Jefferson does not dispute that Shannon Torelli sent the email Broadnax marks as Broadnax Exhibit 10 to the then Human Resources Business Partner ("HRBP"), Zene Colt, and to Zagacki.   Jefferson disputes Broadnax's description of the email, however, as, Torelli complains about Taylor, Torelli does not state Taylor was "antagonizing" Torelli. Broadnax Exh. 10.  Further, there is no evidence Colt, who worked with Zagacki to address Torelli's complaint, was involved in any way in Broadnax's termination decision. *See* Exhibit 58 hereto (TJUH000531-000533).  Even so, these allegations do not raise a genuine question of causation or pretext, for the reasons stated in Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's

SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**60.      In 2016, Jefferson issued two separate disciplinary warnings to Taylor; one for screaming at another employee and the other for raising her voice to another employee. Curiously, both disciplinary actions were listed as "first warnings" (See Broadnax Exhibit 11).**

Reply: Jefferson does not dispute that it issued Taylor a First Written Warning – Documented Counseling on January 4, 2016, for screaming at Shannon Torelli to stop singing and a First Written Warning on August 25, 2016, for raising her voice reprimanding the 3rd shift staff. *See* Broadnax Exhibit 11.  Jefferson disputes that this is "curious[]."  That said, the allegations in paragraph 60 and any other allegations about Taylor's disciplinary history and conduct toward other employees do not raise a genuine question of causation or pretext, for the reasons stated in the Defendant's Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**61.      On or about December 18, 2018, Taylor was issued another disciplinary action, which was again listed as a "First Written Warning." (See Exhibit 31 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Taylor was issued a First Written Warning on December 18, 2018.  By way of further answer, this First Written Warning for a complaint <u>from a patient</u> that Taylor had been "nasty" to her and was wearing ear buds. Exh. 51 hereto, Zagacki Supp. Aff., ¶ 12. Regardless, the allegations in paragraph 61 do not raise a genuine question of causation or pretext, for the reasons stated in the Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the

Court's Policies and Procedures, p. 14, ¶ 4.

**62.    On or about March 24, 2018, employee Tatyana Robinson reported Taylor for being confrontational and not knowing her proper job duties (See Broadnax Exhibit 12).**

<u>Reply:</u> Jefferson does not dispute that Tatyana Robinson sent the email in the document identified as Broadnax Exhibit 12.  Jefferson disputes Broadnax's characterization of the same, as the email is a document whose terms speak for themselves.  Robinson did not write that Taylor was "being confrontational and [did] not know[] her proper job duties."  Nevertheless, the allegations in paragraph 62 do not raise a genuine question of causation or pretext, for the reasons stated in the Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**63.    In an email to Jane Cassidy, a Nurse Manager, responding to Robinson's complaint about Crystal, Zagacki stated that she was told multiple nurses had come to her in the past to complain about Taylor and Zagacki has failed to act on it. In response to this accusation, Zagacki states that she sometimes handles complaints by telling her employees that "everyone has an off day" and states that she was not aware that her staff members were continuing to have issues with Taylor and complain about her. *Id.***

<u>Reply:</u> Jefferson does not dispute that, on May 4, 2018, Zagacki wrote and sent an email regarding "Phlebotomy Issue 3/24/2018" in the document identified as Broadnax Exhibit 12.  Jefferson disputes Broadnax's characterization of the same, as the email is a document whose terms speak for themselves.  That said, the allegations in paragraph 63 do not raise a genuine question of causation or pretext, for the reasons stated in the Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 158-160, which Broadnax did not address and, therefore, admitted

pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**64.     On or about August 8, 2018, Naeemah Gadson reported Taylor for yelling at her and using profanities; this incident was confirmed by a witness, an employee Janet Bruno. Zagacki stating [sic] to Gadson that she could write Taylor up for this incident but Gadson told her not to worry about it. (See Broadnax Exhibit 13).**

Reply: Jefferson does not dispute that Gadson sent the email labeled Broadnax Exhibit 13, that Janet was a witness and that Zagacki told Gadson Zagacki could write up Taylor but Gadson told Zagacki to not worry about it.  Jefferson disputes Broadnax's description of Gadson's complaint.  Gadson wrote that Taylor's "voice got loud in [sic] began to used [sic] profanity . . . ." Broadnax Exh. 13. Nevertheless, this dispute does not raise a genuine question of causation or pretext for the reasons stated in the Brief, pp. 13-16, and Reply Brief, pp. 5-7. *See also* Defendant's SOFs, ¶¶ 110-117, 117, 158-160, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**65.     However, the responsibility to properly discipline employees lies managers and supervisors, not their workers. (See Exhibit 28, Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in paragraph 65, as they are contrary to the record.  Exhibit 28 lists certain responsibilities of managers/supervisors but specifically states they must consult with the HRBP when questions arise involving the application of the policy and before issuing discipline above the first written warning level. Defendant's SOFs, Exh. 28, TJUH003281.  In any event, the contentions in this paragraph 65 of the Statement do not raise a genuine question of material fact for the reasons stated in Defendant's Brief, pp. 13-16, and Reply Brief, pp. 5-7.

**66.     On or about February 13, 2019, Jefferson issued Taylor another disciplinary action after a patient reported her for making her feel uncomfortable. Defendant finally**

**issued this as a suspension/ final warning. (See Broadnax Exhibit 11).**

Reply: Jefferson does not dispute that it issued Taylor a Final Written Warning and suspended her from February 7, 2019 until February 11, 2019, for making a patient feel "uneasy." *See* Broadnax Exhibit 11. Jefferson disputes that the patient reported Taylor for making the patient feel "uncomfortable" and disputes any implication that Jefferson should have issued a Final Written Warning prior to this occasion and that Jefferson not doing so raises a genuine question of causation or pretext. It does not, for the reasons explained in Brief, pp. 13-16, and Reply Brief, pp. 5-7.

**67.     Upon Broadnax's return to work in April 2019, she was informed that her coworker and friend, Naeemah Gadson ("Gadson"), had taken medical leave after being verbally assaulted by Taylor. (See Exhibit 3 and Exhibit 59:5-20 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute the allegation in paragraph 67, except that the undisputed record evidence shows it was Broadnax, and not other employees, who characterized the confrontation between Gadson and Taylor as a "verbal assault." *See* Defendant's SOFs, ¶ 30. In any event, Broadnax admits this confrontation was "different" from the fistfight she had with Taylor because Gadson's and Taylor's interaction did not turn into a physical assault like Broadnax's and Taylor's did. *Id.* at ¶ 112; *accord id.* at ¶¶ 113-117. Thus, it does not create a genuine question of material fact. *See* Defendant's Brief, pp. 13-16, and Reply Brief, pp. 5-7.

**68.     In an email to Hazma and Marrone regarding the altercation between Taylor and Gadson, Zagacki stated that she spoke with Taylor, and Taylor believed Gadson only complained about Taylor because she knew Taylor was on the "chopping block," to which Zagacki told Taylor that her Taylor's [sic] disciplinary history was confidential/ Taylor did not receive any discipline for this incident outside of an informal counseling session with**

**Zagacki. (See Broadnax Exhibit 14)**.

Reply: Jefferson does not dispute that Zagacki wrote the document identified as Broadnax Exhibit 14 and that therein Zagacki wrote after describing the incident between Gadson and Taylor, "As a side note Crystal came to me after and said that she thinks Naeemah is doing this to get her fired knowing that she is on the chopping block." Broadnax Exhibit 14. Zagacki also wrote that she responded to Taylor by saying that "the only way anyone would know your disciplinary history is if you told them yourself. All disciplinary action is kept confidential." *Id.* Nevertheless, these disputes do not raise a genuine question regarding causation or pretext for the reasons explained in Brief, pp. 13-16, and Reply Brief, pp. 5-7.

69.     **In June 2019, Broadnax confronted Taylor about why she was being so mean towards her since she returned from her stroke in 2019, which ultimately resulted in a brief verbal altercation (See Exhibit 46 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Broadnax confronted Taylor about why she was being "so mean" towards Broadnax when she returned from her stroke in 2019, because this is contrary to the record evidence Broadnax cites. Specifically, the only record evidence about this conflict is Defendant's SOFs, Exhibit 46, which reflects that, on June 7, 2019, Broadnax and Taylor "had words" during which Broadnax expressed that she felt Taylor had been "ignoring" and not "talking" to Broadnax and Taylor asked Broadnax to "leave [Taylor] alone." Exhibit 46 shows that Broadnax specifically declined further intervention with Taylor, as Broadnax told Dutch that Broadnax would "just forget about" her issues with Taylor.

70.     **Broadnax reported Taylor's antagonistic conduct towards her to Zagacki multiple times. (See Exhibit 5, 98:21-99:19 attached to Defendant's Motion for Summary Judgment).**

10200319.v4                                              31

Reply: Jefferson disputes that Broadnax reported Taylor's antagonistic behavior towards her to Zagacki multiple times, or at all.  For the purposes of the Motion, however, Jefferson does not dispute this allegation. *See* Defendant's SOFs, ¶ 111.  Even so, this allegation does not raise a genuine question of causation or pretext for the reasons explained in Brief, pp. 13-16, and Reply Brief, pp. 5-7.

**71.      Broadnax states that Zagacki failed to properly address her concerns about Taylor, and resorted to having side conversations and participating in meetings with both Zagacki and Taylor to address Taylor's hostility. (See Exhibit 5, 99:22- 100:11 attached to Defendant's Motion for Summary Judgment).**

Reply: As explained in Defendant's SOFs, ¶ 156, Jefferson does not dispute that Broadnax describes Zagacki as a "nontraditional supervisor" and that she responded to Broadnax's complaints about Taylor in Zagacki's typical way, i.e., by having a side conversation with Broadnax to make her feel better and saying she (Zagacki) would "deal with it" and "talk to [Taylor]." Defendant's SOFs, Exh. 5, Broadnax Dep., 99:16-100:7.  According to Broadnax, this was the way Zagacki dealt with conflict at work, i.e, by trying to "keep[] things smooth or just letting each one of us know she's going to deal with it separately." *Id.*; *accord* Defendant's SOFs, Exh. 6, Zagacki Aff., ¶¶ 37-41. Broadnax concedes this was consistent with the way Zagacki responded to other coworker complaints. *See* Defendant's SOFs, ¶¶ 157-158, which Broadnax does not address and, therefore, admits under his Court's Policies and Procedures, p. 14, ¶ 4.

**72.      On or about November 18, 2019, Broadnax was physically attacked by Taylor. (See Exhibit 5, 226:14-19, Exhibit 1, and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Broadnax was "physically attacked" by Taylor, but how Broadnax's

characterizes the altercation with Taylor is not material, for the reasons explained in Defendant's Reply Brief, pp. 6-8.

**73.     Prior to the attack, Broadnax heard what she thought was Taylor imitating and mocking her to employee Tynesha Jenkins. (See Exhibit 3 and Exhibit 5, 227:21-228:21 attached to Defendant's Motion for Summary Judgment). Broadnax states that this recent incident of antagonism was "piggybacking off of six months of [Taylor's] antagonistic behavior." (See Exhibit 5, 228:22-24 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes that Broadnax was "attacked." *See* Reply to paragraph 72 herein.  Jefferson does not dispute the remaining allegations. *See* Defendant's SOFs, ¶ 36. Nevertheless, for the reasons explained in Defendant's Reply Brief, pp. 6-8, it is immaterial that Broadnax characterizes the start of the fistfight as Taylor "attack[ing]" her.

**74.     Broadnax said to Taylor, "[N]ot today, Crystal. You're too fucking old for that shit" and "I'm not for your shit today." (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 37.

**75.     Taylor "jump[ed] up and said, 'You cursed?'" and she "threw her hand" and said to Broadnax, "You're done. And [Taylor] stormed out of the office." (See Exhibit 5, 230:8-18 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 38.

**76.     Broadnax thought Taylor had left the office to report Broadnax's cursing to Zagacki. *Id.* at 263:2-22.**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 39.

**77.     Taylor came back into the office alone without Zagacki, looked at Broadnax**

10200319.v4                                    33

**"with an evil face," and "sat back down at the computer."** *Id.* **at 230:19-21, 260:22-25.**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 40.  By way of further answer, Broadnax admits that Taylor did not speak to Broadnax. *See id.* at ¶ 41, which Broadnax did not address and, therefore, admitted under this Court's Policies and Procedures, p. 14, ¶ 4.

78.     **Broadnax said to Taylor "[W]hy are you always showing off for the new hires? You do not work this area, but you're the main person making the mistakes."** *Id.* **at 230:21-231:5, 261:13-21.**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 42.  By way of further answer, Broadnax admits she made this statement in front of Jenkins and the student. *See id.* at ¶ 42, which Broadnax did not address and, therefore, admitted under this Court's Policies and Procedures, p. 14, ¶ 4

79.     **Taylor pushed back her chair, stood up, and approached Broadnax.  Taylor was "being aggressive" with Broadnax. Taylor asked Broadnax, "You want to talk about this outside?" Broadnax said, "Sure."** *Id.* **at 231:6-9, 262:24-263:8.**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 43.

80.     **Broadnax accepted Taylor's invitation to "talk about this outside" because Broadnax had been told by Zagacki to try to talk through conflicts before reporting them to management.** *Id.* **at 231:7-233:24.**

Reply: Jefferson does not dispute that Broadnax accepted Taylor's invitation to "talk about this outside."  Jefferson disputes that Zagacki told Broadnax to try to talk through conflicts before reporting them to management, as this allegation is contrary to the record.  Neither the testimony Broadnax cites nor any other record evidence supports Broadnax's (new) contention that Zagacki told Broadnax to try to talk through conflicts such as the heated discussion she was having with Taylor before reporting them to management. *See* Defendant's SOFs, Exh. 5, Broadnax Dep., 231:7-233:24.  Broadnax did testify she accepted Taylor's invitation because she thought Taylor

was asking Broadnax to have a civil side conversation about their dispute in accordance with a purported "de-escalation technique" that she contends she learned in tests she was required by Jefferson to take. *See* Defendant's SOFs, ¶ 44.  And Broadnax further testified that, during her termination call with Sniderman, she referenced those "Workplace and De-escalation Techniques." *Id.* at ¶ 98.  Regardless, the reason Broadnax contends she accepted Taylor's invitation is not material, as the record consistently shows Jefferson honestly thought Broadnax should have known that was an invitation to fight and judged her culpability accordingly. *See id.* at ¶¶ 97-102, which Broadnax does not address and, therefore, admits. *See also* Reply Brief, p. 6.

**81.    Taylor and Broadnax left the room and went into the hallway.  Taylor "started to  become belligerent [and] loud."  Broadnax responded, "[W]ait a second, Crystal, not right here.  The physicians' offices are right here, and this is a unit."  Taylor replied, "Yeah, because I'm going to whup your ass." *Id.* at 234:3-236:4.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 46.

**82.    Broadnax took a step back and said, "Crystal, you're not going to do anything to me." Taylor said, "Why? What are you going to do about it?"  Taylor was bumping Broadnax in the chest as she said this.  Broadnax responded by bumping Taylor away from her and saying, "I'm going to get Joyce [Zagacki]." *Id.* at 236:2-12, 270:5-20.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 47.

**83.    Broadnax turned her body to get Zagacki and Taylor poked Broadnax in the head while saying "Yeah, because you know better." *Id.* at 236:13-24.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 48.

**84.    Broadnax replied, "Don't put your hands on me," and poked Taylor back in the head. *Id.* at 236:20-237:14.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 49.  Further, Broadnax

admits there was nothing obstructing her way that prevented her from walking away from Taylor after she poked Broadnax in the head. *See* Defendant's SOFs, ¶ 50, which is supported by Broadnax's deposition testimony and should be deemed admitted in any event under the Court's Policies and Procedures, p. 14, ¶ 4.

85.     **Broadnax proceeded to turn away to get Zagacki when Taylor hit Broadnax in the back of the head causing her to fall to the floor.** *Id.* **at 238:3-11**.

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 51.  By way of further answer, as Broadnax explained, this is "when the *fight* began." *See id.* (emphasis added).

86.     **Taylor was hitting Broadnax and Broadnax was "swinging and punching" Taylor "to defend" herself.** *Id.* **at 242:7-11.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 52.  By way of further answer, Broadnax also explained she pulled Taylor to the floor and "hit her back," not knowing where her "hits landed." *Id.*  No one witnessed how the fistfight started. *Id.*

87.     **After Broadnax and Taylor were separated, Broadnax walked to Marrone's office and then to Zagacki's office, but neither were present.  Security was speaking to Taylor and taking her statement.**  *Id.* **at 268:9-19.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 54.

88.     **Broadnax eventually saw Zagacki and told her Taylor had attacked her.** *Id.* **at 274:4- 275:18.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 56.

89.     **Broadnax went to the emergency room for her injuries.** *Id.* **at 294:3-9**.

Reply: Undisputed for the purposes of the Motion, *See* Defendant's SOFs, ¶ 58.  In addition, Broadnax admits that she sent Taylor a text shortly after the fistfight that Taylor was an "ugly bitch," she "put her hands on the wrong one" and Broadnax "whupped [Taylor's] ass." *See* Defendant's SOFs, ¶ 57,

which is supported by Broadnax's deposition testimony and also should be deemed admitted because Broadnax did not address Defendant's SOFs, ¶ 57. *See* Court's Policies and Procedures, p. 14, ¶ 4.

**90.     Zagacki visited Broadnax in the emergency room. Broadnax contends that Zagacki told her "I think I know why this happened;" i.e., because she had a meeting that morning about the errors Broadnax had found the weekend before in Taylor's work and Taylor was angry or upset. *Id.* at 294:3-295.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶¶ 58-59.  In addition, Broadnax testified that Zagacki, in the "nice soft-spoken voice" she always used, asked Broadnax how she was doing and tried to comfort her. *Id.* at ¶ 59.

**91.     Zagacki told Broadnax that Zagacki would have to take her badge during the investigation into the altercation. *Id.* 294:25-295:2**.

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 61.

**92.     Jefferson's security office created a Security Case Report regarding the altercation, which included a report by Security Officer Sergeant William White. This report was comprised of statements by Broadnax, Taylor, and witness Loretta Ward. (See Exhibit 10 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶¶ 63-66.

**93.     Loretta Ward's statement confirmed that she had seen Broadnax and Taylor fighting, however she did not admit to seeing the start of the fight or what led up to the fight (*Id.*).**

Reply: Jefferson does not dispute that Ward told Sergeant White that she "saw two employees fighting in the hallway" and could not "break them up by yelling at them to stop." *See* Defendant's SOFs, ¶ 76.  Jefferson disputes the allegation that Ward "did not admit to seeing the start of the fight or what led up to the fight," as contrary to the evidence that Broadnax cannot now genuinely dispute,

which is that no one saw how the fight started. *See* Defendant's SOFs, ¶ 53.

94.    **Broadnax submitted a written statement to HR  describing the incident which**

read:

> **I clocked in and walked in the O.P Lab.  After I put my things in my locker, I came near the other Phlebotomist. Crystal said to Tynesha 'Don't forget to add your mag & Phos' a subliminal comment. So I said 'Crystal I'm not for ya stuff today, yu too f'ing old for that.' She got up and got in my face and said 'did you just curse @ me?' Then she said 'Your Done!" She left O.P. lab, and when she came back I said why are you always so sarcastic, she said do you wanna talk about this outside, I said yes because we had students & pts. She got in front of the Lab door and proceeded to get loud. I said I'm not doing this right here in front of the Dr's office's and administration. So she come on then turned the hall near the time clock, she said 'because I'm going to hurt you.' I said your not going to put your hands on me, she said 'Then why you come outside,' I said to talk, you not going to touch me. She then started bumping my chest all in my face. I said, I'm going to tell Joyce this is crazy, as I turned around she grabbed my hair on the right side, hit me, and pulled me to the floor. At that point I began defending myself. Dywanna Broadnax.**

**(See Exhibit 11, Exhibit 5, 258:3-260:8 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 73.  *See also* Defendant's SOFs, ¶¶ 75-76, which Broadnax did not specifically address and, therefore, admitted under the Court's Policies and Procedures, p. 14, ¶ 4.

95.    **Dennis Delisle, Jeffersons' Vice President of Operations, received a copy of the Security Case Report. (See Exhibit. 30 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed.

96.    **Delisle emailed the Security Report to Zagacki, Marrone, Gudowski, and Aaron Sniderman, the HRBP who had taken over Hazma's duties for Broadnax and Taylor's**

10200319.v4                                     38

**departments in May 2019. (See Exhibit. 30, Exhibit 48, attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 68.

97. **In his email, Delsile recommended that only Taylor receive termination for her actions, due to the fact that Taylor was already on her final written warning.** *Id.*

Reply: Jefferson disputes the allegations in this paragraph **as a misrepresentation of the clear written record**. Specifically, as is evident from Exhibit 48, Delisle (incorrectly spelled "Delsile") did not recommend that only Taylor receive termination. *See* Defendant's SOFs, ¶ 69. Indeed, Delisle asked Sniderman to follow-up with Security and Zagacki about Broadnax's role to determine the appropriate course of action for her as well. *Id.* at ¶ 71. Moreover, notably, Delisle did not see Broadnax's, Taylor's and Ward's Statements by the time he wrote this email or at all. Supplemental Affidavit of Dennis Delisle, Exhibit 59 hereto, ¶¶ 3-5. It is undisputed that, upon Zagacki accurately reporting to Delisle that the witness wrote that Taylor and Broadnax were "fist fighting," this was enough for Delisle to "fully support" terminating both Broadnax and Taylor. *See id.* at ¶ 6; Defendant's SOFs, ¶ 80. Further, Delisle's support for this decision was reinforced when he learned from Sniderman that, based on Broadnax's statement, he also would recommend Broadnax. Supplemental Affidavit of Dennis Delisle, Exh. 60, ¶ 7; Defendant's SOFs, ¶¶ 73-74, 85-89.

98. **In response to Delsile, Zagacki stated that she would be recommending Broadnax's termination as well. (See Exhibit 33 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 78. By way of further answer, it is undisputed that Zagacki informed Delisle that, after reading the witness' statement that she received from Security that Broadnax and Taylor were "fist fighting," – i.e., Ward's statement – Zagacki was going to recommend that Broadnax also be terminated (along with Taylor). *Id.* It is undisputed that, upon learning that the

10200319.v4                                             39

witness reported that Taylor and Broadnax were "fist fighting," Delisle responded to Zagacki's email that he "fully support[s]" terminating both Broadnax and Taylor. *See* Reply to Statement, ¶ 97, *supra*. Moreover, it is undisputed that, in addition to Ms. Ward's statement, Zagacki had read the Security Case Report and Taylor's and Broadnax's statements. They showed, to Zagacki, that both employees were responsible for the fistfight. Their conduct was just plain "wrong." Defendant's SOFs, ¶ 79.

**99.    Marrone also stated that he thought both Taylor and Broadnax should be terminated. See Exhibit 15 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed. *See* Defendant's SOFs, ¶ 93; *See also id.* at ¶¶ 81-83, 89, which Broadnax did not address and, therefore, admitted pursuant to the Court's Policies and Procedures, p. 14, ¶ 4.

**100.    Sniderman ultimately determined that both Broadnax and Taylor should be terminated; Zagacki, Marrone and Gudowski supported this decision. (See Exhibit 35, and Exhibit 26 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the use of the word "ultimately" but otherwise does not dispute the remainder of paragraph 100. *See* Defendant's SOFs, ¶¶ 78-93. To the extent "ultimately" means Sniderman determined Broadnax and Taylor should be terminated after his investigation into the same, Jefferson does not dispute the allegations in paragraph 100. *See id.*

**101.    On or about November 21, 2019, Sniderman informed Broadnax that she was being terminated for the fight with Taylor. (See Exhibit 5, 299:19-300:4 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson does not dispute that Sniderman informed Broadnax of her termination on November 21, 2019. Jefferson disputes that he told Broadnax the termination was for the "fight" with Taylor, as the undisputed record shows that Sniderman informed Broadnax that she was being terminated because she should have known Taylor wanted to fight and thereafter participated in a *fistfight* with Taylor. *See* Defendant's SOFs, ¶¶ 94, 97; Statement, ¶ 104, *infra*.

**102.    Broadnax asked Sniderman why she had not been questioned about her side of the story. *Id.* at 299:19-300:4.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 95.  By way of further answer, it is undisputed that, to Sniderman, Broadnax already had provided her side of the story in her handwritten statement. *Id.* at ¶ 96.

**103.    Broadnax also told Sniderman she was "the one assaulted and attacked." (See Exhibit 5, 299:19-302:19 and Exhibit 7 attached to Defendant's Motion for Summary Judgment).**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 97.

**104.    Sniderman responded that Broadnax should have known that Taylor wanted to fight when  she said that she wanted to "talk outside". *Id*.**

Reply: Undisputed for the purposes of the Motion. *See* Defendant's SOFs, ¶ 97.  By way of further answer, Broadnax has not addressed, and therefore does not dispute that, during her termination call with Sniderman, she referenced workplace violence health stream courses to try to justify her actions, to which Sniderman responded, "You participated in a fistfight." *See id.* at ¶¶ 98-99.  There is no evidence that either Sniderman or any other decision maker has been aware of any training or instruction at any time that told employees to accept an invitation from an employee during a contentious interaction to "talk about this outside." *See id.* at ¶¶ 100-102.  Further, it is undisputed that: (a) Broadnax' conduct for which Jefferson terminated her violated Jefferson's Code of Conduct policy, its Employee Disruptive Conduct Policy and its No-Violence policy; (b) Jefferson informed Broadnax that she was terminated for engaging in the fistfight in violation of Jefferson's policies; and (c) Broadnax testified and reported to the Unemployment Compensation Board that she believes the fistfight was the real reason she was terminated. *See id.* at ¶¶ 104-108, which Broadnax did not address and, therefore, should be deemed admitted under this Court's Policies and Procedures, p. 14,

10200319.v4                                     41

¶ 4.

105.   **Taylor was also terminated for the fight. (See Exhibit 37 attached to Defendant's Motion for Summary Judgment).**

**Reply:** Undisputed.

106.   **Broadnax and Taylor were issued the same punishments despite the fact that Taylor was on her final written warning, and Jefferson was aware that Taylor was a known antagonist (See Exhibit 37 and Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

**Reply:** Jefferson does not dispute that Taylor and Broadnax were issued the same punishment – termination – at a time when Taylor was on a Final Written Warning and that Taylor had been involved in verbal clashes with her coworkers.   There is no evidence, however, that any decisionmaker believed Taylor's history was material to determining the discipline to be given to Broadnax for the fistfight with Taylor.   There also is no evidence any decisionmaker thought Broadnax could not also be terminated based solely on her role in the altercation despite not having had prior discipline.   At most, Delisle told Sniderman to investigate that role to determine the appropriate action for her (which Sniderman did) and, when Delisle learned Ward said Broadnax was "fist fighting," he supported Broadnax and Taylor being terminated.  This was reinforced furthr by Sniderman telling Delisle that Sniderman also would recommend termination based on Broadnax's Statement. *See* Defendant's Replies to Statement, ¶¶ 97-98, *supra*.  Neither Gudowski, Marrone nor Zagacki felt any differently. *See* Statement, ¶ 100, *supra*.   Further, it is undisputed that: (a) after her termination, Broadnax sent a text to Zagacki apologizing for "asham[ing] the lab" and asking Zagacki to "[p]lease tell George & Linda sorry as well;" (b) Broadnax' conduct for which Jefferson terminated her violated Jefferson's Code of Conduct policy, its Employee Disruptive Conduct Policy and its No-Violence policy and that a violation of any one of those policies could

10200319.v4

42

result in disciplinary action up to and including termination; (c) Broadnax was told she was terminated for violating the Code of Conduct and the Disruptive Conduct Policy states that a willful violation of the Code of Conduct will result in termination; and (d) the Broadnax believes the fistfight was the real reason she was terminated. *See* Defendant's SOFs, ¶¶ 22-28, 103-107, which Broadnax did not address and, therefore, should be deemed admitted under this Court's Policies and Procedures, p. 14, ¶ 4.

**107.     Following her termination, Broadnax struggled to maintain financial stability and was unable to find work with a comparable salary for several months, due in part because Jefferson listed that the reason for her termination was fighting (See Exhibit 1, no. 5, Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in paragraph 107, but this dispute does not raise a genuine question regarding causation or pretext.  The allegations concern Broadnax's damages, not liability.

**108.     Broadnax has, and continues to suffer from, several physical injuries resulting from her altercation with Taylor, including a concussion and permanent knee damage that still requires physical therapy. Broadnax has had to pay for out-of-pocket medical expenses due to her injuries (See Exhibit 3 attached to Defendant's Motion for Summary Judgment) (See Broadnax Exhibit 15).**

Reply: Jefferson disputes the allegations in paragraph 108, but this dispute does not raise a genuine question regarding causation or pretext.  The allegations concern Broadnax's damages, not liability, as there is no evidence any decision maker considered the injuries Broadnax and Taylor sustained in determining discipline.  Nevertheless, during the hearing on Broadnax's criminal charges against Taylor, Taylor testified that she also was injured in the physical altercation. *See* Defendant's SOFs, Exh. 17, 32:3-8, 35:11-36:15 (Taylor testifying her right shoulder was dislocated, she injured her

right wrist, had an MRI and CAT scan, has limited motion and numbness).

**109.    While Broadnax was eventually able to find a new job in April 2020, her treatment by Defendant has caused her to be too afraid to take on new leadership roles and promotions she has been offered that would cause her to have to interact more with other coworkers and potentially cause conflict (See Exhibit 3 attached to Defendant's Motion for Summary Judgment).**

Reply: Jefferson disputes the allegations in paragraph 109, but this dispute does not raise a genuine question regarding causation or pretext.  The allegations concern Broadnax's damages, not liability.

**110.    Overall, Broadnax contends Jefferson terminated her for engaging in prior protected activity. Broadnax contends that she experienced a pattern of mistreatment since her 2011 PHRC complaint and points to the above evidence including:**

- **Zagacki's repeated failure to train Broadnax in areas required to expand her job performance despite Broadnax's repeatedly asking for training and Zagacki's promises to do so**
- **Broadnax being told by a coworker that Zagacki was intentionally preventing Broadnax from being trained in expanded areas**
- **Zagacki excluding Broadnax from staff meetings**
- **Zagacki willingly allowing Broadnax's coworkers to be upset with her for correcting their worksheets**
- **Broadnax's repeated complaints about mistreatment to Zagacki, Marone, and Hazma which did not result in any adequate resolution**
- **Zagacki's failure to properly address Broadnax's complaints that Taylor was antagonizing her**
- **Zagacki and HR's failure to provide Broadnax with the information she needed to enroll in her retirement fund**
- **Zagacki's failure to accommodate Broadnax's reasonable accommodations to have a mini heater and remove the broken metal keyboard tray**
- **Broadnax's termination for being attacked by Taylor, despite her insistence that Taylor instigated the fight, which no witnesses were able to contradict**
- **Zagacki and Jefferson's knowledge that Taylor was a known antagonist with**

10200319.v4                                              44

**multiple complaints filed against her and a disciplinary history of policy violations.**

**Reply:** Jefferson has addressed each of the foregoing allegations in Defendant's SOFs, as well in its replies to the foregoing 109 paragraphs herein.

Respectfully submitted,

Dated:  October 11, 2022

/s/ Lee D. Moylan

Lee D. Moylan
Stephanie Wolbransky
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Telephone: (215) 569-2700
lmoylan@klehr.com/
swolbransky@klehr.com
Attorneys for Defendant

10200319.v4

45