IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DYWANNA BROADNAX ,

      Plaintiff,

    v.

THOMAS JEFFERSON UNIVERSITY
HOSPITAL, INC.,

      Defendant.

Civil Action No. 21-CV-04662-JMY

**SUR-REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Court Policies and Procedures, Plaintiff Dywanna Broadnax ("Broadnax") respectfully submits this sur-reply in further support of her response to Defendant Thomas Jefferson University Hospitals, Inc.'s ("Jefferson") motion for summary judgment ("MSJ"), and in direct response to Jefferson's reply brief in support of its motion for summary judgment ("Jefferson's Reply Brief"). Herein, Broadnax asserts that she has raised genuine questions of material fact to overcome summary judgment.

I.      **The Court should strike Jefferson's Reply Brief in Support of their motion for summary judgment because it was not filed within seven (7) days of Broadnax's reply brief.**

Jefferson filed their reply brief in support of their Motion for Summary Judgment on October 11, 2022, which was eight (8) days after the filing of Broadnax's response to Jefferson's motion for summary judgment. According to this Court's Policies and Procedures, reply briefs and sur-reply briefs may be filed "within seven days of service of the opponent's brief in opposition/reply."[1] Rule 5.1.2 of the Local Rules of Civil Procedure for the United States Eastern District Court states that "a document filed electronically is deemed filed at the time and date stated on the notice of electronic case filing from the court," and that "filing a document electronically does not change any filing

---

[1] See https://www.paed.uscourts.gov/documents/procedures/youpol.pdf ("Policies and Procedures"), pp. 11-12.

deadline set by the Federal Rules."[2]

Broadnax electronically filed her response to Jefferson's motion for summary judgment on October 3, 2022, and notice of this electronic filing was sent to both parties that same day. "Within seven days" of notice and service of October 3, 2022 would have been October 10, 2022, not October 11, 2022. Because Jefferson did not file their reply brief within 7 days, Broadnax requests that the Court strike their reply from the record.

II.     **Broadnax Provides A Statement of Disputed Facts In Accordance with This Court's Policies and Procedures**

Broadnax provides along with this sur-reply a Statement of Disputed Material Facts ("Broadnax Disputed Facts") that responds to Jefferson's Statement of Material Facts in accordance with this Court's Policies and Procedures. Broadnax requests that this Court accept this filing of Broadnax Disputed Facts. Broadnax also requests that this Court allow her prior Statement of Material Facts ("Broadnax SOF's") to remain in the record, as this prior statement was also used as the "Facts" section of her Brief in Response to Jefferson's MSJ[3], and was cited by Jefferson in their Reply Brief.

III.    **Broadnax Has Shown That Jefferson's Termination of Her Was Plainly Wrong, Improper, and Indicative of retaliatory animus.**

In their Reply Brief, Jefferson argues that the record shows Broadnax's termination was justified, and that Broadnax does not dispute the conduct prompting her termination. Jefferson Reply Brief, p. 2-3. Specifically, they argue that Aaron Snidermans's ("Sniderman") Affidavit and other accompanying emails between Sniderman and Zagacki, Marrone, and Hamza state that Jefferson has a "zero-tolerance" approach to violence in the workplace pursuant to their "No Violence Policy" and as both Broadnax and Taylor were witnessed in a physical altercation, both parties are at fault. Id. at

---

[2] See https://www.paed.uscourts.gov/documents/locrules/civil/cvrules.pdf (Rule 5.12, Electronic Case Filing Procedures, Sections 5(a) and 5(c), p 9.)

[3] Furthermore, Since Jefferson cites to Broadnax's SOFs throughout their Reply Brief, Broadnax will cite to Broadnax's SOF throughout this Sur-reply as well.

4-5.

It is ridiculous to assert that observation of being in a fight automatically carries a designation of fault. As Jefferson reiterates, Broadnax does not dispute that she was engaged in a physical altercation with Taylor. However, Broadnax has continuously asserted that her engagement in this altercation was due to self-defense, and that Taylor hit her first and threw her to the ground. Broadnax SOFs at ¶ 85, 94. Jefferson fails to acknowledge that self-defense could not possibly be a violation of their No Violence Policy. Certainly, any company's policy about workplace violence would not apply to someone defending themselves from violence.

To avoid this interpretation, Jefferson asserts that Broadnax was terminated because she escalated a verbal confrontation, and thereafter was an active participant, in the ensuing altercation. They assert that Broadnax swore at Taylor, "provoked" Taylor by asking her "why are you always so sarcastic?" and accepted Taylor's invitation to "talk about this outside." See, Defendant's Reply Brief at 8; See also, Defendant's SOFs at ¶ 86, 87. Broadnax does not dispute these events took place but denies that they should be considered as "provocation" to fight or provide any other indication that she wanted to engage in a fistfight in the middle of her place of work.

Employees at Jefferson constantly get into verbal arguments and disagreements, which is apparent by evidence in the record in this case. See, Broadnax's SOFs at ¶ 58- 65, 68.   And as Jefferson repeatedly points out, there is no evidence that any of these prior altercations turned into a physical fight. See, Defendant's SOFs at ¶ 111; Defendant's Reply Brief at p. 5. But this is exactly why Broadnax had no reason to believe that Taylor would turn the fight into something physical.

Broadnax agreed to "talk" to Taylor out in the hallway in an effort to resolve their issues amongst themselves. Broadnax SOFS at 80.  It is ridiculous to believe that Broadnax took these actions in the hope that Taylor would hit her or had any reason to believe that would occur.

Jefferson alleges in their Reply Brief that Taylor's prior workplace history is not relevant to

the fight between Broadnax and Taylor itself p. 5-6.  On the contrary, Taylor's history is absolutely relevant to Broadnax's arguments that she only engaged in the altercation with Taylor based on self-defense and is also relevant to the level of discipline Broadnax was subjected to. In his affidavit, Sniderman states that he took into account the fact that both Taylor and Broadnax blamed each other for the altercation, and that he is aware of Broadnax's "side of the story." See Exhibit 26 attached to Defendant's MSJ; see also Defendants' Reply Brief at p. 5.  The implication that Taylor's and Broadnax's accounting of events were viewed by Jefferson under the same light as different sides of the story is plainly wrong, as one of these parties, Taylor, had a documented discplinary history involving aggression towards coworkers and patients and was currently on her final discplinary warning.  See, Broadnax SOFs at ¶ 56- 71.  This is certainly relevant to Jefferson's decision to place fault on both parties and discipline both parties in the same manner.

Jefferson also asserts that Taylor's prior conduct is not relevant because it did not involve the "same conduct" that was "comparable seriousness" to the fistfight. Defendant's Reply Brief p. 5. While Broadnax agrees there is no prior record of Taylor engaging in a physical fight with another employee, Taylor has previously engaged in conduct that violated all of the same policies that were used as a basis to terminate Broadnax.

Jefferson's Code of Conduct requires employees "to treat all members of the community with respect and fairness, behave in a manner that encourages cooperation, respect and dignity, and… promote and support an environment free from disruptive behavior and poor working relationships." See, Defendant's SOFs at ¶ 22-24.  Additionally, Jefferson's Employee Disruptive Conduct Policy prohibits conduct that is "abusive" and that "negatively impacts the morale and productivity of other employees." See, Defendant's SOFs at ¶ 25-27.

Taylor has been either issued disciplinary action, or reported for actions that violated these policies, yet was never terminated despite repeated offenses. See, Broadnax SOFs at ¶ 60, 61, 66. Furthermore, In April 2019, Taylor got into an altercation with employee, Naeemah Gadson

("Gadson"), that started after Taylor allegedly invaded Gadson's personal space by placing hazardous chemicals she was holding right next to Gadson's face. See, Broadnax Exhibits 14 and 16. This resulted in Gadson beginning to cry, and led to a meeting between Gadson, Taylor, and Zagacki which resulted in Taylor yelling and eventually storming out the room. Id.  After this incident, Gadson asked Zagacki if she could go to security because she did not want to be in a situation where she would have to physically defend herself. Id.   She eventually took medical leave for several months due to exacerbation of her mental health from the incident with Taylor. Id.

Not only did Taylor's actions towards Gadson violate Jefferson's Code of Conduct and Employee Disruptive Policies, but they also violated Jefferson's "No Violence Policy" that was used as justification for Broadnax's termination. Jefferson's No Violence Policy prohibits "…threats of violence, whether expressed or implied toward any individuals(s) at the Jefferson campus." See, Defendant's SOFs at ¶ 28. Taylor's actions here clearly violated the No Violence Policy, as she invaded an individual's personal space and exposed them to hazardous chemicals, and her overall conduct was so aggressive that it resulted in Gadson requesting to speak with security out of fear of having to physically defend herself, and then eventually leaving work to take medical leave. See, Broadnax Exhibits 14 and 16.

Despite this violation of the "No Violence Policy", Jefferson did not issue any discipline against either Taylor or Gadson for that incident.   The November 2019 altercation between Broadnax and Taylor blatantly crossed the line to the point that Jefferson had no choice but to terminate Taylor, who was on her final disciplinary warning. But Broadnax should not have been terminated as well, when she did not have nearly the same extensive disciplinary history as Taylor. Neither Taylor nor any of the parties she had altercations with, including Gadson, received termination as a punishment for any prior violations. Id.

This was, overall, an excessive disciplinary action against Broadnax based on assumptions about Broadnax's intent to provoke another party. Comparable situations include all of Taylor's

5

previous violations of the same policies used to terminate Broadnax, yet Taylor was given several warnings prior to her termination while Broadnax received none.

### IV.      Broadnax Has Shown Retaliatory Animus Against Her By Jefferson

Jefferson argues that Broadnax's repeated workplace issues are nothing more than workplace grievances that cannot be connected to retaliation. See, Defendant's Reply Brief p. 8.   Broadnax believes she adequately connected her workplace issues together to show a pattern of discriminatory conduct in her initial Brief in support of her response to Defendant's MSJ ("Broadnax Response Brief"). To specifically address Jefferson's new assertions, Broadnax reiterates that prior to taking medical leave and filing her EEOC Charge in 2011, she had no issues with her supervisors or other employees, and received trainings along with other employees. See, Broadnax' Response Brief at p. 9; Broadnax SOFs at ¶ 6, 7. Jefferson's actions of disparate treatment towards Broadnax, and all of the ensuing grievances Broadnax experienced, only commenced after she returned to work for Jefferson in 2011 following her protected activity of filing her first EEOC Charge. See, Broadnax, Response Brief at p. 9; Broadnax SOFs at ¶ 14. This new disparate treatment also coincided with coworkers telling Broadnax that Zagacki did not appreciate that she had filed an EEOC Charge, and that there was an office narrative of Broadnax being a complainer. See, Broadnax, Response Brief at p. 9; Broadnax SOFs at ¶ 24.

Broadnax has also shown that Zagacki failed to abide by her promises to properly train her, as evidenced in her performance evaluations and Jefferson has not provided any legitimate reason why Zagacki would not have abided by the promises made in Broadnax's performance evaluations. See Broadnax SOFs at ¶21, 24, and 26.

### V. CONCLUSION

In view of all of the facts and issues presented above, Broadnax contends that she has met her burden to show that her termination was improper and was the result of retaliatory animus.

6

Respectfully submitted,


/s/ Faye Riva Cohen, Esq.
FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
2047 Locust Street
Philadelphia, PA 19103
215-563-7776

Dated:  10/18/2022