# Exhibit 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAEEMAH GADSON<br>14 North Farson Street<br>Philadelphia, PA 19139 | :<br>:<br>: |
| Plaintiff, | : |
| | :    CIVIL ACTION |
| | :    No.:2:20-cv-05976 |
| v. | : |
| | :    AMENDED COMPLAINT |
| THOMAS JEFFERSON UNIVERSITY<br>HOSPITAL,<br>METHODIST DIVISION<br>111 South 11th Street<br>Philadelphia, PA 19107 | :<br>:<br>:<br>:<br>: |
| | : |
| Defendant. | :<br>:<br>: |

_____

**AMENDED COMPLAINT**

Plaintiff, Naeemah Gadson ("Gadson"), by and through her attorneys, the Law Office of

Faye Riva Cohen, P.C., hereby files this complaint against Defendant, Thomas Jefferson

University Hospital ("Jefferson"), alleging that her rights, pursuant to the Family and

Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §2601 *et seq.,* the Americans with

Disabilities Act ("ADA"), and its 2008 amendments, 42 U.S.C. §12101 *et seq.*, and the

Pennsylvania Human Relations Act ("PHRA"), have been violated and avers as follows:

**PARTIES**

1.    Gadson is a 39-year-old black female who resides at 14 North Farson St.,

Philadelphia, PA 19139.

2.    Jefferson, 111 South 11th S., Philadelphia, PA 19107, is an entity engaged in an

industry or activity affecting commerce which employed 50 or more employees in all of its

facilities for each working day during each of 20 or more calendar workweeks, in the

current or preceding year.

## JURISDICTION & VENUE

3.    Gadson incorporates the preceding paragraph as if set forth more fully at length herein.

4.    Subject-Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C.§1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C.§1343(4), and 28 U.S.C.§1331, under the FMLA, 29 U.S.C.§2601 *et seq.*, and under the Americans with Disability Act and its Amendments (ADA and or ADAAA), 42 U.S.C. §12101 *et seq.* Additionally, pursuant to 28 U.S.C.§1367, this Court has Supplemental jurisdiction to hear all of Gadson's claims arising under the Pennsylvania Human Relations Act ("PHRA").

5.    This Court may properly maintain Personal Jurisdiction over Jefferson because Jefferson's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Jefferson to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

6.    Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as all parties regularly conduct business within this District and the acts complained of by Gadson arose herein.

7.    Gadson dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on March 13, 2020. The EEOC issued a Right to Sue on August 27, 2020. This Complaint is being filed within ninety (90) days of Gadson's receipt of the Right to Sue.

## FACTS AND GADSON DISABILITY

2

8.    Gadson incorporates the preceding paragraphs as if set forth more fully at length herein.

9.    On January 26, 2009, Gadson was hired as a lab assistant in the Laboratory Department of Jefferson's facility location at 2301 South Broad Street, Philadelphia, PA 19148.

10.    During the course of her ten (10) year employment tenure with Jefferson, Gadson performed her job duties in an exemplary manner notwithstanding the fact that she suffers from a mental-health related disability. Prior to this incident, Gadson never requested accommodations for her disability.

11.    On or about April 1, 2019, Gadson was in a walkway at work speaking with another coworker, when Crystal Taylor ("Ms. Taylor") walked by, carrying a bag of hazardous specimens. Gadson and Ms. Taylor had previously been friends, but a documented incident in 2018 where Ms. Taylor became hostile with Gadson at work caused the friendship to deteriorate. As Ms. Taylor walked by, Gadson moved back so that Ms. Taylor would have enough room to set the specimens on a nearby counter. However, Ms. Taylor shifted her entire body closer to Gadson, invading her personal space, and positioned her left arm so that the hazardous chemicals she was holding were right next to Gadson's face. Both Gadson and the other coworker present were taken aback by this action and questioned why Ms. Taylor had done this. This newest aggression by Ms. Taylor caused Gadson to begin crying. Joyce Zagacki ("Ms. Zagacki"), Gadson's supervisor, heard the incident from down the hall and offered to speak with both Gadson and Ms. Taylor about their issues. Before Ms. Taylor arrived at the meeting, Gadson and Ms. Zagacki were able to speak normally, and discussed Ms. Taylor's history of exhibiting her violent temper in the workplace, which was known and documented.  However, when

3

Ms. Taylor arrived at the meeting, she immediately shifted the nature of the conversation by loudly talking over Gadson and calling her names such as "snake" and "liar." When Ms. Zagacki asked Ms. Taylor to calm down, Ms. Taylor got up and began to verbally assault and threaten Gadson. She screamed to Gadson that if Gadson wants to call human resources on her, that she should go ahead and do it because she does not care. She also said that if Gadson has a problem with her, then she can deal with that problem with her outside on 2301 Broad Street, the clear implication being that Ms. Taylor wanted to fight Gadson. Ms. Taylor then loudly stormed out the room.

12.    Gadson felt threatened by this incident and told Ms. Zagacki she wanted to go security because she did not want to be in a situation where she had to physically defend herself. Ms. Zagacki told Gadson to calm down, and that she would be fine. A few minutes later, as Gadson was walking to a lab to pick up blood for transfusion, Ms. Taylor saw her and began walking in the same direction as her. In response, Gadson turned and went towards Ms. Zagacki's office, and asked Ms. Zagacki if she could leave for the day. Ms. Zagacki rejected this request. Ms. Taylor walked by as Gadson was talking to Ms. Zagacki, and began singing a song saying, "bye bye" in an antagonizing manner. This caused Gadson to become even more upset

13.    Gadson again asked to go home, as these altercations had severely aggravated the symptoms of her disability. Ms. Zagacki saw how distraught Gadson had become after Ms. Taylor walked by, and approved the request.

14.    On April 2, 2019, the following day, Gadson visited her primary care physician due to the symptoms she was experiencing related to her disability. Her primary care physician immediately referred Gadson to a behavioral health specialist. Both her primary care physician and the behavioral specialist concluded that the April 1, 2019 incident with

4

Ms. Taylor severely impacted Gadson's mental health and advised Gadson to begin a period of extended medical leave so that she could receive intensive therapy.

15. On April 2, 2019, Gadson applied for and was approved for family and medical leave act and Short-Term Disability ("STD") leave so that she could seek treatment. She commenced this medical leave absence on the same day. Her medical leave was originally supposed to last eight (8) weeks.

16. On or about late May 2019, Gadson's behavioral health specialist concluded that she needed four (4) more weeks of therapy and extended her medical leave. She was expected to go back to work in July 2019.

17. On June 26, 2019, Gadson emailed Aaron Sniderman ("Mr. Sniderman"), Jefferson's Human Resources Business Partner, and indicated that her specialist and primary care physician advised her to apply for reasonable accommodations when she returned to work. Gadson's doctors did not want her to come into contact with Ms. Taylor, who still worked at Jefferson's 2301 South Broad Street location. Therefore, they suggested that Gadson be transferred to an equivalent, vacant position at another Jefferson facility. Mr. Sniderman provided Gadson with his office's telephone number and asked Gadson to have her physicians fill out the necessary reasonable accommodation paperwork, which Gadson did.

18. Shortly after submitting the reasonable accommodation request paperwork filled out by her physicians, Gadson spoke with Mr. Sniderman over the phone. Gadson asked him when she could return to work, and Mr. Sniderman told Gadson that he had to speak with Ms. Zagacki to determine Gadson's start-date and that he would get back to her with more information. However, Mr. Sniderman did not make any attempts to contact Gadson with more information. Instead, Gadson attempted to contact Mr. Sniderman on multiple

5

occasions over the intervening weeks in order to determine her return-to-work status.

19.   On or about early August 2019, after her primary care physician approved her to return to work, Gadson tried to receive official approval to return to work. However, the physicians at Jefferson would not approve Gadson's return until she was given an official return to work start date. Gadson could not receive an official start date without the approval of Mr. Sniderman, whom she still continued to have difficulty contacting.

20.   On or about mid-August 2019, Gadson was finally able to make contact with Mr. Sniderman over the phone about returning to work in an equivalent, vacant position, per the recommendation of her physician. He instructed Gadson to search for vacant lab assistant positions that were being advertised by Jefferson, to submit applications to them, and to inform him after she applied. Gadson's impression from this conversation was that Jefferson viewed her accommodation request as reasonable, and that if she found an equivalent position she could have it. Based on this impression, Gadson did not attempt to discuss other possible accommodations.

21.   From August 2019-December 2019, Gadson did as instructed and located multiple vacant lab assistant positions with Jefferson, and submitted applications. Each time, Gadson left voicemails for Mr. Sniderman informing him that she had applied for the vacant position. However, Gadson did not receive a response to any of the messages she left for Mr. Sniderman.

22.   On or about late November 2019, Jefferson terminated Ms. Taylor after she physically assaulted another coworker. Upon learning that Ms. Taylor was no longer employed by Jefferson, Gadson contacted Ms. Zagacki to determine if she could return to work in her original position at Jefferson's 2301 South Broad Street location. To Gadson's knowledge based on conversations with coworkers, her original position was still available.

6

In response to Gadson's request, Ms. Zagacki told her to speak with Mr. Sniderman about her return-to-work status. Ms. Zagacki never again contacted Gadson about returning to work. Gadson's attempts to contact Mr. Sniderman continued to be unsuccessful. She never received confirmation as to whether returning to her original position was a reasonable accommodation that could be pursued.

23.    Because Jefferson failed to respond to Gadson's efforts to return to work and to seek reasonable accommodations over the course of four (4) months, Gadson faced significant financial hardship. Gadson is a single mother of two (2) children and during this time was at risk of not being able to provide for her children due to the delay of receiving her primary income. For example, Gadson was not able to continue to make her car payments and her car was repossessed. As a result, her credit was significantly impacted.

24.    Accordingly, on December 11, 2019, Gadson was forced to resign from her position with Jefferson so that she could seek replacement work due to the failures of Jefferson staff to respond to her attempts to return to work for Jefferson.

### COUNT I- DISCRIMINATION VIOLATION of the AMERICANS WITH DISABILITIES ACTS, 42 U.S.C. § 12101 *et seq.*

25.    Gadson incorporates all the above paragraphs as if they were set forth at length herein.

26.    Gadson is an individual with a disability who was capable of performing her job responsibilities.

27.    Gadson's requests that she be transferred to a vacant, equivalent position constituted a request for a reasonable accommodation. Jefferson told Gadson that she could pursue this accommodation option.

7

28.  Jefferson violated the ADA by subjecting Gadson to discrimination on the basis of her actual and/or perceived disabilities and/or records of impairment by failing to respond to her attempts to return to work.

29.  Gadson further alleges that Jefferson violated the ADA by failing to engage her in the interactive process and providing her with reasonable accommodations for her disabilities.

30.  Jefferson voluntarily told Gadson that she should identify vacant equivalent positions, in order to accommodate her, and could have granted her request for a when she informed them that vacant, equivalent positions were available at other facilities owned and managed by Jefferson.

31.  Nevertheless, Jefferson utterly failed to engage in the interactive process with Gadson.

32.  Jefferson then failed to respond to Gadson when she asked to return to her original position, which to her knowledge was still available. This constituted a continued failure to engage in the interactive process.

33.  Jefferson's conduct caused Gadson to lose pay and benefits, and experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss, and expend attorney's fees and costs.

34.  Gadson prays that Jefferson be required to provide all appropriate remedies available under the ADA.

**COUNT II- DISCRIMINATION VIOLATION of the PENNSYLVANIA HUMAN RELATIONS ACT 43 P.S. §951 *et seq*.**

35. Gadson incorporates all the above paragraphs as if they were set forth at length herein.

36. Gadson is an individual with a disability who was capable of performing her job responsibilities.

37. Gadson's request that she be transferred to a vacant, equivalent position constituted a request for a reasonable accommodation.

38. Jefferson violated the PHRA by subjecting Gadson to discrimination on the basis of her actual and/or perceived disabilities and/or records of impairment.

39. Gadson further alleges that Jefferson violated the PHRA by failing to engage her in the interactive process and provide her with reasonable accommodations for her disabilities.

40. Jefferson could have granted Gadson's request for a reasonable accommodation because vacant, equivalent positions where available at other facilities owned and managed by Jefferson.

41. Nevertheless, Jefferson utterly failed to engage in the interactive process with Gadson.

42. Jefferson also failed to respond to Gadson's attempts to return to her original position, further showing a failure to engage in the interactive process.

43. Jefferson's conduct caused Gadson to lose pay and benefits, and experience severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss, and incur attorney's fees and costs.

44. Gadson prays that Jefferson be required to provide all appropriate remedies available under the PHRA.

## COUNT III REATALITON VIOALATION OF AMERICANS WITH DISABILITIES ACTS, 42 U.S.C. § 12101 *et seq. and* PENNSYLVANIA HUMAN RELATIONS ACT 43 P.S. §951 *et seq*

45. Gadson incorporates all the above paragraphs as if they were set forth at length herein.

46. Gadson is an individual with a disability who was capable of performing her job responsibilities.

47. Jefferson subjected Plaintiff to retaliation for taking __ weeks of medical leave through the FMLA due to disability.

48. Jefferson engaged in this retaliation by making it impossible for Gadson to come back to work at the conclusion of her medical leave. Gadson attempted to communicate with Jefferson on numerous occasions from July 2019 to December 2019, to discuss a way for her to be accommodated and return to work.

49. Jefferson utterly failed to communicate with Gadson or engage in a process to find reasonable accommodations for Gadson.

50. As a result of Jefferson's retaliatory actions, Gadson was force to resign from her position, lost pay and benefits, and experienced severe emotional pain and suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary loss, and incur attorney's fees and costs.

51. Gadson prays that Jefferson be required to provide all appropriate remedies available under the ADA and the PHRA.

10

**COUNT IV- DISCRIMINATION/RETALIATION VIOLATION of the FAMILY MEDICAL LEAVE ACT, FMLA 29 USCA §2615(a)** *et. seq.*

52. Gadson incorporates all the above paragraphs as if they were set forth at length herein.

53. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Gadson was eligible for Family and Medical Leave Act Leave.

54. At all times material, Jefferson knew, or should have known, of Gadson's need for FMLA Leave medical leave due to her serious medical condition illness.

55. Gadson gave Jefferson sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

56. Jefferson approved Gadson for leave under the FMLA.

57. However, Jefferson's failed to reinstate Gadson to her same or equivalent job upon the completion of her FMLA leave.

58. Jefferson has acted in bad faith by retaliating against Gadson in violation of the FMLA.

59. As a direct and proximate result of Jefferson's actions, Gadson is and was deprived of economic and non-economic benefits resulting from Jefferson's willful and/or non-willful actions, including, but not limited to: loss of back pay, loss of increase in salary, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

## PRAYER FOR RELIEF

**WHEREFORE,** Gadson requests that this Honorable Court enter a judgment in her favor against Jefferson and order that:

- Jefferson reimburse Gadson for the salary she has foregone as a result of Jefferson's failure to timely reinstate her upon her being cleared to return to work;

- Jefferson pay Gadson damages for emotional distress, mental anguish, inconvenience, loss of enjoyment and life, pain and humiliation, and other non-pecuniary losses as allowable;

- Jefferson pay Gadson's statutory, compensatory, liquidated, and punitive damages to the extent permitted by law;

- Jefferson pay Gadson's costs of suit, attorney's fees, expert fees if incurred in this matter, and interest as permitted by law;

- Jefferson provide all other relief permitted by law;

- Jefferson provide any additional relief to Gadson which this Honorable Court deems appropriate.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

Respectfully submitted,

*Faye Riva Cohen*

By:  FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P. C.
2047 Locust Street
Philadelphia, PA 19103
(215) 563-7776
Attorney for Plaintiff

Date: February 18, 2021

### **VERIFICATION**

I, Naeemah Gadson, hereby verify that I am the Plaintiff in the within case and that the statements made in the foregoing Amended Complaint are true to the best of my knowledge and belief.

I understand that false statements are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

_____

Naeemah Gadson
Plaintiff

Date: February 18, 2020

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAEEMAH GADSON, : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION** |
| v. : | |
| : | **NO.: 2:20-CV-05976** |
| THOMAS JEFFERSON : | |
| UNIVERSITY HOSPITAL, : | |
| METHODIST DIVISION : | |
| : | |
| **Jefferson.** : | |
| : | |

**JEFFERSON'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

Defendant, Thomas Jefferson University Hospitals, Inc., incorrectly identified in the caption as "Thomas Jefferson University Hospital, Methodist Division" ("Jefferson"), hereby answers the Amended Complaint filed by Naeemah Gadson ("Gadson"), in accordance with the numbered paragraphs thereof. Under Federal Rule of Civil Procedure 8(b), Jefferson generally denies all averments of the Amended Complaint except such designated averments or paragraphs as Jefferson expressly admits below.

**PARTIES[1]**

1.      Admitted in part, denied in part. Jefferson admits that Gadson identifies as a black female. Jefferson is without knowledge or information sufficient to attest to Gadson's age or her residence. Therefore, the allegations regarding the same are effectively denied.

---

[1]      Jefferson includes the headings Gadson included in her Amended Complaint for clarity only and does not thereby admit any facts in the headings to the extent they exist.

2. Admitted in part, denied in part. Jefferson admits that it has a business location at 111 South 11th Street, Philadelphia, Pennsylvania 19107. Jefferson denies the remaining allegations in this paragraph as conclusions of law to which no response is required.

## JURISDICTION AND VENUE

3. Jefferson incorporates the preceding paragraphs as though they were set forth at length.

4. Jefferson denies this paragraph as a conclusion of law to which no response is required.

5. Jefferson denies this paragraph as a conclusion of law to which no response is required.

6. Jefferson denies this paragraph as a conclusion of law to which no response is required.

7. Jefferson is without sufficient knowledge or information to attest to any of the facts in this paragraph. They are, therefore, effectively denied.

## FACTS AND GADSON DISABILITY

8. Jefferson incorporates the preceding paragraphs as though they were set forth at length.

9. Admitted in part, denied in part. It is admitted that Gadson was hired to work at Jefferson in January 2009 and that Gadson worked periodically at the 2301 South Broad Street location. The remaining allegations are denied.

10. Admitted in part, denied in part. It is admitted that Gadson worked for Jefferson for approximately ten years. Jefferson lacks sufficient knowledge or information to attest to whether Gadson suffers from a "disability" and, therefore, the allegations related to the same are denied.

The remaining allegations are denied as conclusions of law to which no response is required. To the extent they are deemed factual, they are denied.

11.     Admitted in part, denied in part. Jefferson admits that, on April 1, 2019, Joyce Zagacki, Gadson's supervisor, heard Gadson speaking very loudly in the hallway at Jefferson. Jefferson also admits that Zagacki spoke with Gadson about the interaction she had with a coworker, Crystal Taylor, that day. Further, Jefferson admits that Zagacki offered to and, in fact did, meet with Gadson and Taylor and that both Gadson and Taylor accused each other of lying. The remaining allegations in this paragraph are denied.

12.     Admitted in part, denied in part. Jefferson admits that Gadson asked Zagacki if Gadson should call security. The remaining allegations are denied.

13.     Admitted in part, denied in part. Jefferson admits that, on April 1, 2019, Gadson asked Zagacki to be excused from work to go home and Zagacki approved the request. The remaining allegations are denied.

14.     Jefferson is without knowledge or information sufficient to attest to any of the allegations in this paragraph. Therefore, the allegations are effectively denied.

15.      Admitted in part, denied in part. Jefferson admits that, on or about April 2, 2019, Gadson applied for family and medical leave act ("FMLA") and short-term disability ("STD") leave. Jefferson denies the remaining allegations in this paragraph.

16.     Admitted in part, denied in part. Jefferson admits that Gadson extended her leave and was expected to return to work on or about July 1, 2019. Jefferson is without knowledge or information sufficient to attest to any of the allegations in this paragraph. Therefore, the allegations are effectively denied.

17.    Admitted in part, denied in part. Jefferson admits that Gadson sent an email to Aaron Sniderman, Jefferson's Human Resources Business Partner, that was dated June 26, 2019. The remaining allegations are denied. By way of further answer, the emails to which this paragraph refers are documents that speak for themselves and, therefore, any characterizations of their content are denied. In addition, Jefferson is without knowledge or information sufficient to attest to any of the allegations regarding what Gadson's physician advised Gadson or wanted.

18.    Admitted in part, denied in part. Jefferson admits that, at some point after June 26, 2019, Gadson spoke to Sniderman on the telephone. Jefferson also admits that, on July 9, 2019, Gadson delivered forms to MHD. Those forms are documents whose contents speak for themselves and, as such, any characterizations of the same are denied. The remaining allegations are denied.

19.    Denied.

20.    Admitted in part, denied in part. Jefferson admits that Sniderman had a conversation with Gadson over the telephone during which she told Sniderman words to the effect that, to be able to come back to work, Gadson needed to be transferred from her Phlebotomist position at MHD because she could not come into contact with Taylor. Jefferson also admits that Sniderman told Gadson she had the opportunity to apply for other Jefferson position that were open and available . Jefferson denies the remainder of the allegations in this paragraph.

21.    Denied.

22.    Admitted in part, denied in part. Jefferson admits that, in late November 2019, it terminated Taylor's employment arising out of a confrontation Taylor had with a coworker. The remaining allegations in this paragraph are denied.

23.    Denied.

24.      Admitted in part, denied in part. Jefferson admits that, on December 12, 2019, Gadson resigned from her employment at Jefferson. The remaining allegations in this paragraph are denied.

**COUNT I – DISCRIMINATION VIOLATION OF THE AMERICANS WITH DISABILITIES ACTS [sic], 42 U.S.C. § 12101 *et seq.***

25.      Jefferson incorporates the preceding paragraphs as though they were set forth at length.

26.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

27.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

28.       Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

29.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

30.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

31.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

32.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

33.      Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

34.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

## COUNT II – DISCRIMINATION VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 *et seq.*

35.     Jefferson incorporates the preceding paragraphs as though they were set forth at length.

36.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

37.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

38.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

39.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

40.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

41.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

42.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

43.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

44.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

**COUNT III RETALIATION VIOLATION OF AMERICANS WITH DISABILITIES ACTS, 42 U.S.C. § 12101 *et seq.* and PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 *et seq.***

45.     Jefferson incorporates the preceding paragraphs as though they were set forth at length.

46.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

47.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

48.     Denied.

49.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

50.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

51.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

**COUNT IV – DISCRIMINATION/RETALIATION VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, FMLA, 29 USCA § 2615(a) *et seq.***

52.     Jefferson incorporates the preceding paragraphs as though they were set forth at length.

53.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

54.     Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

55. Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

56. Admitted.

57. Admitted in part, denied in part. It is admitted that Gadson did not return to work after her completion of FMLA leave. The remaining allegations are denied.

58. Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

59. Jefferson denies this paragraph as a conclusion of law to which no response is required. To the extent it is deemed factual, it is denied.

## JEFFERSON'S AFFIRMATIVE DEFENSES

1. Gadson fails to state a claim upon which relief can be granted.

2. Gadson's claims are barred because Jefferson acted at all times in good faith and based on legitimate, non-discriminatory and non-retaliatory reasons.

3. Gadson's claims (other than those under the Family and Medical Leave Act ("FMLA")) are barred on the grounds and to the extent that such claims were not raised in Gadson's administrative charge(s).

4. Gadson's claims are barred on the grounds and to the extent that she failed to otherwise satisfy the administrative and/or jurisdictional prerequisites for the institution of her claims (other than those under the FMLA). 42 U.S.C. § 12117 (ADA, incorporating 42 U.S.C. § 2000e-5); 43 P.S. § 959 (PHRA).

5. Gadson's federal claims (other than those under the FMLA) are barred to the extent that she is complaining about events or acts or omissions that occurred more than 300 days prior to the filing of her charge of discrimination with the EEOC.

6.      Gadson's claims under the PHRA are barred to the extent that she is complaining about events or acts or omissions that occurred more than 180 days prior to the filing of her charge of discrimination with the PHRC. 43 P.S. § 959(h).

7.      Gadson's claims under the FMLA are barred by the applicable statute of limitations to the extent that Gadson complains of events occurring more than two years before the filing of the Complaint. 29 U.S.C. § 2617(c)(1).

8.      Gadson's claims are barred or limited because the qualification standards, tests or selection criteria applied to Gadson were job-related and consistent with business necessity and were not motivated by any impermissible factor.

9.      Gadson's claims are barred or limited because any accommodations requested by her but not offered or provided by Jefferson were unreasonable and/or would have imposed an undue hardship on the operation of Jefferson's business.

10.      Gadson does not have, nor does Jefferson regard Gadson as having, nor does Gadson have a record of having, a "disability" as that term is defined under the ADA, 42 U.S.C. § 12012(2), or a "disability" or "handicap" as those terms are defined under the PHRA, 43 P.S. § 954.

11.      Jefferson would have taken the same employment actions regarding Gadson regardless of any impermissible motivating factor (there were none) or Gadson taking leave under the FMLA.

12.      Jefferson did not permit conditions so unpleasant or difficult that a reasonable person in Gadson's situation would have felt compelled to resign and Gadson acted unreasonably in resigning.

13.    Gadson cannot recover liquidated damages under the FMLA because Jefferson acted in good faith and had reasonable grounds for believing that any acts or omissions did not violate the FMLA.

14.    Gadson's claims under the ADA for compensatory damages are barred to the extent that they violate and exceed the amounts recoverable, if any, under the provisions of the Civil Rights Act of 1991. 42 U.S.C. § 1981a(b)(3).

15.    To the extent Gadson seeks compensatory damages or damages for emotional distress under the FMLA, they are barred.  *Lombardo v. Air Prods. & Chems. Inc.*, Civ. A. No. 05-1120, 2006 WL 1892677, at *7 n.7 (E.D. Pa. July 7, 2006) (citation omitted) (compensatory damages); *Lloyd v. Wyoming Valley Health Care Sys., Inc.*, 994 F. Supp. 288, 292-93 (M.D. Pa. 1988) (emotional distress damages).

16.    Gadson's claims for damages are barred or limited to the extent that she failed to mitigate her damages and to the extent of her interim earnings, compensation or benefits, or amounts earnable by her with reasonable diligence.

17.    Gadson is barred from recovering compensatory damages under her ADA and PHRA retaliation claims because only equitable relief is available for such claims.  *Kozempel v. Grand View Hosp.*, Civ. A. No. 10-6839, 2011 WL 1196851, at *3-4 (E.D. Pa. Mar. 30, 2011) (citations omitted); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2016 WL 69651, at *2-3 (W.D. Pa. Jan. 6, 2016).

18.    Gadson has no right to a jury trial on her ADA retaliation claim. *Shellenberger v. Summit Bancorp*, No. 99-5001, 2006 WL 1531792, **2-4 (E.D. Pa. June 2, 2006); *Santana v. Lehigh Valley Hosp and Health Network,* No. 05–1496, 2005 WL 1914654, *2 (E.D. Pa. Aug. 11,

2005); *Baker v. PPL Corp.,* No. 09–0428, 2010 WL 419417, \*\*7–8 (W.D. Pa. Jan.29, 2010) (slip copy); *Sabbrese v. Lowe's Home Centers, Inc.,* 320 F.Supp.2d 311, 331 (W.D. Pa. 2004).

19.    To the extent applicable, because Jefferson engaged in an interactive process with Gadson, made good faith efforts, in consultation with Gadson, to identify and make reasonable accommodations that would provide her with an equally effective opportunity and would not cause an undue hardship to Jefferson, and, in fact, provided Gadson with all reasonable accommodations she requested that would have enabled her to perform the essential functions of her position, Gadson is barred from recovering compensatory and punitive damages, if at all, on her failure to accommodate claims under the ADA and the PHRA. 42 U.S.C. § 1981a(a)(3); *Frederick v. PPL Servs. Corp.*, 193 F. App'x. 138, 142 (3d Cir. 2006); *Bowman v. St. Luke's Quakertown Hosp.*, No. 12-797, 2012 WL 6527402, at \*4 (E.D. Pa. Dec. 13, 2012).

20.    Gadson's relief, if any, is limited by the after-acquired evidence doctrine.

Respectfully submitted,

Dated: March 12, 2021                    */s/ Lee D. Moylan*
                                        Lee D. Moylan
                                        KLEHR HARRISON HARVEY
                                        BRANZBURG LLP
                                        1835 Market Street, Suite 1400
                                        Philadelphia, PA 19103
                                        (215) 569-4140
                                        E-mails: lmoylan@klehr.com

                                        *Attorneys for Defendant*