IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DYWANNA M. BROADNAX,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 21-4662** |
| | : | |
| **THOMAS JEFFERSON** | : | |
| **UNIVERSITY HOSPITALS, INC.,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**Younge, J.**                                                                              **January 25, 2023**

## I. INTRODUCTION

Currently before this Court is Defendant Thomas Jefferson University Hospitals, Inc.'s ("Thomas Jefferson") Motion for Summary Judgment (ECF No. 14). The Court finds this motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendant Thomas Jefferson's Motion for Summary Judgment (ECF No. 14) will be granted.

## II. FACTUAL BACKGROUND

Plaintiff Dywanna M. Broadnax has filed a civil action against her former employer, Defendant Thomas Jefferson for alleged retaliation on the basis of disability. (Compl. ¶¶ 64-78, ECF No. 1.) On or about March 15, 2005, Plaintiff was hired by Defendant as a Phlebotomist Clerk before later being upgraded, in Fall 2007q, to the position of Clinical Lab Assistant. (Compl. ¶¶ 13, 16, ECF No. 1.) During her tenure with Defendant, Plaintiff had been diagnosed with lupus (which later led to the development of Reynaud's syndrome, which reduces blood flow to one's limbs and other parts of the body), pericarditis (inflammation of the sac that surrounds the heart),

and had also experienced anxiety and depression due to the passing of her mother. (Compl. ¶¶ 14, 17, 28, ECF No. 1.)

In connection with these disabilities, Plaintiff filed a 2011 and 2017 complaint with the Pennsylvania Human Relations Commission ("PHRC"). (Compl. ¶¶ 23, 39, ECF No. 1.) Following Plaintiff's emergency heart surgery associated with her pericarditis diagnosis and having already exhausted her FMLA time for serious health conditions, Plaintiff was forced to resign from her position, on December 9, 2008, to avoid being terminated. (Compl. ¶¶ 18-21, ECF No. 1.) However, Plaintiff's manager—Joyce Zagacki—informed Plaintiff that Plaintiff could be rehired later. (Compl. ¶ 20, ECF No. 1.) When Plaintiff attempted to be rehired in April 2009, Zagacki informed Plaintiff that Defendant was on a hiring freeze—resulting in Plaintiff filing her March 10, 2011 complaint with the PHRC alleging discrimination on the basis of disability and race as the reasons for Defendant's failure to rehire her for over two years. (Compl. ¶¶ 22-23, ECF No. 1.) At the August 18, 2011 PHRC conference, Defendant agreed to rehire Plaintiff, and Plaintiff began working as a lab assistant on October 24, 2011. (Compl. ¶¶ 24-25, ECF No. 1.) On or about December 20, 2017, Plaintiff would file another complaint with the PHRC (and, this time, also with the EEOC) alleging discrimination based on disability for Defendant's failure to provide reasonable accommodations, denying Plaintiff the ability to participate in trainings, failing to inform Plaintiff about registering for retirement benefits, and retaliation in response to Plaintiff's 2011 PHRC charge and requests for reasonable accommodations. (Compl. ¶ 39, ECF No. 1.) On April 2, 2019, the EEOC dismissed Plaintiff's complaint. (Compl. ¶ 40, ECF No. 1.)

On February 11, 2019, Plaintiff suffered a mild stroke, causing her to take medical leave until April 6, 2019. (Compl. ¶ 41, ECF No. 1.) Upon her return, Plaintiff would learn that one of her coworkers and friends—Naeemah Gadson—had recently taken medical leave after being verbally assaulted by another coworker—Crystal Taylor. (Compl. ¶ 42, ECF No. 1.) Gadson and

Taylor had not gotten along for years, and Plaintiff alleges that—with Gadson on leave and aware that Gadson and Plaintiff were friends—Taylor began directing her antagonistic conduct towards Plaintiff (which Plaintiff alleges she relayed to her manager, Zagacki, to no avail). (Compl. ¶¶ 43-44, ECF No. 1.) On or about November 18, 2019, Plaintiff alleges that Taylor had been imitating and mocking Plaintiff, resulting in Plaintiff saying to Taylor "[N]ot today, Crystal. You're too fucking old for that shit." (Compl. ¶ 45, ECF No. 1.) In response, Taylor grew angry and asked Plaintiff if she wanted "to talk about this outside." (Compl. ¶ 46, ECF No. 1.) Believing that this could be resolved amicably and under the impression that Defendant wanted employees to try to handle disputes before bringing them to management, Plaintiff took Taylor up on her offer to chat. (Compl. ¶ 47, ECF No. 1.) However, once in the hallway, Taylor allegedly remarked to Plaintiff, "I'm going to hurt you!" and bumped Plaintiff's chest. (Compl. ¶ 48, ECF No. 1.) Plaintiff alleges that, in defense, she bumped Taylor back and then proceeded to try to find Zagacki. (Compl. ¶ 49, ECF No. 1.) While walking away, Plaintiff alleges that Taylor repeatedly poked Plaintiff in the back and bumped into her, prompting Plaintiff to poke Taylor back in self-defense. (Compl. ¶¶ 50-51, ECF No. 1.) With Plaintiff's back turned, Taylor "then grabbed a handful of Plaintiff's hair, pulled her to the floor, and repeatedly hit her on the head" until eventually a certified nurse assistant—presumably Loretta Ward—saw the altercation and broke it up. (Compl. ¶¶ 51-52, ECF No. 1.) Afterwards, Taylor was fired that day. (Compl. ¶ 53, ECF No. 1.) Plaintiff would be fired approximately three days later on or about November 21, 2019. (Compl. ¶ 57, ECF No. 1.)

In connection with these events, Plaintiff filed this instant action on October 22, 2021 asserting a claim of retaliation under the Americans with Disabilities Act ("ADA"), and its 2008 amendments, 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"). (Compl. ¶ 1, ECF No. 1.) More specifically, Plaintiff alleges that she engaged in protected activity via her 2011 and 2017 complaints, that

Defendant retaliated against her for these aforementioned complaints by using the altercation (where Plaintiff argues that she was the one who had been assaulted) as an excuse to terminate her, and that Plaintiff had been treated differently as Taylor had other incidents of violence or threats of violence and had been given multiple chances before being terminated, while Plaintiff was immediately terminated on her first offense. (Compl. ¶¶ 64-78, ECF No. 1.)  In response, Defendant argues that the fistfighting in violation of Defendant's Code of Conduct Policy, Employee Disruptive Conduct Policy, and No-Violence Policy was the sole reason for Plaintiff's termination and that retaliation for Plaintiff's past claims and requests for reasonable accommodations had nothing to do with the decision. (Def. Br. in Supp. of Def. Mot. for Summ. J., p. 9, ECF No. 14-2.)  On September 2, 2022, Defendant filed a motion for summary judgment, wherein Defendant argues that Plaintiff has not made out a *prima facie* case of retaliation, nor has Plaintiff made a proper showing of pretext that would rebut Plaintiff's proffered non-retaliatory reason for terminating Plaintiff. (Def. Br. in Supp. of Def. Mot. for Summ. J., pp. 14-29, ECF No. 14-2.)

### III.   LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

4

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**IV.    DISCUSSION**

As an initial matter, it is worth noting that Plaintiff's retaliation claim across the ADA, Title VII, and the PHRA can be consolidated for purposes of this analysis. *See Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa. 1996) ("[Plaintiff's] Title VII, PHRA, and § 1981 claims all fall under the same analytical framework, and will therefore be examined together."); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) ("Accordingly, we analyze ADA retaliation

claims under the same framework we employ for retaliation claims arising under Title VII."). Relatedly, Plaintiff's consolidated retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), *as amended* (Sept. 13, 2006). The Third Circuit has described the three-step, burden-shifting framework as follows:

> To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.
>
> *******
>
> If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]."
>
> If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997) (citations omitted). The Third Circuit further instructs: "Our experience is that most cases turn on the third stage, *i.e.*, can the plaintiff establish pretext." *Shaner v. Synthes*, 204 F.3d 494, 501 (3d Cir. 2000).

Turning to the first step of the *McDonnell Douglas* burden-shifting framework, Plaintiff and Defendant seemingly agree that the first two prongs of a *prima facie* Title VII retaliation claim—engaging in protected activity and the occurrence of an adverse employment action—are satisfied. (Def. Br. in Supp. of Def. Mot. for Summ. J., p. 14, ECF No. 14-2.)  It is undisputed that, on or about March 10, 2011 and on or about December 20, 2017, Plaintiff filed a complaint with the PHRC alleging discrimination on the basis of disability (with Plaintiff's 2011 charge also alleging racial discrimination). (Compl., ¶¶ 23, 39, ECF No. 1.)  Additionally, an adverse

employment action occurred when Defendant terminated Plaintiff on or around November 21, 2019. Instead, the parties disagree over whether the third and final prong has been established.

Under the third prong, the "temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)). Though "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred," *Id.* (quoting *Shellenberger,* 318 F.3d at 189 n.9), the Third Circuit has also noted that, "where 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test.'" *Id.* (quoting *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)). For example, the Third Circuit has found that two days between the protected activity and the termination was sufficient to make out a retaliatory discharge claim. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) ("[The plaintiff] demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon [the defendant's] receipt of notice of [the plaintiff's] EEOC claim."). On the other hand, the Third Circuit held that a three-week gap between the protected activity and the termination (along with an assessment of the record as a whole) had not been enough to demonstrate an unusually suggestive temporal proximity. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). Similarly, the United States District Court for the Eastern District of Pennsylvania determined that a two-month gap between the protected activity and the termination was not proximate enough to suggest an unusually suggestive temporal proximity. *See Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 602–03 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017) ("Plaintiff's January 20, 2012…complaint is not sufficiently proximate to her March 20, 2012 termination to suggest a causal link by temporal proximity.").

Here, Plaintiff's March 10, 2011 and December 20, 2017 complaints occurred approximately two and eight years before Plaintiff's November 21, 2019 termination—suggesting that an inference of a causal connection cannot be made by this Court. However, even if Plaintiff could make out a *prima facie* Title VII retaliation claim (presumably through a theory of "intervening patterns of antagonism" that raise an inference of a causal connection, *see Woodson v. Scott Paper Company*, 109 F.3d 913, 920 (3d Cir. 1997)), Plaintiff still has not proffered evidence to suggest that Defendant's non-retaliatory reason for terminating Plaintiff—*i.e.,* the fistfight between Plaintiff and Taylor being in violation of Defendant's Code of Conduct Policy, Employee Disruptive Conduct Policy, and No-Violence Policy—is a mere pretext.

Turning to the third step of the *McDonnell Douglas* burden-shifting framework, Plaintiff's burden is to show that the reason proffered by Defendant for terminating Plaintiff is false and merely a pretext for retaliation. This means that Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Stated differently, to establish pretext under *Fuentes*, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory [or non-retaliatory] reasons.'" *Id.* at 765 (citations omitted). Additionally, with respect to Title VII retaliation claims, at the pretext stage, Plaintiff must show "that retaliatory animus was the 'real reason' for the adverse employment action" and "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 258 (3d Cir.

8

2017) (referencing *Moore*, 461 F.3d at 342) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013)). While the Third Circuit recognizes that "this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decision-making by the private sector in economic affairs.'" *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

In this case, Plaintiff has not proffered sufficient evidence of pretextual retaliation. After all, Defendant's non-retaliatory reason for terminating Plaintiff—*i.e.,* Plaintiff's participation in a fistfight in violation of Defendant's Code of Conduct Policy, Employee Disruptive Conduct Policy, and No-Violence Policy—has been both consistent and plausible. In fact, one of Defendant's employees—Loretta Ward—notes:

> I, Loretta Ward, was walking down toward inpatient lab. Before getting to the lab I heard noise like punching and breathing heaving and I look to the corner by the time clock and there are two girls fist fighting and I said stop twice then I yelled security."

(Def. Mot. for Summ. J., Ex. 49, p. 186, ECF No 14-5.) Perhaps even more damning for Plaintiff, Plaintiff, herself, notes that fistfighting violates several of Defendant's policies:

> Q. Do you agree that fighting -- fistfighting with a coworker at work violates Jefferson's code of conduct policy?
>
> A. It does.
>
> Q. And do you believe that fistfighting with a coworker at work violates Jefferson's employee disruptive conduct policy?
>
> A. Yes.
>
> Q. And do you agree that fist-fighting with a coworker at work violates Jefferson's no-violence policy?
>
> A. Yes.

(Def. Mot. for Summ. J., Ex. 5, Broadnax Dep., 303:10-21, p. 304, ECF No 14-4.)

Given this eye-witness account of the fistfight and Plaintiff's concessions that fistfighting violates Defendant's various policies, this Court is inclined to reiterate a pronouncement that has been made several times by courts within the Third Circuit: "so long as Defendant's investigation and determination was based on a reasonable good faith belief, the Court may not act as a super-personnel department over an employer's business judgment." *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 517 (E.D. Pa.), *aff'd,* 401 F. App'x 697 (3d Cir. 2010) (quoting *Jackson v. Bob Evans - Columbus*, No. 2:04CV559, 2006 WL 3814099, at *8 (W.D. Pa. Dec. 22, 2006)). Relatedly, Plaintiff has not shown that Defendant's proffered reason is "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Finally, "where the employer provided evidence that it fired the employee because of an honest belief that the employee committed disability fraud [or, in this case, got into a fistfight]," the Third Circuit seemingly instructs that "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 152–53 (3d Cir. 2017) (quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (emphasis in original).

Taken together, Plaintiff's consolidated retaliation claim must be dismissed—as a reasonable jury could not infer that Defendant is liable for retaliation under the ADA, Title VII, or the PHRA.

## V.   CONCLUSION

For the foregoing reasons, Defendant Thomas Jefferson's motion for summary judgment is hereby granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                                **BY THE COURT:**

                                                */s/ John Milton Younge*
                                                **JUDGE JOHN MILTON YOUNGE**